1  MORGAN, LEWIS & BOCKIUS LLP
   ERIC MECKLEY, State Bar No. 168181
2  M. MICHAEL COLE, State Bar No. 235538
   One Market, Spear Street Tower
3  San Francisco, CA  94105-1126
   Tel:  415.442.1000
4  Fax:  415.442.1001
   E-mail:    emeckley@morganlewis.com
5              mcole@morganlewis.com

6  MORGAN, LEWIS & BOCKIUS LLP
   JOHN S. BATTENFELD, State Bar No. 119513
7  DONNA MO, State Bar No. 240621
   300 South Grand Avenue
8  Twenty-Second Floor
   Los Angeles, CA  90071-3132
9  Tel:  213.612.2500
   Fax: 213.612.2501
10 E-mail:    jbattenfeld@morganlewis.com
              dmo@morganlewis.com
11
   Attorneys for Defendants
12 The Pep Boys Manny Moe & Jack of California; and
   The Pep Boys – Manny, Moe & Jack
13

14                UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16

17 Art Navarro, individually, and on behalf of    Case No. C 07-2633 SI
   all others similarly situated, and as an
18 aggrieved employee pursuant to the Private     **APPENDIX OF WESTLAW/LEXIS**
   Attorneys General Act of 2004,                 **REPORTED CASE AUTHORITIES IN**
19                                                 **SUPPORT OF  DEFENDANTS'**
                   Plaintiff,                      **MEMORANDUM OF POINTS AND**
20                                                 **AUTHORITIES IN SUPPORT OF THEIR**
                   vs.                             **MOTION TO DISMISS**
21
   The Pep Boys Manny Moe & Jack of               **[Fed. R. Civ. Proc. 12(b)(6)]**
22 California, a California Corporation, The
   Pep Boys - Manny, Moe & Jack, a                Judge:    Hon. Susan Illston
23 Pennsylvania Corporation, and DOES 1-25        Date:     September 21, 2007
   inclusive,                                      Time:     9:00 a.m.
24                                                 Room:     10
                   Defendants.
25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7574550.1                           APPENDIX OF WESTLAW/LEXIS CASE
                                         AUTHORITIES IN SUPPORT OF MOTION
                                         TO DISMISS

CASE..................................................................................................................EXHIBIT NO.

*Flores v. Albertson's, Inc.*
2003 WL 24216269 (C.D. Cal., Dec. 09, 2003) ............................................1

*Green v. Party City Corporation*
2002 U.S. Dist. LEXIS 7750 (C.D. Cal. Apr. 9, 2002) ............................2

*In Re Wal-Mart Stores, Inc. Wage and Hour Litigation*
2007 U.S. Dist. LEXIS 41679 (N.D. Cal. May 29, 2007) ............................3

*Madrigal v. Green Giant Co.*
1981 WL 2331 (E.D. Wash., July 27, 1981) ............................................4

*Petras v. Johnson*
1993 WL 228014 (S.D. N.Y. Jun. 22, 1993) ............................................5

*Pulido v. Coca-Cola Enterprises, Inc.*
2006 U.S. Dist. LEXIS 43765 (C.D. Cal. May 25, 2006) ............................6

*Sorenson v. CHT Corp.*
2004 WL 442638 (N.D. Ill. Mar. 10, 2004) ............................................7

*Vasquez v. Coast Valley Roofing Inc.*
2007 WL 1660972 (E.D. Cal. June 6, 2007) ............................................8

Dated: July 13, 2007                          MORGAN, LEWIS & BOCKIUS LLP


By _____
     Eric Meckley
     Attorneys for Defendants
     The Pep Boys Manny Moe & Jack of
     California; and The Pep Boys – Manny,
     Moe & Jack

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7574550.1                          1          APPENDIX OF WESTLAW/LEXIS
                                                   AUTHORITIES IN SUPPORT OF MOTION
                                                   TO DISMISS

# EXHIBIT 1

Westlaw.

Not Reported in F.Supp.2d                                                            Page 1

Not Reported in F.Supp.2d, 2003 WL 24216269 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**

Flores v. Albertson's, Inc.
C.D.Cal.,2003.
Only the Westlaw citation is currently available.
United States District Court,C.D. California.
Juan FLORES; Hipolito Soto; Oscar Avila;
Guadalupe Flores; Armando Jiminez; Maria Tona
Orea; Isabel Miranda; Angel Rodriguez, on behalf
of themselves and all other similarly situated;
Service Employees International Union, AFL-CIO,
Plaintiffs,
v.
ALBERTSON'S INC., a Delaware corporation;
Ralph's, a Delaware corporation; the Vons
Companies Inc., and d/b/a Pavilions, a Michigan
corporation; Encompass Services Corporation, a
Texas corporation; Building One Service Solutions
Inc., a Virginia corporation; Safeway Inc., a
Delaware corporation; and Does 1-300, Defendants.
**No. CV 01-0515 PA(SHX).**

Dec. 9, 2003.

Hector O. Villagra, Steve Reyes, Maureen
Guadalupe Tellez, Mexican American Legal
Defense and Educational Fund, Los Angeles,
California, Della Bahan, Puja Batra, Bahan &
Associates, Pasadena, California, Barbara Enloe
Hadsell, Hernaldo Jose Baltodano, Hadsell &
Stormer, Inc., Pasadena, California, Marvin E.
Krakow, Law Office of Marvin E. Krakow, Los
Angeles, California, Karen C. Carrera, Virginia
Villegas, Mark Talamantes, Talamantes Villegas
Carrera, LLP, San Francisco, CA, Robert D.
Newman, Law Office of Robert D. Newman, Los
Angeles, California, Theresa M. Traber, Bert
Voorhees, Traber & Voorhees, Pasadena,
California, Janet Herold, Pasadena, California, for
Plaintiffs Juan Flores, Hipolito Soto, Guadalupe
Flores, Maria Toña Orea, and the Plaintiff Class.
Steven K. Ury, [S.B. # 199499], Service Employees
International Union, AFL-CIO, Los Angeles,
California, Craig Becker, [S.B. # 143424], Chicago,

Illinois, for Plaintiff Service Employees
International Union, AFL-CIO.
Catherine Conway, Brian F. Van Vleck, Akin,
Gump, Strauss, Hauer & Feld LLP, Los Angeles,
CA, for Defendant Albertson's.
Marie DiSante, Kendra Miller, Jeremy Naftel,
Laura Saadoh, Carlton, Disante & Freudenberger
LLP, Irvine, CA, for Defendants Von's and Safeway.

ORDER:
ANDERSON, J.

(1) GRANTING IN PART AND DENYING IN
PART ALBERTSON'S, INC.'S MOTION FOR
SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE, PARTIAL SUMMARY
JUDGMENT;

(2) GRANTING IN PART AND DENYING IN
PART SAFEWAY INC.'S MOTION FOR
SUMMARY JUDGMENT OR,
ALTERNATIVELY, PARTIAL SUMMARY
JUDGMENT;

(3) GRANTING IN PART AND DENYING IN
PART THE VONS COMPANIES, INC.'S
MOTION FOR SUMMARY JUDGMENT OR,
ALTERNATIVELY, PARTIAL SUMMARY
JUDGMENT;

(4) GRANTING ALBERTSON'S, INC.'S
MOTION TO STRIKE PLAINTIFFS'
DECLARATIONS AND DOCUMENTS IN
SUPPORT OF THEIR OPPOSITION TO
SUMMARY JUDGMENT; and

(5) GRANTING PLAINTIFFS' MOTION STRIKE
DEFENDANT ALBERTSON'S, INC.'S
EVIDENCE IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                        Page 2

Not Reported in F.Supp.2d, 2003 WL 24216269 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

**\*1** The Court has before it: (1) defendant Albertson's, Inc.'s ("Albertson's") Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment [Docket Entry No. 334]; (2) defendant Safeway Inc.'s ("Safeway") Motion for Summary Judgment or, Alternatively, Partial Summary Judgment [Docket Entry No. 323]; (3) defendant The Vons Companies, Inc.'s ("Vons") Motion for Summary Judgment or, Alternatively, Partial Summary Judgment [Docket Entry No. 317]; (4) Albertson's Motion to Strike Plaintiffs' Declarations and Documents in Support of Their Opposition to Summary Judgment [Docket Entry No. 422]; and (5) Plaintiffs' Motion to Strike Defendant Albertson's, Inc.'s Evidence in Support of Motion for Summary Judgment [Docket Entry No. 382].[FN1] Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. After carefully considering the parties' papers, the Court rules as follows:

> FN1. For ease of reference, Albertson's, Safeway, and Vons will be referred to collectively as the "Supermarket Defendants."

*Introduction*

Throughout the 1990s, the Supermarket Defendants outsourced their janitorial services to several contractors. These outside companies included defendant Building One Service Solutions, Inc. (" Building One"). Plaintiffs Juan Flores *et al.* are a class of workers who provided janitorial services to the Supermarket Defendants throughout California, and were employed by various janitorial subcontractors retained by Building One. Plaintiffs claim to have regularly worked in excess of 40 hours per week, but were never paid overtime. Plaintiffs filed this suit alleging violations of state and federal wage laws, as well as related state claims for negligence and unfair business practices. FN2

> FN2. During the pendency of this action, Building One and its parent company,

Encompass Services Corporation (" Encompass") filed bankruptcy and settled with the Plaintiffs. Plaintiff Service Employees International Union, AFL-CIO ( "SEIU") has dismissed its claims against the Defendants, and defendant Ralph's has settled with the Plaintiffs. All that remains are the claims by the individual class members against the Supermarket Defendants.

Plaintiffs' claims against the Supermarket Defendants are principally based on various theories of respondeat superior. Although the agreements between the Supermarket Defendants and Building One specify an independent contractor arrangement, Plaintiffs assert that the Supermarket Defendants were joint employers, and, as such, violated the Federal Labor Standards Act, 29 U.S.C. § 201 *et seq.,* ("FLSA"), the California Labor Code, and the California Business and Professions Code by failing to pay the overtime. Each of the Supermarket Defendants has filed a motion for summary judgment in an effort to dispose of these claims prior to trial.

## I. SUMMARY JUDGMENT STANDARD

The Supermarket Defendants claim that there is no issue of material fact and that they are entitled to judgment as a matter of law. The Federal Rules of Civil Procedure state that a motion for summary judgment, "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated that "Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). When moving for summary judgment, the moving party bears the burden of demonstrating the absence of a genuine issue of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 24216269 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). "[T]he burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554; *see also Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). The moving party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. *See Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554.

**\*2** A nonmoving party's allegation that factual disputes persist between the parties will not automatically defeat an otherwise properly supported motion for summary judgment. *See* Fed.R.Civ.P. 56(e) (nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial"). " [A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint." ' *Fazio v. City and County of San Francisco,* 125 F.3d 1328, 1331 (9th Cir.1997) (quoting *Anderson,* 477 U.S. at 249, 252). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970)); *see also United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) ("On summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion."), *quoted in Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. DISCUSSION

### A. Joint Employer Status

Under the FLSA, the term "employer" includes " any person acting directly or indirectly in the interest of an employer in relation to an employee.... " 29 U.S.C. § 203(d). Two or more employers may jointly employ someone for purposes of the FLSA, *Falk v. Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 431, 38 L.Ed.2d 406 (1973), and all joint employers are individually responsible for compliance with the FLSA. 29 C.F.R. § 791.2(a). The determination of whether an entity is a joint employer under the FLSA is a question of law. *Bonnette v. California Health & Welfare Agency,* 704 F.2d 1465, 1469 (9th Cir.1983).

The fact that the agreements identify the relationship between Building One and the Supermarket Defendants as that of an independent contractor is not dispositive. *See Secretary of Labor v. Lauritzen,* 835 F.2d 1529, 1544-45 (7th Cir.1987) ("The FLSA is designed to defeat rather than implement contractual arrangements.") Although " [t]he determination of whether an employer-employee relationship exists does not depend on 'isolated factors but rather upon the circumstances of the whole activity," ' the Ninth Circuit has focused the analysis primarily on four factors which have been derived from the FLSA itself. *Bonnette,* 704 F.2d at 1469 (quoting *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772 (1947)). These so-called regulatory factors include the following: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 1470, *quoted in Moreau v. Air France,* 343 F.3d 1179, 1183 (9th Cir.2003). The courts also often consider several non-regulatory factors in determining whether a joint employment relation exists, including:
**\*3** (1) whether the work was a "specialty job on the production line;"
(2) whether responsibility under the contracts between a labor contractor and an employer pass from one labor contractor to another without " material changes;"
(3) whether the "premises and equipment" of the employer are used for the work;

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 4

Not Reported in F.Supp.2d, 2003 WL 24216269 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

(4) whether the employees had a "business organization that could or did shift as a unit from one [worksite] to another;"

(5) whether the work was "piecework" and not work that required "initiative, judgment or foresight;"

(6) whether the employee had an "opportunity for profit or loss depending upon [the alleged employee's] managerial skill;"

(7) whether there was "permanence [in] the working relationship;" and

(8) whether "the service rendered is an integral part of the alleged employer's business."

*Torres-Lopez v. May,* 111 F.3d 633, 640 (9th Cir.1997) (citations omitted).

Again, however, the test is intended to be broad and must be based upon the "circumstances of the whole activity." *Rutherford,* 331 U.S. at 730, 67 S.Ct. at 1477. The concept of joint employment is to be defined expansively under the FLSA. *Torres-Lopez,* 111 F.3d at 639. Thus, the presence or absence of individual factors is not dispositive of whether a joint employment relationship exists. *Real v. Driscoll Strawberry Assocs., Inc.,* 603 F.2d 748, 754 (9th Cir.1979). Rather, in order to effectuate the broad remedial purposes of the FLSA, the courts are to "consider all factors 'relevant to the particular situation' in evaluating the 'economic reality' of an alleged joint employment relationship." *Moreau,* 343 F.3d at 1183 (quoting *Bonnette,* 704 F.2d at 1470).

The terms of the agreements entered into between Building One and the Supermarket Defendants state that the "Contractor shall at its own expense provide all personnel necessary to perform the maintenance services. Owner shall not control, direct, or supervise any such personnel." (DiSante Decl., Ex. B; *see also* DiSante Decl., Ex. A; Van Vleck Decl., Ex. D). Although Plaintiffs have produced evidence that the Supermarket Defendants exercised control in the retention and expulsion of certain individuals and crews from the stores when the quality of work was found to be particularly satisfactory or unsatisfactory, or individual employees were found to be performing their duties in an unprofessional manner, there is no evidence

that the Supermarket Defendants had the power to hire or fire the employees directly. However, there is evidence that requests by the Supermarket Defendants to retain or dismiss an individual employee were routinely granted. The fact that Building One routinely attempted to accommodate the Supermarket Defendants, however, does not give the Supermarkets Defendants the power to hire or fire members of the plaintiff class.

The agreements state that a supervisor will be provided for each store location, although it is clear that the supervisor was never intended to supervise the employees directly. (*See* DiSante Decl., Ex. B (" A supervisor of Contractor shall visit each facility listed in Exhibit 'A' not less than every 10 days and confer with store manager concerning the floor maintenance service provided."); Van Vleck Decl., Ex. D ("Supplier shall provide at least one 24 hour contact person per Location to which Customer's Store Director may register complaints, suggestions and requests for additional or changes in Service. This person shall NOT be less than a Supervisor over those individuals performing the Services within the Location.")). The site visits were principally used to communicate with the store managers as a form of routine check-up. As a result, day-to-day supervision over the janitorial employees came principally from the Supermarket Defendants. The Supermarket Defendants gave workers specific instructions about the work to be performed, and required the janitorial work to be performed in the evening when customer traffic was light. Recognizing that "it would be a foolish business practice to contract with a company to perform a service, but provide it with little or no guidance on exactly what services are to be performed," *Moreau,* 343 F.3d at 1183, it is nevertheless understood that excessive "indirect" supervision of the employees' performance can constitute control for purposes of the FLSA. *Torres-Lopez,* 111 F.3d at 642-43; *see also* 29 C.F.R. § 500.20(h)(4)(ii). The level of control and supervision exercised over the plaintiff class' work schedules and conditions of employment is a hotly disputed question of fact.

**\*4** The Supermarket Defendants were not responsible for paying the plaintiff class. The

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 24216269 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

Plaintiffs were paid by their respective subcontractors, and the agreements between the Supermarket Defendants and Building One specified that Building One was to comply with all applicable wage laws. However, when the minimum wage was increased, the contract price was similarly increased, indicating that the Supermarket Defendants did exercise some control over the workers' pay rate. *See Torres-Lopez,* 111 F.3d at 643 (appellees exercised some control over the pay rate by increasing compensation in order to allow the farmworkers to draw higher wages). It is undisputed that the Supermarket Defendants did not maintain employment records.

Turning to the non-regulatory factors, it is clear that the work performed by the Plaintiffs was not a specialty job on a production line, and that the contract could not readily shift from Building One to another organization. The premises and equipment of the Supermarket Defendants were often used to perform the work. The Supermarket Defendants provided specific instructions about the tasks to be performed. At times, the Supermarket Defendants arranged for cleaning product manufacturers to visit the stores in order to demonstrate proper use of their products to the plaintiff class. The various janitorial crews could easily shift from one store to another, although the supermarkets did request that particular members of the plaintiff class remain at a given store. According to the evidence, such requests were routinely granted. The janitorial services performed by the plaintiff class was piecework, requiring little skill, and there is no evidence of opportunity for profit or loss depending on the employee's managerial skills. Although members of the plaintiff class would be reassigned to different supermarkets from time to time, it was much more typical for a janitor to remain at a particular location, providing some permanence in the working relationship. Finally, it is clear to the Court that the Supermarket Defendants are in the business of selling food, and that the janitorial services provided by the plaintiff class are not an integral part of that business. However, while the janitorial services themselves may not be "integral" to the Supermarket Defendants' primary business, this Court recognizes the practical necessity of cleanliness at a

supermarket.

Furthermore, in looking at the circumstances of this dispute as a whole, this Court finds that the Supermarket Defendants, pursuant to their contact with Building One, routinely hired additional temporary employees from Building One known as "day porters" during special events. These employees essentially worked at the discretion, and under the direction, of the supermarket defendants. In addition, the store managers prepared a "Daily Service Ticket" documenting the quality of the janitorial services. Although this information was used in part to track the progress of the services, it also provided the supermarkets with a level of control. By providing the Supermarket Defendants with a daily ticket that they had to approve, the supermarkets, rather than the plaintiffs, their direct employers, or Building One, determined when the store had been satisfactorily serviced pursuant to the agreement. *See* Rodriguez Depo. 191:12-23. Finally, this Court also recognizes that the wage and hour allegations in this action were well documented. In 2000, the Los Angeles Times published an exposé regarding Building One's employees in California supermarkets. The state authorities had initiated investigations into the allegations. There is also evidence that some of the Supermarket Defendants followed up with Building One, both verbally and in writing, concerning the alleged wage and hour violations.

**\*5** While the issue of joint employment is a question of law for the court, it is a legal determination that is based on the underlying facts. *Bonnette,* 704 F.2d at 1469. In response to the Supermarket Defendants' assertion that Plaintiffs cannot demonstrate a joint employment relationship, there remains significant disagreement over the level of control the Supermarket Defendants exerted over the plaintiff class while they were working in the supermarkets. Drawing all inferences in favor of the non-moving party, this Court finds that material issues of fact persist regarding the reality of the relationship between Building One and the Supermarket Defendants. By allowing this action to proceed, a full factual record will be developed at trial, thereby providing the Court with a complete picture of the "circumstances

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 24216269 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

of the whole activity." Such an inquiry is necessary in order for this Court to effectively determine the economic and workplace realities of the relationship that existed between Building One, the hundreds of supermarkets represented by Albertson's, Vons, and Safeway, and the potentially thousands of plaintiff class members. Accordingly, the Court denies the motions for partial summary judgment on the joint employment claims.

### B. Negligence

Plaintiffs allege causes of action for negligence per se, negligent training/supervision, and negligent hiring/retention. All of Plaintiffs' negligence theories address the Supermarket Defendants' conduct in permitting the wage and hour law violations alleged in the Complaint to continue. These claims must fail. The purpose of the FLSA is "to protect all covered workers from substandard wages and oppressive working hours...." *Barrentine v. Arkansas-Best Freight Sys., Inc.,* 450 U.S. 728, 739, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 (1981), *quoted in Williamson v. General Dynamics Corp.,* 208 F.3d 1144, 1150 (9th Cir.2000). To allow Plaintiffs' negligence claims to proceed, which are nothing more than additional legal theories to recover damages stemming from the alleged wage and hour claims, would upset the balance established by Congress in enacting the statute.

Plaintiffs correctly argue that the FLSA does not preempt all other causes of action. In *Williamson,* the Ninth Circuit noted that the existence of the " savings clause" in the FLSA indicated that Congress had not intended it to provide an exclusive remedy. *Williamson,* 208 F.3d at 1151. However, in holding that appellants' career fraud claims were not preempted by the Act, much as claims for wrongful death, assault or murder would not be, the Court stated unequivocally that "[c]laims that are directly covered by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA." *Id.* at 1154; *accord Roman v. Maietta Const., Inc.,* 147 F.3d 71, 76 (1st Cir.1998) (" 'plaintiff cannot circumvent the exclusive remedy prescribed by Congress by asserting equivalent state claims in addition to the FLSA

claim." ') (quoting *Tombrello v. USX Corp.,* 763 F.Supp. 541, 545 (N.D.Ala.1991)); *Kendall v. City of Chesapeake, Virginia,* 174 F.3d 437, 443 (4th Cir.1999) ("in the FLSA, Congress manifested a desire to exclusively define the private remedies available to redress violations of the statute's terms." ).

**\*6** While Plaintiffs' fourth, fifth, and sixth claims for relief may sound in negligence, they are all based on violations of the state and federal wage and hour laws. The exclusive remedy for such violations is the FLSA. Accordingly, the Court grants the Supermarket Defendants' motions for partial summary judgment as to the negligence per se, negligent training/supervision, and negligent hiring/retention claims for relief.

### C. Unfair Competition

The Supermarket Defendants also seek summary judgment on Plaintiffs' unfair competition claims on the grounds that they were not joint employers of the plaintiff class. These causes of action are based on the California Business and Professions Code, which prohibits "any unlawful, unfair or fraudulent business act or practice...." Cal. Bus. & Prof.Code § 17200. Plaintiffs' allegations are clearly cognizable as an unfair competition claim. *See Cortez v. Purolator Air Filtration Products Co.,* 23 Cal.4th 163, 177, 96 Cal.Rptr.2d 518, 528 (2000) (An employer that has acquired money to be paid to employees by means of an unlawful practice may be subjected to an unfair competition claim as defined by section 17200); *Hudgins v. Neiman Marcus Group, Inc.,* 34 Cal.App. 4th 1109, 1126, 41 Cal.Rptr.2d 46, 57 (1995) (business practices that violate the California Labor Code can also violate Business and Professions Code section 17200) Because material issues of fact remain which prevent this Court from holding, as a matter of law, that the Supermarket Defendants are not joint employers, Plaintiffs' section 17200 claims remain viable. Accordingly, the Court denies the Supermarket Defendants' motion for partial summary judgment on the unfair competition claims.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2003 WL 24216269 (C.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

### III. MOTIONS TO STRIKE

Albertson's has moved to strike certain declarations and exhibits submitted by the Plaintiffs in opposition to Albertson's motion for summary judgment. This motion is based on Plaintiffs' alleged failure to provide this information during discovery, although Plaintiffs assert that the information was offered, but never pursued by Albertson's. The plaintiff class has moved to strike declarations in support of Albertson's motion. This motion is based on Plaintiffs' assertion that Albertson's claim that it received express representations from Building One that it was complying with all applicable wage and hour laws is inconsistent with deposition testimony, and that one of the declarations was not included with Albertson's filings Albertson's denies any such inconsistency.

Since the Court's rulings are not based on any of the disputed evidence, the Court grants both motions.

### Conclusion

For the reasons set forth above the Supermarket Defendants' Motions for Summary Judgment, or in the Alternative, Partial Summary Judgment are granted in part and denied in part; Albertson's Motion to Strike Plaintiffs' Declarations and Documents in Support of Their Opposition to Summary Judgment is granted; and Plaintiffs' Motion Strike Defendant Albertson's, Inc.'s Evidence in Support of Motion for Summary Judgment is granted.

*7 IT IS SO ORDERED.

C.D.Cal.,2003.
Flores v. Albertson's, Inc.
Not Reported in F.Supp.2d, 2003 WL 24216269 (C.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 2

LEXSEE 2002 US DIST LEXIS 7750



Positive
As of: Jul 12, 2007

**MARCUS GREEN, individually and on behalf of other members of the general public similarly situated v. PARTY CITY CORPORATION and Does 1-50**

**CV-01-09681 CAS (Ex)**

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

*2002 U.S. Dist. LEXIS 7750*

**April 9, 2002, Decided
April 12, 2002, Entered**

**DISPOSITION:** [*1] Plaintiff's motion to remand DENIED. Plaintiff's request for sanctions DENIED. Defendant's motion for judgment on the pleadings GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Putative class action plaintiff employee sued defendant employer in state court, alleging that the employer's failure to pay overtime violated state statutes and constituted conversion. The employer removed the action to federal court on the basis of diversity jurisdiction and moved for judgment on the pleadings with regard to the conversion claim. The employee moved to remand based on the amount in controversy.

**OVERVIEW:** The employee's complaint claimed no specific damages and the employee contended that the amount he could potentially recover in the action did not meet the jurisdictional minimum for diversity jurisdiction. The employer asserted that the potential for punitive damages satisfied the jurisdictional amount in controversy, and that the conversion claim was not actionable since the employee was limited to statutory remedies. The court first held that the minimum amount in controversy was met since, in view of the employee's claim for punitive damages for conversion, a jury could reasonably be expected to return a verdict in excess of the jurisdictional amount. However, since the employee asserted statutory rights to overtime pay, under state law the em-

ployee was limited to the remedies provided by statute and could not assert a claim for conversion for the same alleged wrong.

**OUTCOME:** The employee's motion to remand was denied, the employer's motion for judgment on the pleadings was granted, and the court ordered the employer to show cause why the action should not be remanded.

**COUNSEL:** For MARCUS GREEN, plaintiff: John Glugoski, Matthew Righetti, Edward J Wynne, Righetti & Wynne, San Francisco, CA.

For PARTY CITY CORPORATION, defendant: Douglas A Wickham, Martha J Keon, Littler Mendelson, Los Angeles, CA.

**JUDGES:** PRESIDING: HONORABLE CHRISTINA A. SNYDER, U.S. DISTRICT JUDGE.

**OPINION BY:** CHRISTINA A. SNYDER

**OPINION**

**MINUTE ORDER**

PROCEEDINGS: **PLAINTIFF'S MOTION FOR REMAND AND REQUEST FOR SANCTIONS**

(filed March 14, 2002)

2002 U.S. Dist. LEXIS 7750, *

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS ON PLAINTIFF'S CONVERSION CLAIM**

(filed February 4, 2002)

## I. INTRODUCTION

On September 25, 2001, plaintiff Marcus Green, a citizen of California, filed this case as a class action in Superior Court of California, County of Los Angeles, alleging that defendant Party City Corporation, a Delaware corporation with its principal place of business in New Jersey, failed to pay him and other alleged class members overtime compensation as required by law. Plaintiff alleges three claims for relief: (1) violation of *Cal. Labor Code § 1194 et seq.*; [*2] (2) violation of *Cal. Bus. & Prof. Code § 17200 et seq.*; and (3) conversion. On November 9, 2001, defendant timely removed the action to this Court on the basis of diversity of citizenship.

On February 4, 2002, defendant filed a motion for judgment on the pleadings on plaintiff's claim for conversion. On February 25, 2002, the parties appeared before the Court for the hearing on defendant's motion for judgment on the pleadings; at that hearing, counsel for plaintiff and defendant agreed that if plaintiff's conversion claim were to be dismissed, the jurisdictional amount of $ 75,000 would no longer be satisfied and that remand to the Superior Court would be appropriate. At the February 25, 2002 hearing, plaintiff argued that the Court should first determine whether removal was appropriate inasmuch as plaintiff contended that the amount in controversy would be less than $ 75,000 even if the conversion claim remained as a claim in the case. The Court then continued the motion for judgment on the pleadings until after it considered plaintiff's motion for remand.

On March 14, 2002, plaintiff filed a motion to remand this case to the Superior Court, on the grounds that [*3] defendant has failed to demonstrate that plaintiff's claim meets the $ 75,000 amount in controversy requirement. In the same motion, plaintiff requests the imposition of sanctions against defendant and defendant's counsel for their asserted wrongful removal of this case to this Court.

## II. BACKGROUND

Defendant Party City Corporation owns and operates approximately thirty retail stores in California. Complaint ("Comp.") P 3. Plaintiff and the alleged class members currently are or previously were employed by defendant as "salaried employees," a category which includes store managers, executive assistant managers, and assistant managers. Id. P 4. Plaintiff alleges that he and the other salaried employees "were regularly scheduled as a matter of uniform company policy to work and in fact worked . . . in excess of eight hours per workday and/or in excess of forty hours per workweek without receiving straight time or overtime compensation for such overtime hours worked in violation of *California Labor Code Section 1194* and the applicable California Industrial Welfare Commission wage order[s]." Id. P 10. Plaintiff alleges that defendant's failure to pay overtime compensation [*4] resulted from its improper classification of plaintiff and the other class members as "managerial employees" (who are exempt from overtime compensation requirements), when these employees are in fact non-managerial employees (and not exempt from such requirements). Id.

Plaintiff seeks back pay, overtime pay, injunctive relief, disgorgement of business profits, waiting time penalties, interest and attorneys' fees, and punitive damages. Id. at PP 15-16. Plaintiff's claim for punitive damages is based on his claim for conversion. Id. P 27. In his complaint, plaintiff does not plead a specific dollar amount of damages.

## III. PLAINTIFF'S MOTION FOR REMAND

### A. Standard for Motion for Remand

In order to establish removal jurisdiction over a diversity action pursuant to *28 U.S.C. § 1332*, the removing defendant must demonstrate that (1) the amount in controversy exceeds $ 75,000, and (2) the suit is between citizens of different states. [1] The defendant bears the burden of establishing that removal is proper. See *Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996)*. As a general matter, removal jurisdiction is to be construed [*5] strictly, and any doubts as to removability should be resolved in favor of remanding the case to state court. See *Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992)*.

1 The parties do not dispute diversity.

As the removing party, defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $ 75,000. *Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996)*. Under this burden, the defendant must provide evidence establishing that it is "more likely than not" that the amount in controversy exceeds $ 75,000. Id. The amount in controversy is determined as of the date of removal. *Meritcare, Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214, 217-18 (3rd Cir. 1999)*. In a case brought as a class action, only

the claim of the named plaintiff is relevant for determining whether the case meets the amount-in-controversy requirement. *Gibson v. Chrysler Corp., 261 F.3d 927 (9th Cir. 2001).*

In cases in which [*6] the existence of diversity jurisdiction depends on the amount in controversy, the district court may consider whether it is facially apparent from the complaint that the jurisdictional amount is in controversy. *Singer v. State Farm Mutual Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir.1997)* (citations omitted). If the complaint is silent on the amount of damages claimed, the court may consider facts in the removed petition and may require the parties to submit evidence relevant to the amount in controversy at the time of removal. Id. A speculative argument regarding the potential value of the award is insufficient. *Id. at 376.*

B. Application to the Instant Case

Plaintiff contends that remand is required because defendant has failed to identify any facts demonstrating that it is more likely than not that the amount in controversy exceeds the jurisdictional minimum for this Court. Plaintiff's Memorandum of Points and Authorities in Support of Motion to Remand and Request for Sanctions ("Mot.") at 1. Plaintiff argues that defendant has submitted no evidence that plaintiff's overtime claim exceeds $ 75,000. Id. at 4. [2] In addition, plaintiff [*7] argues that defendant has failed to show by a preponderance of the evidence that plaintiff's claim for punitive damages in conjunction with his conversion claim would increase his claim to $ 75,000 or more. Id. at 4-5. Finally, plaintiff contends that to the extent defendant argues that plaintiff's claim for attorneys' fees increases the amount of his claim, (1) defendant has submitted no evidence as to the amount of fees at issue; (2) attorneys' fees not recovered pursuant to *Cal. Labor Code § 1194* may not be properly included in calculating the amount in controversy in determining diversity jurisdiction; and (3) the amount of fees incurred up to the point of removal is *de minimus.* [3] Id. at 6-9.

2  Plaintiff contends that such evidence would include the hours worked by plaintiff; plaintiff's dates of employment; and plaintiff's rate of pay. Id. at 4. In a declaration filed by defendant's counsel Martha Keon on February 11, 2002, Keon stated that plaintiff was employed by defendant for six months at an annual salary of $ 28,000. Keon Decl. P 5. As a result, it does not appear that plaintiff's underlying claim for compensatory damages alone would approach $ 75,000.

[*8]

3  Plaintiff notes that attorneys' fees are calculated at the time of removal for purposes of diversity jurisdiction, *Faulkner v. Astro-Med, Inc., 1999 U.S. Dist. LEXIS 15801, 1999 WL 820198, *4 (N.D. Cal. 1999),* and that the only work done by plaintiff's counsel prior to removal was the filing of the complaint.

In response, defendant argues that plaintiff's claim for punitive damages raises the amount in controversy to more than $ 75,000. Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Remand and Request for Sanctions ("Opp. Mot.") at 5-6. In evaluating punitive damages, the Court may only consider those sought by the named plaintiff rather than by the other members of the putative class. *Gibson, 261 F.3d at 945-47.* Defendant argues that numerous California court decisions and jury verdicts demonstrate that punitive damages in excess of $ 75,000 have been awarded to individual plaintiffs where the plaintiff has alleged conversion of money or personal property. Opp. Mot. at 6; see, e.g., *Leatherman Tool Group, Inc. v. Cooper Industries, Inc., 2002 U.S. App. LEXIS 6228, 2002 WL 507526 (9th Cir. 2002)* [*9] (approving $ 500,000 punitive damages award for improper use of photograph of competitor's product in connection with $ 50,000 compensatory damages award); *Professional Seminar Consultants, Inc. v. Sino American Technology Exchange Council, Inc., 727 F.2d 1470 (9th Cir. 1984)* (awarding plaintiff $ 200,000 in punitive damages on the claim that defendant had converted funds received under an agreement to arrange study tour).

When asked at oral argument whether he intended to seek punitive damages, counsel for plaintiff stated that he did, but that nonetheless, any punitive damages were required to be reasonably related to compensatory damages, thereby suggesting that there was possibility that the amount in controversy could exceed $ 75,000. The Court disagrees and denies plaintiff's motion for remand by reason of the fact that a jury could reasonably be expected to return a verdict in excess of $ 75,000.

IV. DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Having determined that the Court has jurisdiction over the instant case, the Court now turns to defendant's motion for judgment on the pleadings.

A. Standard for Judgment on the Pleadings

A motion [*10] for judgment on the pleadings brought pursuant to *Fed. R. Civ. P. 12(c)* provides a means of disposing of cases when all material allegations of fact are admitted in the pleadings and only questions of law remain. See *McGann v. Ernst & Young, 102 F.3d*

*390, 392 (9th Cir. 1996)*. In considering a *Rule 12(c)* motion, the district court must view the facts presented in the pleadings and the inferences to be drawn from them in the light most favorable to the nonmoving party. *NL Indus. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986)*; In Re Century 21- *Re/Max Real Estate Adver. Claims Litig., 882 F. Supp. 915, 921 (C.D. Cal. 1994)*. For purposes of the motion, the moving party concedes the accuracy of the factual allegations of the complaint, but does not admit other assertions that constitute conclusions of law or matters that would not be admissible in evidence at trial. Wright & Miller, Federal Practice and Procedure: Civil 2d § 1368.

### B. Application to the Instant Case

Defendant argues that judgment on the pleadings is warranted on two separate bases: (1) plaintiff is limited to the remedies provided by statute for failure to pay overtime [*11] wages and (2) disputed wages are not the type of property that can form the basis for a claim for conversion.

Conversion is a tort consisting of the wrongful exercise of dominion over personal property of another. 5 B.E. Witkin, Summary of California Law § 610 (9th ed. 1988). A claim for conversion properly lies where there is substantial interference with possession of the property or the right to it. Id. Property that may be the subject of a claim for conversion includes tangible personal property, intangible property represented by documents such as bonds, notes, and bills of exchange, and money, so long as a specific, identifiable sum is at issue. Id. §§ 612-14.

Defendant argues that because the right to overtime pay is statutory, plaintiff is limited to the remedies provided by statute and cannot assert a claim for conversion for the same alleged wrong. Mot. at 2-3. Under California law, "when a new right has been created by statute, and a statutory remedy for its infringement is provided, the statutory remedy is exclusive and no other remedy will be allowed." 3 B.E. Witkin, California Procedure § 7 (4th ed. 1996); see, e.g., *Stevenson v. Superior Court, 16 Cal. 4th 880, 900, 941 P.2d 1157 (1997)* [*12] ("Where a new right is created by statute, the party aggrieved by its violation is confined to the statutory remedy if one is provided. . . ."). Defendant argues that the right to overtime pay is a right created by statute, and that the California Legislature has created an extensive remedial scheme to address overtime wage disputes. Mot. at 3; see *Cal. Labor Code §§ 98, 98.1, 98.2, 98.3, 98.4, 203, 218.5, 225.5, 1194*.

In response, plaintiff argues that the recent California Supreme Court case of *Cortez v. Purolator Air Filtration Products, 23 Cal. 4th 163, 999 P.2d 706 (2000)* establishes that his claim for overtime wages he is not limited to statutory remedies. Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings ("Opp. Mot.") at 9. The plaintiff in *Cortez* brought an action against her former employer for failure to pay overtime wages. The *Cortez* court held that payment of wages unlawfully withheld from an employee is a restitutionary remedy authorized by *Cal. Bus. & Prof. Code § 17203*. See *id. at 177-78*. Plaintiff appears to be arguing that *Cortez* in some way establishes that plaintiffs are not limited to remedies [*13] established by the Labor Code. Opp. Mot. at 7-8; see also *Kraus v. Trinity Management Services, 23 Cal. 4th 116, 999 P.2d 718 (2000)* (order that a defendant disgorge money obtained through an unfair business practice prohibited by the unfair competition law may include a restitutionary element). However, the plaintiffs in *Cortez* and *Kraus* brought claims under *Cal. Bus. & Prof. Code § 17200*, a statute that had been held to enable a party to seek relief for violation of an independent statute for which there might not otherwise be a private right of action. Neither *Cortez* nor *Kraus* addressed whether the plaintiffs in those cases could have maintained a claim for conversion. Plaintiff fails to cite, and this Court was unable to find, a case in which a statutorily-based claim for nonpayment of wages has been the subject of a conversion claim.

In these circumstances, the Court finds that the statutory remedies for unpaid overtime wages bars plaintiff's claim for conversion. Plaintiff does not appear to dispute that the duty to pay overtime is a duty created by statute rather than one that existed at common law, nor that the Labor Code provides a detailed [*14] remedial scheme for violation of its provisions. Thus plaintiff cannot assert a claim for conversion based on defendant's alleged violation of the statutory duty to pay overtime, but is limited to the remedies provided by statute. [4]

> 4 In light of this holding, the Court does not reach defendant's argument that disputed wages are not the type of property that can give rise to a claim for conversion.

### V. CONCLUSION

Although plaintiff alleges claims for violation of *Cal. Labor Code § 1194 et seq.*, violation of *Cal. Bus. & Prof. Code § 17200 et seq.*, and conversion, punitive damages are only available for conversion. See *Czechowski v. Tandy Corp., 731 F. Supp. 406, 410 (N.D. Cal. 1990)* (punitive damages not available under *section 17200* of the Business and Professions Code); *Cal. Labor Code § 1194(a)* (limiting available remedies to "unpaid balance of the full amount of [] minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs [*15] of suit.") In light of the fact that plaintiff cannot advance a claim for punitive

2002 U.S. Dist. LEXIS 7750, *

damages, it does not appear that plaintiff's damages are in excess of $ 75,000, and as a result this Court lacks jurisdiction over the instant case.

Plaintiff's motion to remand is DENIED. Plaintiff's request for sanctions is DENIED. Defendant's motion for judgment on the pleadings is GRANTED. Defendant is ordered to show cause within twenty days why the case should not be remanded to Superior Court.

IT IS SO ORDERED.

# EXHIBIT 3

LEXSEE 2007 US DIST LEXIS 41679



Analysis
As of: Jul 12, 2007

In Re WAL-MART STORES, INC. WAGE AND HOUR LITIGATION; This
Document Relates To: Case Nos. C 06-02069 SBA (Smith) and C 06-05411 SBA (Bal-
lard)

No. C 06-2069 SBA

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA

*2007 U.S. Dist. LEXIS 41679*

May 29, 2007, Decided
May 29, 2007, Filed

**PRIOR HISTORY:** *Smith v. Wal-Mart Stores, 2006
U.S. Dist. LEXIS 72225 (N.D. Cal., Sept. 20, 2006)*

**COUNSEL:** [*1] For Barry Smith, individually, and on
behalf of all others similarly situated, Michael Wiggins,
individually, and on behalf of all others similarly situ-
ated, Plaintiffs: Bonnie Rae Mac Farlane, LEAD AT-
TORNEY, Attorney at Law, Sacramento, CA; Louis
Michael Marlin, LEAD ATTORNEY, Marlin & Saltz-
man, Irvine, CA; A.E. Bud Bailey, J. Dana Pinney, Bai-
ley Pinney PC, Vancouver, WA.

For Wal-Mart Stores, Inc., a Delaware Corporation, De-
fendant: Jessica Perry, Lynne C. Hermle, LEAD AT-
TORNEYS, Michael A. Aparicio, Orrick Herrington &
Sutcliffe LLP, Menlo Park, CA; Amira Biko Day, Orrick
Herrington & Sutcliffe, Menlo Park, CA; Rudy A.
Englund, Lane Powell PC, Seattle, WA.

**JUDGES:** SAUNDRA BROWN ARMSTRONG,
United States District Judge.

**OPINION BY:** SAUNDRA BROWN ARMSTRONG

**OPINION**

**ORDER**

[Docket No. 72]

This matter comes before the Court on defendant
Wal-Mart, Inc.'s Motion to Dismiss plaintiffs' third, fifth

and sixth claims for relief, and all class allegations, and
Wal-Mart's Motion to Strike all class allegations, plain-
tiffs' claim for punitive damages, and in whole or in part,
paragraphs 1, 3, 7, 20, 23, 27, 33, 37(5), 47, 59-69, 78,
86 and 95, and paragraphs 2 and 7 of the Prayer for Re-
lief [Docket [*2] No. 72]. Having read and considered
the arguments presented by the parties in the papers
submitted to the Court, the Court finds this matter appro-
priate for resolution without a hearing.

The Court hereby DENIES the Motion to Dismiss
with respect to the Third Cause of Action for overtime,
the Sixth Cause of Action for unfair business practices
insofar as it is based on violations of Labor Code *§
227.3*, and the class allegations. The Motion to Dismiss
is GRANTED WITHOUT LEAVE TO AMEND with
respect to the Fifth Cause of Action for conversion and
the Sixth Cause of Action for unfair business practices
insofar as it is based on violations of sections of the La-
bor Code other than *§ 227.3*. Wal-Mart's Motion to
Strike is GRANTED WITH LEAVE TO AMEND with
respect to plaintiffs' claim for punitive damages and
DENIED in all other respects.

**BACKGROUND**

This is a consolidated action against defendant, Wal-
Mart Stores, Inc., brought in two separate actions. The
Smith and Wiggins action (C 06-2069 SBA) was com-
menced in this District on March 20, 2006 with the filing
of the original Complaint. Plaintiffs Ballard and Lyons
commenced an action in the Los Angeles County Supe-

rior Court on [*3] May 17, 2006. That action was subsequently removed, and the Central District transferred the matter to this District (C 06-05411 JSW).

The Ballard and Lyons action was reassigned to this Court as being related to the Smith and Wiggins case. *See* Docket No. 57. On January 9, 2007, the Court ordered that the two cases be consolidated for all purposes and that a single "Consolidated Class Action Complaint" be filed, pursuant to Stipulation. *See* Docket No. 67. By stipulation approved by the Court, plaintiffs were granted leave to file the First Amended Consolidated Complaint ("FACC"). *See* Docket No. 78. The FACC was filed on March 27, 2007. *See* Docket No. 79.

Plaintiffs assert six claims for relief against Wal-Mart, alleging that Wal-Mart has "administered and employed a corporate policy, practice and/or custom" of engaging in the following:

> (1) violations of *California Labor Code sections 201-203* by late payment of wages at termination, FACC PP 42-50;
>
> (2) violations of *California Labor Code section 227.3* by nonpayment of accrued vacation at termination, *id.* PP 51-58;
>
> (3) violations of *California Labor Code sections 500* [*4]  *, 510* and *1194* for failure to pay overtime to non-exempt employees, *id.* PP 59-69;
>
> (4) violations of *California Labor Code section 226* by failure to accurately record and report wages, *id.* PP 70-75;
>
> (5) unfair business practices under *California Business and Professions Code sections 17200 et seq.,* based on the same alleged violations set out in the first through fourth and the sixth claims for relief, *id.* PP 76-82; and
>
> (6) conversion of wages. *Id.* PP 83-95.

Plaintiffs purport to bring their claims on behalf of a class composed of all former employees of Wal-Mart who fit within one of four subclasses. FACC P 32. The four subclasses are defined as follows:

> (1) The "Terminated Sub-Class" is defined as terminated employees who "did not receive all of the wages due them at the time of termination, and/or did not re-

ceive their final wages in a timely manner as mandated by California law."

> (2) The "Vacation Sub-Class" seeks to include all employees who "have not received full and complete compensation for all vested 'vacation pay' as the same is defined under California law and IWC regulations, [*5] including, but not limited to, vacation pay, personal time, holiday pay, etc."
>
> (3) The "Compensation Sub-Class" includes employees who are "properly classified hourly-pay employees of Defendant . . . who have not received all compensation due them for hours worked, including overtime worked."
>
> (4) The "Itemized Statement Sub-Class" purports to include employees "who have not received an accurate and complete itemization of wages earned, rates of pay, etc." *Id.*

Plaintiffs allege that "[a]ll of the named Plaintiffs herein are members of" each sub-class. *Id.* P 33. Each named plaintiff is a former employee of Wal-Mart who worked for Wal-Mart between September 2003 and March 2006. *See id.* PP 26, 28-30. Plaintiff Smith was a salaried manager, and the other three named plaintiffs were hourly employees. *Id.* Further, each of the named plaintiffs allegedly was not paid accrued vacation pay, personal time pay and/or holiday pay, and allegedly was given a final wage statement that was incorrect. *Id.* PP 27-30. Nothing further is alleged with respect to Plaintiffs Smith, Ballard and Lyons. *Id.* PP 26-30. With respect to plaintiff Wiggins, plaintiffs allege that [*6] "Wal-Mart would 'shave off' time from [Wiggins'] time cards whereby Mr. Wiggins was not paid for all of the hours he worked." *Id.* P 27. Plaintiffs further allege, that "when Mr. Wiggins worked a graveyard shift, Wal-Mart would count the hours worked before midnight as working one day, and all the hours worked after midnight as hours worked on another day, thereby denying Mr. Wiggins overtime pay." *Id.*

## LEGAL STANDARD

### I. Motion to Dismiss

Under *Federal Rule of Civil Procedure 12(b)(6)*, a motion to dismiss should be granted if the plaintiff is unable to delineate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 2007 WL 1461066* (abrogating *Conley v.*

*Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).* For purposes of such a motion, the complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. *Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 23 L. Ed. 2d 404 (1969); Everest & Jennings, Inc. v. American Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir. 1994).* [*7] All reasonable inferences are to be drawn in favor of the plaintiff. *Jacobson v. Hughes Aircraft, 105 F.3d 1288, 1296 (9th Cir. 1997).*

The court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); see Miranda v. Clark County, Nev., 279 F.3d 1102, 1106 (9th Cir. 2002)* ("[C]onclusory allegations of law and unwarranted inferences will not defeat a motion to dismiss for failure to state a claim."); *Sprewell v. Golden State Warriors, 266 F.3d 979, 987* ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."), *as amended by, 275 F.3d 1187 (9th Cir. 2001).*

## II. Motion to Strike

*Federal Rule of Civil Procedure 12(f)* provides that a court "may order stricken from any pleading . . . any redundant, immaterial, impertinent or scandalous matter." *Fed. R. Civ. P. 12(f).* "'Immaterial' matter is that [*8] which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993)* (citing 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706-07 (1990)), *rev'd on other grounds, 510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994).* "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.*

*Rule 12(f)* Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delay tactic. *See Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002).* Motions to strike are "generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation." *Rosales v. Citibank, Federal Sav. Bank, 133 F. Supp.2d 1177, 1180 (N.D. Cal. 2001).* Any doubt concerning the import of the allegations to be stricken weighs in favor of denying the motion to strike. *See In re 2* [*9] *In re 2TheMart.com Secs. Litig., 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).*

## ANALYSIS

## I. Motion to Dismiss

### A. The Class Allegations

Wal-Mart argues that plaintiffs' class allegations should be either dismissed or stricken because the series of subclasses that plaintiffs delineate in the FACC are defined by the merits of their legal claims, and such merits-based class definitions impermissibly force the Court to engage in a fact-intensive inquiry in order to determine the scope of each putative subclass. Plaintiffs counter that the members of each class can be determined by "merely reviewing objective criteria," namely Wal-Mart's employment records. Opp at 9:4-7. However, plaintiffs do not explain how the review of such records will determine the members of the subclasses. Moreover, plaintiffs, perhaps indirectly conceding that the class definitions are potentially inappropriate, state that "[d]epending on the Court's desire,""a definition as str[a]ightforward as 'all employees of Defendant who [were] terminated during the class period' could be fashioned." Opp. at 9:26-27.

Wal-Mart cites numerous cases for the proposition that the class [*10] definitions must be sufficiently definite so that it is administratively feasible for the Court to determine whether a particular individual is a member without delving into the merits of the claim. However, nearly all of these cases considered the issue of the appropriate contours of class definitions in the context of a motion for class certification. *See Hagen v. City of Winnemucca, 108 F.R.D. 61 (D. Nev. 1985); Daniels v. City of N.Y., 198 F.R.D. 409, 414 (S.D.N.Y. 2001); Sanneman v. Chrysler Corp., 191 F.R.D. 441 (S.D. Ill. 2000).* Generally, courts review class allegations through a motion for class certification. *See, e.g. Moreno v. Baca, No. CV007149ABCCWX, 2000 U.S. Dist. LEXIS 21368, 2000 WL 33356835, *2 (C.D. Cal. 2000)*(finding defendants' motion to strike class allegations premature because no motion for class certification was before the court). Such a motion should be filed "as soon as practicable" after a defendant answers. *See Fed. R. Civ.P. 23(c)(1).* Wal-Mart has not yet answered the FACC.

While Wal-Mart correctly cites *Kamm v. California City Development Co., 509 F.2d 205, 212 (9th Cir. 1975),* [*11] for the proposition that class allegations may be stricken at the pleading stage, the granting of motions to dismiss class allegations before discovery has commenced is rare. Indeed, while there is little authority on this issue within the Ninth Circuit, decisions from courts in other jurisdictions have made clear that "dismissal of class allegations at the pleading stage should be done rarely and that the better course is to deny such a motion because 'the shape and form of a class action evolves only through the process of discovery.'" *See Myers v. MedQuist, Inc., No. 05-4608, 2006 U.S. Dist.*

*LEXIS 91904, 2006 WL 3751210, \*4 (D. N.J. 2006)* (internal citations omitted) (declining to strike class allegations because discovery had not yet commenced and observing that most courts deny such motions if brought prior to discovery); *see also Motisola Malikha Abdallah v. Coca-Cola Co., No. Civ.A. 1:98CV3679-RW, 1999 U.S. Dist. LEXIS 10612, 1999 WL 527835 (N.D. Ga. 1999)* (dismissal of class allegations prior to discovery premature); *see also 7AA Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure Civil § 1785.3 (3d 2005)* (the practice employed in the overwhelming majority of class actions [\*12] is to resolve class certification only after an appropriate period of discovery). While Wal-Mart cites *Palmer v. Combined Ins. Co. of America, No. 02 C 1764, 217 F.R.D. 430, 2003 WL 466065, \*2 (N.D. Ill. 2003)*, for the proposition that it is sometimes possible to determine from the pleadings alone that the class requirements cannot possibly be met and in such cases striking class allegations before commencing discovery is appropriate, the court in *Palmer* declined to dismiss the class allegations because there were insufficient indicia in the pleadings for the court to determine whether the class allegations were appropriate. *Id.*

Here, the Court notes that plaintiffs' class definitions are somewhat suspicious. For example, the "Termination" subclass includes all terminated employees "who did not receive all of the wages *due* them at the time of termination, and/or who did not receive their final wages in a timely manner as mandated by California law." FACC P 33 (emphasis added). The notion of wages "due" in the context of the complaint appears to be a legal one based on a factual determination, and therefore it appears that the determination of which plaintiffs were not [\*13] paid the wages they were "due" cannot be determined without first determining the underlying issue -- i.e. whether defendant withheld wages that were "due" to terminated employees. Similarly, to determine proper membership in the "Vacation Subclass," the Court would need to determine who has not received *"full and complete"* compensation for all vested vacation pay. The definition of this subclass requires the Court to determine what "full and complete" compensation is in order to determine who the members of the class are, which, again, would appear to involve a legal determination based on the facts relevant to an individual potential class members.

Nevertheless, Wal-Mart has not answered in this case, discovery has not yet commenced, and no motion for class certification has been filed. In the absence of any discovery or specific arguments related to class certification, the Court is not prepared to rule on the propriety of the class allegations and explicitly reserves such a ruling. While plaintiffs' class definitions are suspicious

and may in fact be improper, plaintiffs should at least be given the opportunity to make the case for certification based on appropriate discovery [\*14] of, for example, the electronic employment lists that they claim will identify the class members. Accordingly, Wal-Mart's motions to dismiss or strike the class allegations are premature and are denied, but without prejudice as to Wal-Mart's ability to move to strike or dismiss the class allegations if and when class certification is sought.

### B. Plaintiffs' Overtime Claim

Plaintiffs' third claim for relief seeks overtime pursuant to Labor Code *sections 500, 510* and *1194*. The FACC alleges with respect to plaintiff Wiggins: (1) that "Wal-Mart would 'shave off' time from [Wiggins's] time cards whereby Mr. Wiggins was not paid for all of the hours he worked;" and (2) "when Mr. Wiggins worked a graveyard shift, Wal-Mart would count the hours worked before midnight as working one day, and all the hours worked after midnight as hours worked on another day, thereby denying Mr. Wiggins overtime pay" (referred to herein as the "shift designation" claim). FACC P 27. Wal-Mart argues that neither theory is sufficient to state a claim for relief because (1) the FACC does not allege that Wiggins ever actually worked overtime that was not paid due to the alleged "time-shaving," and (2) Wal-Mart's [\*15] practice of failing to pay overtime wages for hours worked in excess of eight where some hours are worked in a single shift fall before midnight and other hours after midnight is entirely compliant with California law.

### 1. Time Shaving

"Time-shaving" is the practice of doctoring hourly employees' time sheets to reduce their pay. *See Cynthia Estlund, Rebuilding the Law of the Workplace in an Era of Self-Regulation, 105 Colum. L. Rev. 319, 392 (2005)* (citing Steven Greenhouse, *U.S. Jury Cites Unpaid Work at Wal-Mart, N.Y. Times,* Dec. 20, 2002, at A26). The FACC states the following with respect to the alleged time shaving: "During Plaintiff Michael Wiggins' employment with Wal-Mart, Wal-Mart failed to pay overtime. Wal-Mart would 'shave off' time from his time cards whereby Mr. Wiggins would not be paid for all the hours he worked." FACC P 27. Wal-Mart argues that this allegation is insufficient to state a claim for overtime wages because "Wiggins does not allege that he ever worked overtime that was not paid due to this alleged 'time-shaving. . . .Plaintiffs merely mention 'time-shaving' and conclude that Wiggins was not paid for all hours worked." Wal-Mart's [\*16] argument is disingenuous: there is simply no way to interpret the FACC's allegations concerning time-shaving other than as claiming that Wiggins was not paid overtime *because* Wal-

Mart engaged in time-shaving. To argue otherwise is to succumb to sophistry, and Wal-Mart's argument accordingly fails.

## 2. Overtime for Hours Worked in Two Different "Workdays"

Plaintiffs argue that Wal-Mart improperly fails to pay overtime wages for hours worked in excess of eight, where some hours worked in a single shift fall before midnight and others after midnight. Wal-Mart counters that this practice entirely compliant with California Law. *California Labor Code section 510(a)* states in pertinent part: "Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday . . . shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." *Cal. Lab. Code § 510.* Labor Code *section 500,* in turn, defines "workday" as "any consecutive 24-hour period commencing at the same time each calendar day." *Id. § 500(a).*

The California Department of Labor Standards Enforcement ("DLSE") [*17] has interpreted Labor Code *section 500* to mean that "[t]he beginning of an employee's workday need not coincide with the beginning of that employee's shift, and an employer may establish different workdays for different shifts." DLSE Enforcement Policies and Interpretations Manual ("DLSE Manual"), at P 48.1.2. Thus, Wal-Mart argues, if the end of one workday and beginning of the next is set at midnight, only hours worked in excess of eight in *one or the other* workday entitle an employee to overtime pay.

The issue of whether an employer may circumvent the overtime pay provisions of the Labor Code by setting the beginning of the "workday" in the middle of a shift that would otherwise require overtime pay appears to be one of first impression. Wal-Mart points to the following illustration provided in the DLSE Manual as support for its argument that such a practice does not violate the Labor Code:

> A factory worker whose usual shift is 7 a.m. to 3 p.m. has an established workday beginning at 7 a.m. On Tuesday night she is asked to work a special extra shift from 11 p.m. to 7 a.m. Wednesday. *Since she has already worked eight hours on Tuesday,* she is due time and a half [*18] beginning at 11 p.m. on Tuesday night until 3 a.m. and double time from 3 a.m. to 7 a.m. However, *because her workday begins at 7 a.m. she may be paid straight time wages from 7 a.m. to 3 p.m. (her regular shift) on Wednesday regardless of

> *the fact that the time worked is continuous.*

*Id. at P 48.*1.2.1 (emphasis added). While the illustration does state that an employee is not due overtime for two consecutive shifts that span two workdays, it does not state that an employee working a *single shift* usually spanning two workdays should not receive overtime. Moreover, the point of the illustration appears to be that the employee does not receive double overtime recovery; the employee is in fact awarded overtime for her work on Tuesday, but is not again awarded additional overtime for her work on Wednesday. Accordingly, the hypothetical does not provide support for Wal-Mart's argument.

In any case, the first sentence of Labor Code *section 510(a)* bluntly states: "Eight hours of labor constitutes a day's work." In the context of an overtime statute, this sentence clearly conveys the legislature's intent that, other than in the case of specific enumerated exceptions, a [*19] shift of more than eight hours of consecutive work qualifies for overtime pay. California's overtime laws are remedial and are to be construed so as to promote employee protection. *Sav-on Drug Stores, Inc. v. Superior Court, 34 Cal.4th 319, 340, 17 Cal. Rptr. 3d 906, 96 P.3d 194 (2004).* Additionally, the California Supreme Court has held that interpretations contained in the DLSE Manual are non-binding and are entitled to no deference. *See Tidewater Marine Western, Inc. v. Bradshaw, 14 Cal.4th 557, 568, 59 Cal. Rptr. 2d 186, 927 P.2d 296 (1996).* Therefore, to the extent that the DLSE's opinion that "[t]he beginning of an employee's workday need not coincide with the beginning of that employee's shift, and an employer may establish different workdays for different shifts" is inconsistent with the Labor Code's goal of promoting employee protection, this opinion should be ignored. *See Tomlinson v. Indymac Bank, F.S.B, 359 F. Supp. 2d 891, 895 (C.D. Cal. 2005)* (finding DLSE reasoning and examples unpersuasive because "in California, 'agency interpretations are not binding or ... authoritative' and '[c]ourts must, in short, independently judge the text of a statute.'") (citing *Bonnell v. Medical Board of California, 31 Cal.4th 1255, 1264, 8 Cal. Rptr. 3d 532, 82 P.3d 740 (2003)).* [*20] Accordingly, the Court holds that plaintiffs have properly alleged a claim for failure to pay overtime in violation of Labor Code *sections 500, 510* and *1194.*

## C. Conversion

Plaintiffs' fifth claim for relief is for conversion. Plaintiffs base this claim on the same conduct alleged against Wal-Mart in the first through fourth claims for relief, i.e., violations of the Labor Code. Plaintiffs allege that "[b]y failing to pay earned wages, actual damages,

and penalty wages to Plaintiffs and the others similarly situated, defendant wrongfully obtained and held the monies belonging to Plaintiffs and others similarly situated." FACC P 79.

Conversion is a tort consisting of the wrongful exercise of dominion over personal property of another. 5 B.E. Witkin, *Summary of California Law* § 610 (9th ed.1988). A claim for conversion properly lies where there is substantial interference with possession of the property or the right to it. *Id.* Property that may be the subject of a claim for conversion includes tangible personal property, intangible property represented by documents such as bonds, notes, and bills of exchange, and money, so long as a specific, identifiable sum is at [*21] issue. *Id.* §§ 612-14; *see also Green v. Party City Corp, No. CV-01-09681 CAS, 2002 U.S. Dist. LEXIS 7750, 2002 WL 553219, *4 (C.D. Cal. 2002).*

Under California law, where a statute creates a right that did not exist at common law and provides a comprehensive and detailed remedial scheme for its enforcement, the statutory remedy is exclusive. *Rojo v. Kliger, 52 Cal.3d 65, 79, 276 Cal. Rptr. 130, 801 P.2d 373 (1990); see also Stevenson v. Superior Court, 16 Cal. 4th 880, 900, 66 Cal. Rptr. 2d 888, 941 P.2d 1157 (1997)* ("Where a new right is created by statute, the party aggrieved by its violation is confined to the statutory remedy."). Wal-Mart argues that all of the allegations in the FACC seek relief under the comprehensive scheme implemented by the Labor Code, and therefore plaintiffs' only recourse is through the procedures prescribed by that regulatory scheme. Reply at 7.

In response, plaintiffs argue that California courts have specifically recognized wages as a proper subject of conversion claim, citing *DLSE v. UI Video Stores, Inc., 55 Cal. App.4th 1084, 64 Cal. Rptr. 2d 457 (1997).* In that case, the DLSE had negotiated a settlement with Blockbuster for reimbursement of funds paid by employees for uniforms in contravention [*22] of California law. *Id. at 1095-96.* Rather than abide by the terms of the settlement, which directed Blockbuster to send the checks directly to the DSLE, Blockbuster mailed the checks directly to the employees and then retained the checks that were returned as undeliverable, refusing to hand them over the DSLE and thereby retaining the funds. The court found that DSLE had properly alleged a claim for conversion in arguing that Blockbuster had unlawfully retained the checks. *Id. UI Video Stores* is distinguishable from the instant case because the DSLE was not suing for enforcement of the Labor Code, but was rather suing for a breach of the settlement agreement. *Id. UI Video Stores* did not involve, as does this case, plaintiffs seeking wages pursuant to the Labor Code and simultaneously alleging a cause of conversion based on the same underlying facts.

While there are no California cases on point, two federal courts have considered this argument under strikingly similar circumstances and held that a claim for unpaid wages under the Labor Code cannot form the basis for a claim of conversion given the existence of the Labor Code's "detailed remedial scheme for [*23] violation of its provisions." *Green, 2002 U.S. Dist. LEXIS 7750, 2002 WL 553219 at*4; see also Pulido v. Coca-Cola Enters., No. EDCV06-406VAP, 2006 U.S. Dist. LEXIS 43765, 2006 WL 1699328, *9 (C.D. Cal. 2006).* *Green* directly considered the question in the context of overtime wages, and *Pulido* considered the issue with respect to penalties for forcing the plaintiffs to work through meal and rest periods. *Pulido, 2006 U.S. Dist. LEXIS 43765, 2006 WL 1699328 at *9.* The rationale adopted in both *Green* and *Pulido* is persuasive. With the exception of *UI Video Stores*, which is distinguishable, plaintiffs identify no case in which a claim for unpaid wages under the Labor Code was properly held to also state a claim for conversion. Moreover, it should be noted that, were the Court to agree with plaintiffs that a claim for "earned wages, actual damages, and penalty wages" constitutes a conversion claim, such a rule would in effect transform *every* claim for damages and statutory penalties into a conversion claim, thereby providing punitive damages for every breach of a statute that implements a penalty for its breach. While plaintiffs apparently included this cause of action for the purpose of [*24] claiming punitive damages, *see* Compl. P 82 ("Plaintiffs and others similarly situated are entitled to punitive damages . . . *as well as* all damages allowed under [the] California Labor Code" (emphasis added)), the cause of action for conversion is improper and is dismissed.

**B. Business and Professions Code** *Section 17200*

Plaintiffs' sixth claim for relief alleges unfair business practices in violation of *California Business and Professions Code section 17200, et seq.,* also known as the state's Unfair Competition Law ("UCL"). As with the cause of action for conversion, plaintiffs base this cause of action on the same allegations that support the First through Fourth Causes of Action for violations of the Labor Code. While Wal-Mart initially moved to dismiss the UCL claim *in toto,* in its reply brief, Wal-Mart, presumably responding to plaintiffs' citation of on-point authority, *Cortez v. Purolator Air Filtration Products Co., 23 Cal.4th 163, 177, 96 Cal. Rptr. 2d 518, 999 P.2d 706 (2000)* (concluding that orders for payment of wages unlawfully withheld from an employee pursuant to Labor Code § 227.3 are a restitutionary remedy authorized by *section* [*25] *17203*), concedes that plaintiffs have properly alleged an "unlawful business practice" based upon the alleged failure to pay accrued vacation pay in violation of Labor Code § 227.3. *See* Reply at 11 ("The Court

should grant Defendant's motion to dismiss the sixth claim with respect to any alleged "unlawful business practice" other than the alleged violation of *section 227.3*") (emphasis in original).

For their part, plaintiffs concede that under *Tomlinson, supra, 359 F. Supp. at 895*, claims pursuant to Labor Code §§ 203 and 226 cannot support a § 17200 claim. *See Id. at 895* (granting judgment on the pleadings on ground that Labor Code § 203 provides for a penalty, not wages, which cannot be raised through § 17200 claim). Accordingly, as the parties are correctly in agreement as to the scope of plaintiff's UCL claim, Wal-Mart's motion to dismiss the Sixth Cause of Action is granted with respect to claims based on §§ 203 and 226 and denied with respect to claims under § 227.3. *See Cortez, supra, 23 Cal.4th at 177.*

## II. Motion to Strike

### A. The Class Allegations

As the Court has already determined that Wal-Mart's [*26] motion to dismiss the class allegations should be denied as premature, so does the Court deny the motion to strike the class allegations.

### B. Punitive Damages

Wal-Mart argues that the Court should strike plaintiffs' prayer for punitive damages because none of the claims asserted allows the imposition of punitive damages. Specifically, Wal-Mart argues that 1) because the Labor Code sections provide for remedies for violations of those sections, including specific penalties, plaintiffs are precluded from seeking punitive damages as such damages would amount to double recovery; 2) it is settled law that punitive damages are not available under § 17200, *et seq.;* and 3) plaintiffs' conversion claim fails and therefore provides no basis for punitive damages.

Where a right is created by statute and the statute does not expressly permit punitive damages, punitive damages under *California Civil Code section 3294* are not available. *See Turnbull & Turnbull v. ARA Transp., Inc., 219 Cal. App. 3d 811, 826-27, 268 Cal. Rptr. 856 (1990)* (stating, "when a new right . . . is created by statute and a statutory remedy for the infringement thereof is [*27] provided, such remedy is exclusive of all others") (citing *Orloff v. L.A. Turf Club, 30 Cal. 2d 110, 112-13, 180 P.2d 321 (1947)); see also Czechowski v. Tandy Corp., No. C-88-2868, 731 F. Supp. 406, 410 (N.D. Cal. 1990)* (Schwarzer, J.) (penalty provision provided by Labor Code precludes award of punitive damages).

In *Czechowski,* this Court considered the very issue being raised by plaintiffs, i.e., whether punitive damages are available under Labor Code *sections 227.3 and 203*

or *California Business & Professions Code sections 17200 and 17203,* and concluded that they are not. This Court held that because *section 203* provides for the award of statutory penalties when an employer "willfully fails to pay" wages due upon termination, the Legislature's provision of such statutory penalties precludes an award of punitive damages. *Id at 410.* (citing *Marshall v. Brown, 141 Cal. App. 3d 408, 418-19, 190 Cal. Rptr. 392 (1983)).* This Court further noted that claims under *section 17200* of the Business and Professions Code will not support an award of punitive damages. *Id.* (citing *Newport Components v. NEC Home Electronics, 671 F.Supp. 1525, 1550-51 (C.D. Cal.1987)).* [*28] Indeed, it is settled law that punitive damages are not available under *section 17200. See Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1148, 131 Cal. Rptr. 2d 29, 63 P.3d 937 (2003)*("While the scope of conduct covered by the UCL is broad, its remedies are limited. A UCL action is equitable in nature; damages cannot be recovered. . . . We have stated that under the UCL, '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.'") (internal citations omitted); *see also Dozier v. Maispace, No. C-05-1761, 2007 U.S. Dist. LEXIS 14540, 2007 WL 518622, *10 (N.D. Cal. 2007)* (Trumbull, Mag. J.) (holding that neither compensatory nor punitive damages are recoverable under *section 17200*) (citing *Industrial Indemnity Co. v. Santa Cruz County Superior Court, 209 Cal.App.3d 1093, 1096, 257 Cal. Rptr. 655 (1989)).*

Plaintiffs urge this Court to overturn its prior ruling on this very issue in *Czechowski,* relying on a 104 year-old case, *Greenberg v. Western Turf Ass'n, 140 Cal. 357, 73 P. 1050 (1903).* In *Greenberg,* the California Supreme Court upheld the imposition of punitive damages where a statutory penalty had already been awarded because it determined that the civil penalty [*29] was not meant to punish. Based on *Greenberg,* plaintiffs attempt to argue that the Labor Code penalties they seek to impose in this case are not meant to "punish." Opp. at 18:24-19:5 (citing *Marshall v. Brown, 141 Cal. App. 3d. 408, 190 Cal. Rptr. 392 (1993)* (punitive damages not available where purpose of treble damages provision of Labor Code § 1054 was to punish). However, as the California Supreme Court noted in *Murphy v. Kenneth Cole Productions, Inc.,* Labor Code *sections 203* and *226* do in fact impose "penalties" explicitly labeled as such. *40 Cal. 4th 1094, 1108-09, 56 Cal. Rptr. 3d 880, 155 P.3d 284 (2007).* As the Labor Code provides for compensatory damages *in addition* to statutory penalties, it is difficult to fathom how such penalties are not meant to "punish" employers who willfully violate the provisions of the Labor Code. As this Court's reasoning in *Czechowski* was sound, the Court declines to overturn it.

Finally, plaintiffs argue that the Court should allow plaintiffs to seek punitive damages because the "statutory

remedies may be inadequate." Plaintiffs' argument appears to be that because the statutory penalties provided by the Labor Code are not substantial enough (i.e., are [*30] limited to a maximum of 30 days worth of wages per former employee), they are insufficient to deter Wal-Mart or others from "committing the same acts in the future." Opp. at 20:28. Thus, in essence, plaintiffs seek to have this Court substitute its own judgment for that of legislature's regarding the appropriate punishment for violations of the Labor Code. This Court declines to do so. *See Wynn v. NBC, 234 F. Supp. 2d 1067, 1112 (C.D. Cal. 2002)* ("When the Legislature has spoken, the court is not free to substitute its judgment as to the better policy.") (citing *City and County of San Francisco v. Sweet, 12 Cal.4th 105, 121, 48 Cal. Rptr. 2d 42, 906 P.2d 1196 (1995)*). Accordingly, plaintiff's prayer for punitive damages is stricken.

## CONCLUSION

For the foregoing reasons, Wal-Mart's Motion to Dismiss is DENIED with respect to the Third Cause of Action for overtime, the Sixth Cause of Action for unfair business practices insofar as it is based on violations of Labor Code § 227.3, and the class allegations. The Motion to Dismiss is GRANTED WITHOUT LEAVE TO AMEND with respect to the Fifth Cause of Action for conversion and the Sixth Cause of Action for [*31] unfair business practices insofar as it is based on violations of sections of the Labor Code other than § 227.3.

Wal-Mart's Motion to Strike is GRANTED WITH LEAVE TO AMEND with respect to plaintiffs' claim for punitive damages and DENIED in all other respects. Paragraph 7 of the Prayer for Relief is STRICKEN. Plaintiffs are granted leave to file an amended complaint no later than 20 days of this Order **only if** they can allege an adequate basis for punitive damages.

IT IS SO ORDERED.

Dated: 5/29/07

SAUNDRA BROWN ARMSTRONG

United States District Judge

EXHIBIT 4

Westlaw.

Not Reported in F.Supp.                                                                                            Page 1

Not Reported in F.Supp., 1981 WL 2331 (E.D.Wash.), 25 Wage & Hour Cas. (BNA) 89, 92 Lab.Cas. P 34,068
**(Cite as: Not Reported in F.Supp.)**

**C**
Madrigal v. Green Giant Co.

United States District Court; E.D. Washington.
**Margarita Madrigal et al., Plaintiffs**
**v.**
**Green Giant Company, Defendant.**
**No. C-78-157**
C-78-157
July 27, 1981
MCNICHOLS, D.J.

[*Statement of Case*]

*\*1* This case is before the Court on the following motions: (1) plaintiffs' motion for order compelling answers to interrogatories; (2) plaintiffs' motion for leave to notify employees; (3) plaintiffs' motion for class certification; and (4) defendant's motion to dismiss.

The Court raised an additional issue at the hearing on these motions; namely, whether the holding in *Brennan v. Veterans Cleaning Service,* [72 LC P 32,948] 482 F.2d 1362 (5th Cir. 1973), should be applied to dispose of the merits of plaintiffs' FLSA claim in the instant case. The parties have thoroughly briefed this question, and it will be decided in this Memorandum and Order.

**Motions to Compel Answers and Notify Employees**

The first two motions listed above must be considered together. Plaintiffs' reason for seeking the answers to interrogatories is to obtain names and addresses of Green Giant employees whom plaintiffs seek to notify of the pending action. Defendant objects to any judicial intervention related to notification of class members in an action brought under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b).

It is well-settled that the FLSA provision for class actions operates independently of Fed.R.Civ.P. 23. The FLSA requires potential class members to "opt in" rather than "opt out," and only those who file a written consent become parties to the suit. Those who do not opt in are not prejudiced from bringing subsequent suits individually. *Kinney Shoe Corp. v. Vorhes,* [82 LC P 33,604] 567 F.2d 859, 862 (9th Cir. 1977). In responding to plaintiffs' motion regarding notification of potential class members, defendant relies primarily on *Kinney,* which I believe is controlling authority in the instant case. Under facts very close to those here, the court in *Kinney* vacated a district court discovery order to produce an employee list to the extent the list was requested for notification purposes, holding that a district court is without power to aid a plaintiff in notifying potential FLSA class members. *Accord Joyce v. Sandia Laboratories,* [23 EPD P 31,043A] 22 FEP Cases 1727 (N.D. Cal. May 31, 1980).

I do not believe that the reasoning adopted by plaintiffs from the holding in *Riojas v. Seal Produce, Inc.,* [86 LC P 33,815] 82 F.R.D. 613 (S.D. Tex. 1979), can be harmonized with *Kinney.* Nor do I find *In re Primus* 436 U.S. 412 (1978), to be controlling. As noted by the court in *Joyce v. Sandia Laboratories, supra,* at 1728, *In re Primus* does not overrule *Kinney.* Rather, *In re Primus* addressed the propriety of a legal aid attorney soliciting clients.

Plaintiffs also contend that considerations of fairness and judicial economy require that notice be given to potential FLSA claimants where allegations of both a Rule 23 class and a § 216(b) class create the possibility of collateral estoppel. I need not address this issue in light of my holding on plaintiff's motion for Rule 23 class certification.

Because the decision in *In re Primus* may arguably afford plaintiffs in the present case a legal basis on which to proceed in soliciting additional parties if they so choose, the Court will not prohibit further

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                  Page 2

Not Reported in F.Supp., 1981 WL 2331 (E.D.Wash.), 25 Wage & Hour Cas. (BNA) 89, 92 Lab.Cas. P 34,068
**(Cite as: Not Reported in F.Supp.)**

notification of Green Giant employees by plaintiffs. The Court will, however, avoid giving any aid in notification efforts, including the request for production of an employee list. Plaintiffs' motion in that respect is therefore DENIED.

### Merits of Plaintiffs' FLSA Claims

**\*2** The Fifth Circuit in *Brennan v. Veterans Cleaning Service,* 482 F.2d 1362 (5th Cir. 1973), held that employer deductions from an employee's pay to recoup advances made by the employer did not violate FLSA minimum wage provisions if the advances were made "free and clear." The issue presented, then, is whether the travel advances and food coupons issued by Green Giant in the case at bar are "free and clear." After reading the memoranda submitted on this point and the pertinent case authority, I have concluded that neither the food coupons nor the travel allowances offered by Green Giant represent "free and clear" advances within the context of 29 C.F.R. § 531.35 and *Brennan.* Plaintiffs are therefore permitted to go forward with their first cause of action based on the FLSA.

### Motions to Dismiss Third, Fourth, and Fifth Cause of Action

In arguing their respective positions on defendant's motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), both parties have relied upon and filed various exhibits and affidavits. These documents are relevant to the disposition of defendant's motions. Under these circumstances Fed.R.Civ. P. 12 provides that the Court may treat the motions as ones for summary judgment and dispose of them as provided in Fed.R. Civ.P. 56. The parties have had sufficient opportunity to present material pertinent to a summary judgment determination, as required by Fed.R.Civ.P. 12. Neither party, in my judgment, would be prejudiced by treating defendant's motions to dismiss as motions for summary judgment. *See Dayco Corp v. Goodyear Tire and Rubber Co.,* 523 F.2d 389 (6th Cir. 1975). Therefore, I shall treat the motions as motions for summary judgment and consider the affidavits and

exhibits filed in support thereof. I will, however, allow either party, by way of a motion for reconsideration, to supplement the record with materials relevant to my decision herein. Such a motion shall be filed within ten (10) days of the receipt of this opinion.

Dealing first with the fifth cause of action in the complaint, I conclude that as a matter of law defendants have not breached the employment agreement in the manner alleged by the complaint. Plaintiffs' allegations in the complaint concerning the contracts state:

6.5. Plaintiffs and other class members entered into written contracts of employment prior to the seasons at issue obligating the defendant to keep accurate records of hours worked, pay at least the applicable minimum wage, and comply with other state and federal laws covering wages.

7.5. Fifth Cause of Action

Defendant has unlawfully breached its contract of terms and conditions of employment with plaintiffs and their class.

As part of plaintiffs' class action allegation, the complaint further states:The basic questions of law and fact common to the class are ... (c) Whether the defendant has violated the contractual rights of class members with respect to payroll deductions and recordkeeping.

These breach of contract allegations in the complaint are aimed solely at the payroll practices of Green Giant set forth in Section VI of the complaint titled "STATEMENT OF FACTS;" namely, the deduction of travel and food coupon advances from employees' paychecks and the alleged failure to make, keep, and preserve accurate records of employees' wages and hours. A review of the employment contracts contained in Counsel's Joint Submission of Clearance Orders and Form Employment Contracts, filed with the Court, reveals that in each of the years in question the contract states an hourly wage rate, equal to or above the minimum wage required by the FLSA. The contract further provides that Green Giant may make deductions from an employee's paycheck to recover "personal advances" by the company.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1981 WL 2331 (E.D.Wash.), 25 Wage & Hour Cas. (BNA) 89, 92 Lab.Cas. P 34,068
**(Cite as: Not Reported in F.Supp.)**

There is, however, no language in the contract that guarantees the employees a certain minimum wage after the advances are deducted from their checks. Given these undisputed facts as evidenced by the contracts, I find as a matter of law that there can be no breach of contract claim premised solely on a failure to pay the hourly wage rate provided for by the contracts.

### [Dependent Claims]

**\*3** The third and fourth causes of action arguably state claims upon which relief could be granted. However, if it is determined that the success of either cause of action is wholly dependent upon the showing of a FLSA violation, it must be dismissed. In *Lerwill v. Inflight Motion Pictures, Inc.,* [68 LC P 32,717] 343 F.Supp. 1027 (N.D. Cal. 1972), the court in a wellreasoned opinion explained why a remedy other than the FLSA should not be allowed as a means of enforcing a FLSA minimum wage violation.

It is true that nowhere in the statute is it provided that § 216(b) provides the sole means of recovery for an employee. A brief review of some of the legislative history of the Act, as amended has not revealed an express statement of such intention. On its face, however, a clearer case of implied intent to exclude other alternative remedies by the provision of one would be difficult to conceive....
On the other hand, a careful examination of the other provisions of the FLSA, as amended, does disclose a Congressional intent that the right of action so provided was to be the sole means by which employees could enforce the rights created by § 207. The restriction on class recoveries found in § 216(b), the statute of limitations in § 255, and the restriction on liquidated damages awards in § 260; all part of the "Portal to Portal Pay Act of 1947", 61 Stat. 84, are examples of the refining process to which Congress has subjected the § 216(b) remedy.... In so doing Congress created a remedy conditioned with both advantages and disadvantages to the claimant. It would be difficult indeed to find any purpose in that careful process if alternative remedies, varying with variations of state law were also to be available in any case in which the alternative seemed more

advantageous to the plaintiff-employee seeking to enforce his § 207 rights.
The only conclusion possible, then, is that the statutory remedy is the sole remedy available to the employee for enforcement of whatever rights he may have under the FLSA....

*Id.* at 1028-29; *accord Carter v. Marshall,* [83 LC P 33,653] 457 F. Supp. 38 (D. Col. 1978); *Platt v. Burroughs Corp.,* 424 F. Supp. 1329 (E.D. Penn. 1976).

The advantage to plaintiffs in maintaining either the Wagner-Peyser claim or the claim under R.C.W. 49.52.070 is obvious: those claims can serve as bases for certifying a Fed.R.Civ. P. 23 class, thereby circumventing the disadvantageous "optin" procedure for class actions under the FLSA. Moreover, the Washington statute provides for a broader remedy in the form of double damages and attorney's fees. If such a result were permitted, the statutory requirements of the FLSA would effectively be gutted.

For the reasons stated below, I have concluded that the third and fourth causes of action are both premised solely on violations of the FLSA, and thus their inclusion in the complaint as alternative remedies for enforcing the FLSA runs afoul of the intent of Congress in enacting the FLSA.

**\*4** The third cause of action is based on the Wagner-Peyser Act, 29 U.S.C. § 49 *et seq.* That act, originally enacted in 1933, created a cooperative federal-state employment service with a primary purpose of connecting unemployed workers with jobs. *Frederick County Fruit Growers Association v. Marshall,* 436 F. Supp. 218 (W.D. Va. 1977). Recruitment of workers through an interstate clearance system is accomplished by the employer filling out a "job order." Federal regulations set forth certain requirements for an acceptable job order. The job order form signed by the employer discloses all the material terms and conditions of employment. Before the order is approved, it must be determined that regulatory standards relating to discrimination, housing, minimum wages, and other working conditions have been met.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                     Page 4

Not Reported in F.Supp., 1981 WL 2331 (E.D.Wash.), 25 Wage & Hour Cas. (BNA) 89, 92 Lab.Cas. P 34,068
**(Cite as: Not Reported in F.Supp.)**

[*Implied Remedy*]

The Wagner-Peyser Act as enacted did not provide civil remedies for violations of the Act. The courts have in recent years, however, created an implied cause of action. E.g., *Gomez v. Florida State Employment Service,* [62 LC P 9395] 417 F.Supp. 569 (5th Cir. 1969). While such a remedy is available, I do not believe that an implied cause of action is warranted under the facts of this controversy. In the reported decisions where courts have implied a civil remedy, the complaints have alleged Wagner-Peyser Act violations of far greater magnitude than wage deduction infractions. *Gomez v. Florida State Employment Service,* 417 F.2d 569 (5th Cir. 1969) (housing lacked plumbing, electricity, heat, drinking water, or refuse disposal); *Vasquez v. Ferre,* 404 F. Supp. 815 (D.N.J. 1957) (workers found no work as promised and were forced into peonage); *Galindo v. Del Monte Corp.,* 382 F. Supp. 464 (N.D. Ill. 1974) (same facts as in *Vasquez, id.*).

Moreover, in *Gomez,* the court stated its reasoning for implying a remedy as follows:
What better way will there be to eliminate the problem of poor workers responding to "Clearance Orders", journeying hundreds of miles across the country to accept work and the advantage of the benefits promised by the laws of the United States only to find that the promise is a fraud? *Absent an implied remedy, the workers have no protection.*

417 F.2d at 576. (Emphasis added). Such is not the case here; plaintiffs can obtain redress under the FLSA. I believe the instant case is analogous to *27 Puerto Rican Migrant Farm Workers v. Shade Tobacco Growers Agricultural Association, Inc.,* [5 EPD P 8456] 352 F. Supp. 986, 991 (D. Conn. 1973), where the court distinguished *Gomez.* The two most significant differences between *Gomez* and the present case are that the plaintiffs in *Gomez* had no other remedy available to them, as has been suggested in *Chavez v. Freshpict Foods,* 456 F.2d 890 (10th Cir. 1972), *cert. denied,* 409 U.S. 1042, 93 S. Ct. 535, 34 L.Ed.2d 492 (1972); and in *Gomez,* the conditions to which the plaintiffs were subjected clearly existed in violation of specific federal regulations.

Even if a remedy under Wagner-Peyser was implied, the only basis for such an action is a FLSA violation. The only specific federal regulations enacted under the Wagner-Peyser Act which involve wages are codified in the Code of Federal Regulations. These regulations were amended during the time period relevant to the instant litigation. Prior to November, 1976, the requirements appeared at 20 C.F.R. § 602.9. The only reference to wages in that regulation provided that no job order would be placed unless
**\*5** (c) The State agency has ascertained that wages offered are not less than the wages prevailing in the area of employment among similarly employed domestic agricultural workers recruited within the State and not less than those prevailing in the area of employment among similarly employed domestic agricultural workers recruited outside the State.

Section 602.9 was replaced by 20 C.F.R. § 653.108 , which makes the following references to wages:(c) No local office shall place a job order for agricultural workers into intrastate clearance unless ...
(2) The employer has signed the statement required by paragraph (c)(3) of this section that the job offer states all the material terms and conditions of employment ... [and]
(4) The wages and working conditions offered are not less than the prevailing wages and working conditions among similarly employed agricultural workers in the area of intended employment *or the applicable Federal or State minimum wage,* whichever is higher. If a base rate and a bonus is offered, the base rate must not be less than the prevailing wage rate or applicable Federal or State minimum wage, whichever is higher. (Emphasis added)

Plaintiffs have not alleged that the wages paid by defendant are less than the prevailing rate in the geographic area of employment as required by the regulations. The only possible violation of the Wagner-Peyser regulations, therefore, is the payment of less than minimum wage under the FLSA as proscribed by the regulations.

Plaintiffs have cited cases where violations of the Wagner-Peyser Act were premised on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1981 WL 2331 (E.D.Wash.), 25 Wage & Hour Cas. (BNA) 89, 92 Lab.Cas. P 34,068
**(Cite as: Not Reported in F.Supp.)**

misrepresentations in the clearance order or breaches of employment contracts accomplished through the interstate clearance system. (See Plaintiffs' Memorandum in Response to Defendant's Motion to Dismiss at p. 5, note 5). As discussed above, there has been no breach of the employment contracts by Green Giant with respect to wages. In reviewing the clearance orders contained in Counsel's Joint Submission of Clearance Orders and Form Employment Contracts for each of the relevant years, I find in every order a disclosure to the reader that deductions will be made from the employees' wages for travel and subsistance advances.

I therefore conclude not only that the implication of a civil remedy under Wagner-Peyser is inappropriate in this case, but also that plaintiffs have not stated an independent cause of action under Wagner-Peyser. Because the Wagner-Peyser cause of action is dependent upon the claims under the FLSA, judgment is granted to defendant on plaintiffs' third cause of action.

The fourth cause of action specifically alleges a violation of R.C.W. 49.52.050 and .070. Subsection .050 provides in part:
Any employer ... who ... (2) shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance, or contract ...
Shall be guilty of a misdemeanor.

Subsection .070 further states:Any employer ... who shall violate any of the provisions of subdivisions (1) and (2) of R.C.W. 49.51.050 shall be liable in a civil action by the aggrieved employee ... to a judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum of attorney's fees....

*6 Because I have determined that there has been no breach of the employment contract by the employer with respect to wage rates, the only basis for a claim under the Washington statute is dependent upon a violation of the FLSA. As previously stated, the procedural aspects of the FLSA would be emasculated if I allowed a separate cause of action to proceed based on the state statute.

**Plaintiffs' Motion for Rule 23 Class Certification**

Because I am dismissing plaintiffs third, fourth, and fifth causes of action, no basis remains for a Rule 23 class action and the issue of class certification is therefore moot.

**Summary**

For the reasons stated in this Memorandum and Order, It Is Ordered that:
(1) plaintiffs' Motion for Notice to Similarly Situated Employees is Denied;
(2) plaintiffs' Motion to Enforce Magistrate Suko's Order Compelling Answers to Interrogatories is Denied;
(3) plaintiffs' Motion for Class Certification is Denied;
(4) defendant's Motion for an Order granting judgment on plaintiffs' third, fourth, and fifth causes of action is Granted; and
(5) the statute of limitations for the FLSA class members, as set forth at 29 U.S.C. § 255, shall be deemed tolled for the time period during which the plaintiffs' motions with respect to discovery of the identity of class members have been under advisement by the Court, to-wit: January 8, 1979 to the date of this Order.

Madrigal v. Green Giant Co.
Not Reported in F.Supp., 1981 WL 2331 (E.D.Wash.), 25 Wage & Hour Cas. (BNA) 89, 92 Lab.Cas. P 34,068

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 5

Westlaw.

Not Reported in F.Supp.

Not Reported in F.Supp., 1993 WL 228014 (S.D.N.Y.), 125 Lab.Cas. P 35,845
**(Cite as: Not Reported in F.Supp.)**

**C**
Petras v. Johnson
S.D.N.Y.,1993.

United States District Court, S.D. New York.
Konstantinos PETRAS, Plaintiff,
v.
Elizabeth Ross JOHNSON and Christopher J.
Kennan, Defendants.
**No. 92 CIV. 8298 (CSH).**

June 22, 1993.

MEMORANDUM OPINION AND ORDER
HAIGHT, District Judge:
**\*1** This case is before the Court on defendants' motion to dismiss plaintiff's Seventh and Eighth Causes of Action under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

BACKGROUND

Plaintiff Konstantinos Petras filed this complaint alleging that he was wrongfully deprived of overtime compensation by defendants Elizabeth Ross Johnson and Christopher J. Kennan during his employment as their chauffeur from September 1, 1990 to July 5, 1992.

Plaintiff's First Cause of Action seeks $55,217.52 in compensation for 2,285 hours work in excess of a workweek of forty hours under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Section 207. Plaintiff also seeks an equal amount as liquidated damages (Second Cause of Action) and reasonable attorney's fees and the costs of the action to be paid by defendants (Third Cause of Action) under the FLSA, 29 U.S.C. Section 216(b). Plaintiff's following three causes of action similarly seek unpaid overtime compensation, liquidated damages, and attorney's fees under the New York State Labor

Law. In addition to these statutory remedies, plaintiff's Seventh Cause of Action alleges that defendants, by labeling plaintiff's compensation as " salary" in the agreement signed by the plaintiff on August 24, 1990, fraudulently misrepresented the full salary and overtime plaintiff was entitled to be compensated for. The Eighth Cause of Action claims that by reason of defendants' acts plaintiff is entitled to recover punitive damages in the sum of $1,000,000 plus interest costs expenses and disbursements of his action.

Defendants move to dismiss plaintiff's Seventh and Eighth Causes of Action on the grounds that common law tort claims are barred by the federal relief provisions of the FLSA for failure to pay overtime, including express FLSA provisions for liquidated damages. FLSA, 29 U.S.C. Sections 207 , 216.

For the reasons stated below, defendants' motion to dismiss is granted.

DISCUSSION

On a motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., the trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974). The district court should grant a motion to dismiss under Rule 12(b)(6) "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding,* 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson,* 35 U.S. 41, 45-46 (1957)).

Except in certain circumstances, consideration of a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                      Page 2

Not Reported in F.Supp., 1993 WL 228014 (S.D.N.Y.), 125 Lab.Cas. P 35,845
**(Cite as: Not Reported in F.Supp.)**

motion to dismiss a complaint must focus on the allegations made on the face of the complaint. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir.1991). On a motion to dismiss, the district court must accept the plaintiff's allegations as true, *Papasan v. Allain*, 478 U.S. 265, 283 (1986), and the allegations must be construed favorably to the plaintiff." *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991). "[A] Rule 12(b)(6) motion to dismiss need not be granted nor denied in toto but may be granted as to part of a complaint and denied as to the remainder." *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir.1982).

**\*2** Defendants argue that the claim for punitive damages must be dismissed on the basis that common law tort claims are not available in actions for unpaid wages grounded in the FLSA, 29 U.S.C. Sections 207, 216.

Section 207 of the FLSA grants certain employees a statutory right to be paid minimum overtime wages. Section 216(b) then furnishes remedies for violations of the right by employers:
Any employer who violates the provisions of Section 206 or Section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

Courts have consistently held that the above statute is the exclusive remedy for enforcing rights created under the FLSA. *See, e.g., Tombrello v. USX Corp.*, 763 F.Supp. 541, 544 (N.D.Ala.1991); *Nettles v. Techplan Corp.*, 704 F.Supp. 95, 100 (D.S.C.1988); *Platt v. Burroughs Corp.*, 424 F.Supp. 1329, 1340 (E.D.Pa.1976); *Lerwill v. Inflight Motion Pictures, Inc.*, 343 F.Supp. 1027, 1029 (N.D.Calif.1972). The first to consider the issue, the *Lerwill* court, noted that Congress had created a "very detailed and carefully defined right of action" to enforce the FLSA overtime rules, and concluded:
It is true that nowhere in the statute is it provided that Section 216(b) provides the sole means of recovery for an employee. A brief review of the

legislative history of the Act, as amended has not revealed an express statement of such intention.
On its face, however, a clearer case of implied intent to exclude other alternative remedies by the provision of one would be difficult to conceive. It should not require resort to Latin maxims of construction to show that the provision of one detailed remedy, which necessarily works to define the substantive right to be enforced, would exclude the possibility of alternative remedies in the absence of a clear showing that Congress intended such alternatives.

*Id.* at 1028.

Subsequent to *Lerwill*, several courts have dismissed common law tort claims brought in conjunction with the FLSA as precluded by the FLSA as a matter of law. *See, e.g., Tombrello v. USX Corp.*, 763 F.Supp. 541, 544 (common law claims for "wrongful refusal to pay" rejected as nothing more than claims for wages which must be brought under the FLSA, 29 U.S.C. Section 216, " the exclusive remedy for enforcing these rights"); *Jarmoc v. Consolidated Electrical Distributors, Inc.*, 123 Lab.Cas. (CCH) 35,701, 1992 U.S.Dist. Lexis 12717 (N.D.Ill. 8/25/92) (court dismissed a state tort claim alleging retaliatory discharge for filing a complaint about nonpayment of overtime on the ground that the remedy provided by the FLSA obviated the need for the state tort claim by providing an effective deterrent to the proscribed conduct); *Chappell v. Southern Maryland Hospital, Inc.*, 320 Md. 483, 578 A.2d 766, 774 (1990) (court rejected a tort claim of abusive discharge because of the existence of a remedy available to the plaintiff under the FLSA).

**\*3** The dismissal by courts of common law tort claims when mixed with FLSA claims as precluded by the FLSA suggests that this plaintiff's claim for punitive damages based on fraud should similarly be dismissed. Plaintiff, however, claims a distinction between the cases above and the instant case on the ground that in the former, the conduct alleged against the employer was the same conduct for which relief is provided under the FLSA, whereas in the latter, the FLSA does not provide a remedy for the conduct complained of. Plaintiff

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 3

Not Reported in F.Supp., 1993 WL 228014 (S.D.N.Y.), 125 Lab.Cas. P 35,845
(Cite as: Not Reported in F.Supp.)

elaborates that it is not the failure to pay for overtime, but rather the employer misconduct of misrepresenting an employee's right to said overtime payment for which punitive damages are sought. He concludes that as FLSA Section 216 does not provide a remedy specifically for one who is harmed by the public wrong addressed by fraud, the Act does not provide a basis for precluding his claim.

However, plaintiff cites no precedent, and the research of the court indicates none, for this distinction between fraud claims and other common law torts in the context of the FLSA.

Further, this Court rejects plaintiff's argument that he is seeking to enforce rights independent of the FLSA. Plaintiff alleges fraud on the ground that defendants knowingly and with intent to misrepresent and deceive the plaintiff made false representations to him to lead him to believe he was not entitled to overtime compensation. It is clear then that defendants' alleged fraud lies simply in concealing plaintiff's rights under the FLSA. Essentially plaintiff's Seventh and Eighth Causes of Action are nothing more than a claim that the defendants intentionally frustrated the overtime laws, a statutory violation for which Section 216(b) of the statute provides exclusive relief in the form of the unpaid overtime compensation plus liquidated damages.

Also relevant is the link created by Congress between employer culpability and liquidated damages under the FLSA. The FLSA provides that if the employer shows to the satisfaction of the court that the act or omission giving rise to the action was in good faith, the court may deny liquidated damages, 29 U.S.C. Section 260. Courts have also recognized the relationship between employer culpability and the provision of liquidated damages under the FLSA. *See e.g., Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1063 (2d Cir.1988) (under 29 U.S.C Section 216(b) employer "shall be liable for liquidated damages in an amount equal to unpaid back wages, but the district judge, in his discretion, may reduce the amount if the employer shows that his violations were in good faith"); *Lerwill,* 343 F.Supp at 1029 (1947 Amendment to the FLSA

made double damages recovery available only in consideration of employer culpability). The awarding of liquidated damages under the FLSA based upon employer culpability indicates that the defendants' alleged fraud can be addressed with the provision of liquidated damages.

*4 Plaintiff further argues that punitive damages are necessary to punish employer's misconduct and to deter others from engaging in similar conduct. In support of this plaintiff cites *Morton Savodnik v. Korvettes, Inc.,* 488 F.Supp. 822 (E.D.N.Y.1980), in which the tort of abusive discharge was first recognized by a New York court. Plaintiff attempts to analogize that case, in which the court accepted employee's contention that he was fired under the guise of the employment at will doctrine to prevent the vesting of rights in a pension plan, and the instant case in which the plaintiff alleges that defendants made fraudulent representations in the employment contract to avoid the payment of overtime compensation. However, the closer analogy that can be drawn between the instant case and other cases in which the plaintiff brought state tort law claims in conjunction with FLSA claims, argues against the applicability of *Korvettes* to the current situation. *See e.g., Tombrello,* 763 F.Supp at 544.

Further, the FLSA adequately addresses plaintiffs' concern that conduct such as the defendants' be deterred. While Section 216(b) provides for liquidated damages rather than punitive damages, the additional penalty which it imposes on an employer can be construed as having a deterrent effect as to the proscribed conduct.

Because defendants' alleged fraud consists of the intentional frustration of the FLSA overtime rules, for which the FLSA provides a remedy in the form of liquidated damages, which also serve as a deterrent to the proscribed conduct, plaintiff's claim for punitive damages based on fraud is dismissed.

CONCLUSION

For the reasons set forth above, defendants' motion to dismiss plaintiff's Seventh and Eighth Causes of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1993 WL 228014 (S.D.N.Y.), 125 Lab.Cas. P 35,845
**(Cite as: Not Reported in F.Supp.)**


Action is granted.

The parties are directed to attend a status
conference on July 23, 1993 at 3:00 p.m. in Room
307.

It is SO ORDERED.

S.D.N.Y.,1993.
Petras v. Johnson
Not Reported in F.Supp., 1993 WL 228014
(S.D.N.Y.), 125 Lab.Cas. P 35,845

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.