# EXHIBIT 6

LEXSEE 2006 US DIST LEXIS 43765



Positive
As of: Jul 12, 2007

**NOE PULIDO, PEDRO GALINDO and MARCOS FLORES, individually, and on Behalf of all Others Similarly Situated, Plaintiffs, v. COCA-COLA ENTERPRISES, INC.; BCI COCA-COLA BOTTLING COMPANY OF LOS ANGELES dba COCA-COLA BOTTLING COMPANY OF SOUTHERN CALIFORNIA; and DOES 1-100, Inclusive, Defendants.**

**Case No. EDCV 06-406-VAP(OPx)**

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

*2006 U.S. Dist. LEXIS 43765*

**May 25, 2006, Decided
May 25, 2006, Filed**

**COUNSEL:** [*1]  For Noe Pulido, individually and on behalf of all others similarly situated, Pedro Galindo, individually and on behalf of all others similarly situated, Marcos Flores, individually and on behalf of all others similarly situated, Plaintiffs: Clay Robbins, III, Peter T Cathcart, Magana Cathcart & McCarthy, Los Angeles, CA.

For BCI Coca-Cola Bottling Company of Los Angeles doing business as Coca-Cola Bottling Company of Southern California, Defendant: Elaine Laura Gonzales, Kevin E Gaut, Tracy L Cahill, Mitchell Silberberg & Knupp, Los Angeles, CA; Jennifer B Robinson, Tara L Ferguson, Thomas Harold Pinkley, Miller & Martin, Nashville, TN.

**JUDGES:** VIRGINIA A. PHILLIPS, United States District Judge.

**OPINION BY:** VIRGINIA A. PHILLIPS

**OPINION**

**ORDER (1) GRANTING DEFENDANT BCI COCA-COLA BOTTLING COMPANY OF LOS ANGELES' MOTION TO DISMISS (2) GRANTING DEFENDANT BCI COCA-COLA BOTTLING COMPANY OF LOS ANGELES' MOTION TO STRIKE**

[Motions filed on April 20, 2006.]

Defendant BCI Coca-Cola Bottling Company of Los Angeles' Motion to Dismiss and Motion to Strike came before the Court for hearing on May 22, 2006. After reviewing and considering all papers filed in support of, and in opposition [*2]  to, the Motions, as well as the arguments advanced by counsel at the hearing, the Court GRANTS the Motions.

**I. BACKGROUND**

Plaintiffs Noe Pulido, Pedro Galindo, and Marcos Flores filed a class action Complaint ("Complaint") in the California Superior Court for San Bernardino County on March 10, 2006. The Complaint names as Defendants Coca-Cola Enterprise, Inc. ("Coca-Cola") and BCI Coca-Cola Bottling Company of Los Angeles ("BCI"). The Complaint alleges it is filed on behalf of all persons employed by Defendants as non-unionized, hourly employees who "worked through state mandated lunch and break periods without compensation." [Complaint ("Compl.") P 1.]

The named Plaintiffs allege that Defendants have violated California's wage and hour laws since February 2002 by maintaining a policy of "permitting, encouraging, and/or requiring" their "bulk merchandiser employees" to work without pay through break and lunch periods required by the state of California. [Id. P 2.]

The Complaint lists the following six Claims against both Defendants:

>    (1) Failure to Provide Meals or Rest Periods;
>
>    (2) Failure to Timely Pay Wages Upon Termination, Discharge and/or Severance [*3] from Employment;
>
>    (3) Violation of *California Labor Code § 226* -- Itemized Wage Statements;
>
>    (4) Failure to Timely Pay Wages Upon Termination, Discharge and/or Severance from Employment;
>
>    (5) Violation of *California Business and Professions Code § 17200, et seq.*; and
>
>    (6) Conversion.

BCI removed the case to this Court on April 14, 2006, under the Class Action Fairness Act of 2005, and six days later filed a Motion to Dismiss pursuant to *Federal Rule of Civil Procedure 12(b)(6)* ("*Rule 12(b)(6)*"), as well as a Motion to Strike Portions of Plaintiffs' Complaint Pursuant to *Federal Rule of Civil Procedure 12(f)* ("*Rule 12(f)*"). Plaintiffs filed Opposition to BCI's *Rule 12(b)(6)* Motion on May 8, 2006, and to the *Rule 12(f)* Motion on May 10, 2006. [1] BCI filed Replies for both Motions on May 12, 2006.

>    1  Plaintiffs' Opposition to the BCI's *Rule 12(f)* Motion to Strike was filed two days late. See *L.R. 7-9* (requiring opposition papers to be filed at least 14 days before a hearing). BCI's Motions were set for hearing on May 22, 2006, making Opposition due by May 8, 2006. Although the Court has exercised its discretion to consider the Opposition to this Motion, future late submissions may not be accepted.

**[*4]  II. Motion to Dismiss Under *Federal Rule of Civil Procedure 12(b)(6)* A. Legal Standard**

Under *Rule 12(b)(6)*, a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Dismissal is appropriate when it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations set forth in the complaint. See *Williamson v. Gen. Dynamics Corp., 208 F.3d 1144, 1149 (9th Cir. 2000)*; *Big Bear Lodging Ass'n v. Snow Summit, Inc., 182 F.3d 1096, 1101 (9th Cir. 1999).*

The Court must view all allegations in the complaint in the light most favorable to the non-moving party and must accept all material allegations -- as well as any reasonable inferences to be drawn from them -- as true. See *Big Bear Lodging Ass'n, 182 F.3d at 1101*; *Am. Family Ass'n. Inc. v. City and County of San Francisco, 277 F.3d 1114, 1120 (9th Cir. 2002).*

The scope of review under *Rule 12(b)(6)* is generally limited to the contents of the complaint. *Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994).* [*5] Nevertheless, "a document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned." *Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1993)*, overruled on other grounds by *Galbraith v. Santa Clara, 307 F.3d 1119, 1125-27 (9th Cir. 2002).* The Court may also consider exhibits submitted with the complaint, *Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990)*, and "take judicial notice of matters of public record outside the pleadings," *Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988)* (quotation marks omitted).

**B. Discussion**

**1. Claim Two: Failure to Pay Timely Wages Upon Termination, Discharge or Severance from Employment**

Plaintiffs allege that they were not "paid appropriate wages for having been deprived of meal and rest periods. . . ." [Compl. P 21.]

Plaintiffs bring this Claim under *California Labor Code §§ 201, 202*, and *203* ("*sections 201-03*"). Those statutes, in relevant part, state:

>    If an employer discharges an employee, the wages earned and unpaid [*6] at the time of discharge are due and payable immediately.

*Cal. Lab. Code § 201(a).*

>    If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

2006 U.S. Dist. LEXIS 43765, *

*Cal. Lab. Code § 202(a).*

> If an employer willfully fails to pay, without abatement or reduction, in accordance with *Sections 201, 201.5, 202,* and *205.5,* any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

*Cal. Lab. Code § 203.*

BCI correctly points out that the three named Plaintiffs "do not and cannot allege that they quit or have been discharged." [BCI's Motion to Dismiss ("MTD") at 13.] In fact, according to BCI, "they are currently employed [*7] by BCI." [Id.] BCI argues that as "current employees," the named Plaintiffs do not have a valid claim for damages under *section 203.* [Id.]

*Section 201(a)* refers to an employer's discharge of an employee, *section 202(a)* refers to an employee's resignation, and *section 203* refers to "an employee who is discharged or who quits." Plaintiffs' Complaint, however, states: "Plaintiffs Noe Pulido, Pedro Galindo and Marcos Flores are employees of Coke. . . ." [Compl. P 13 (emphasis added).] Hence, because the named Plaintiffs all allege they remain employed by Defendants, they do not have valid claims under *section 203.*

That this case has been filed as a class action is of no import. See *Pence v. Andrus, 586 F.2d 733, 737 (9th Cir. 1978)* ("in class actions, the named representatives must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") Accordingly, the named Plaintiffs, on the face of their Complaint, have not properly alleged violations of *sections 201* and *202,* and they are not entitled to damages under *section 203.* [*8]

**a. Section 226.7: Wages or Penalty?**

Even if the named Plaintiffs had left Defendants' employ, they still would fail to state a claim under *sections 201 through 203.* Plaintiffs' claim under these sections is premised, at least in part, on Defendants' alleged violation of *California Labor Code § 226.7* ("section 226.7"). [Plaintiffs' Opposition to BCI's Motion to Dismiss ("Opp'n to MTD at 7.").]

*Section 226.7* states:

> (a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.

> (b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

*Cal. Lab. Code § 226.7.*

In other words, Plaintiffs' second claim alleges that Defendants failed to pay them money owed to them under *section 226.7(b)* when they left Defendants' employ. [Compl. PP 15, 21.]

BCI argues [*9] that Defendants were not required to pay any amounts to Plaintiffs under *section 226.7(b),* because *sections 201(a)* and *202(a)* require payment of *wages* earned and unpaid at the time of discharge or termination or within seventy-two hours of the employee's resignation, and *section 203* mandates a penalty for unpaid wages. [MTD at 5-6.] Because any amounts owing for unpaid meal or rest breaks were penalties, not wages, BCI contends, *section 226.7(b)* does not apply to the alleged failure to pay. [Id.]

Thus, the key question as to whether former employees can bring a *section 203* claim based on the failure to make *section 226.7* payments is "whether the payment for violation of Labor Code § 226.7 is a wage or a penalty." [Id. at 6.] If the *section 226.7(b)* payment is a wage, it must be paid according to the procedures set forth in *sections 201(a)* and *201(b),* or else the employer is subject to the penalty under *section 203.* If the *section 226.7(b)* payment is a penalty, on the other hand, "there can be no violation of Labor Code §§ 201, 202, and 203." [Id.] BCI argues that the *section 226.7(b)* payment is a penalty, [Id.], while Plaintiffs assert that it is wages. [*10] [Opp'n to MTD at 4.]

There is a split among the various courts that have considered whether statutory damages are a penalty or a wage; two California appellate courts have held the statutory damages are penalties, while one has held that the damages are wages. The California Supreme Court has granted review of, but has not yet decided, those three cases. Additionally, at least two decisions in the Central District of California have diverged on the issue.

In *Murphy v. Kenneth Cole Productions, 134 Cal. App. 4th 728, 36 Cal. Rptr. 3d 418, 440 (Cal. App. 1 Dist. 2005)*, review granted *40 Cal. Rptr. 3d 750, 130 P.3d 519 (2006)*, the California Court of Appeal found that *section 226.7* damages were penalties rather than wages, reasoning that the "intent and effect" of the statute "is to impose a penalty." *Id. at 436.* The Murphy court pointed out that California case law considers damages consisting of sums larger than the actual losses to be penalties, *Id. at 437*, and *section 226.7*'s legislative history revealed that it was enacted as a deterrent to employers and was coercive in nature. *Id. at 437-38.* Finally, the Court noted that the California [*11] Department of Industrial Relations Division of Labor Standards Enforcement ("DLSE") had recently changed its position, and now classifies these statutory damages as a penalty. *Id. at 439.*

Likewise, in *Mills v. Superior Court, 135 Cal. App. 4th 1547, 38 Cal. Rptr. 3d 497, 504 (Cal. App. 2 Dist., 2006)*, review granted *42 Cal. Rptr. 3d 415, 132 P.3d 1166, 2006 WL 1229143 (2006)*, another California appellate court held that these statutory damages should be considered a penalty. The Mills court found the language of *section 226.7* ambiguous as to whether the payments required under the statute were a penalty or wages. *Id. at 500-01.* After examining the legislative history, however, the court determined them a penalty, reasoning that to define such payments as wages would conflict directly with the definition of the term "wages" throughout the Labor Code, which generally regards wages as having a directly correlation between the amount paid by the employer and the labor provided. *Id. at 501-02.* As "the payment due under *section 226.7* has nothing to do with the amount of additional time actually worked," the statutory damages must be considered a penalty. [*12] *Id. at 504.*

On the other hand, the California Court of Appeal deciding *National Steel and Shipbuilding Co. v. Superior Court, 135 Cal. App. 4th 1072, 38 Cal. Rptr. 3d 253, 263 (Cal. App. 4 Dist., 2006)*, review granted, *42 Cal. Rptr. 3d 415, 132 P.3d 1166, 2006 WL 1229140 (2006)*, reached the opposite conclusion. There, the court, based on *section 226.7*'s legislative history, held that the statutory damages were wages, thus triggering the statute of limitations applicable to a wage claim versus that for a penalty. *Id. at 257.*

Noting that the payment to which the statute makes reference was susceptible to interpretation as either wages or a penalty, *id. at 258*, ("payment appears to be a penalty against the employer in the form of a wage to the employee"), the National Steel court relied on a change from the original version of the statute, containing a two-part damage clause, to the form eventually enacted, with self-executing penalties. *Id. at 259-60* ("The Senate amendments also eliminated the need for an employee to file an enforcement action and instead created an affirmative obligation on the employer to pay the employee [*13] the one hour's pay. . . ."). Accordingly, damages under *section 226.7* are owed when they are incurred, just as wages are. Id.

Finally, the court found that consideration of the statute in the context of the Labor Code's entire statutory scheme dictated a finding that damages paid under it were wages, particularly since in the labor law context, "statutes must be construed in favor of the employee." *Id. at 260-63.* Thus, *section 226.7*, a statute ambiguous on its face, should be interpreted as requiring the payment of wages, as such a claim is subject to a longer statute of limitations. Id.

In addition to the decisions discussed above, two courts within this district have considered this question. In *Tomlinson v. Indymac Bank, F.S.B., 359 F. Supp. 2d 891, 895 (C.D. Cal. 2005)*, the district court held that payments under *section 226.7* are "restitutionary" because they are "earned wages," akin to overtime wages. *Id. at 895-97.*

The district court in *Corder v. Houston's Restaurants, Inc., 424 F. Supp. 2d 1205, 2006 WL 855779 (C.D. Cal. 2006)*, however, reached the opposite conclusion. Relying on the [*14] statute's legislative history, it held *section 226.7* to be a penalty because it "was designed by the Legislature to punish and deter those employers who subjected their employees to long periods of work without a break." *424 F. Supp. 2d 1205, 1208.* The Corder court also noted that employers have no discretion in granting meal or rest periods. Id. Accordingly, because *section 226(a)* "flatly prohibits" the requirement that employees work during meal or rest periods, the court reasoned, any violation of that prohibition must be considered a penalty. Id. (quotations, citation omitted).

The state agency charged with enforcing California's labor standards has also weighed in on the issue. In. Hartwig v. Orchard Commercial, Inc., Case No. 12-56901RB, [2] the DLSE held that "payment for missed meal periods is a penalty." *424 F. Supp. 2d 1209.* The agency noted that the record of the California Industrial Welfare Commission ("IWC") hearing at which such payments were discussed clearly reflected the commissioners' concern regarding the lack of any mechanism to enforce compliance with meal and rest period requirements, other than an injunction, "which was not a meaningful remedy." Id. The purpose [*15] of *section 226.7*'s provision mandating an award equal to one hour of pay for a violation of those requirements, according to the DLSE, was to "deter non-compliance clearly indicating intent to create a penalty." Id.

2  The Court hereby grants BCI's Request for Judicial Notice of the DLSE's decision. See *Fed. R. Evid. 201(b)*; *Mir, 844 F.2d at 649.*

We conclude that payments ordered under *section 226.7* are properly considered a penalty. It is scarcely logical to classify the statutory damages as a wage when a court need not examine the actual amount of time worked by the employee.

Additionally, as discussed in the decisions noted above, the legislative history of the statute reflects a motive to curb employers' abuse of the employees' meal and rest periods: in other words, to penalize such employers. The assembly floor analysis of the bill stated that the bill would "[d]elete the provisions related to *penalties* for an employer who fails to provide [*16] a meal or rest period, and instead codify the lower *penalty* amounts adopted by the Industrial Welfare Commission (IWC)." (A.B. 2509 1999-2000 Reg. Sess. (Cal. Aug. 7, 2000), § 4), (# http://www.leginfo.ca.gov/pub/99-00/bill/asm/ab_2501-25          50/ab 2509_cfa_20000907_101801_asm_floor.html (emphasis added)). Additionally, the analysis of the bill that eventually became *section 226.7* noted that IWC orders require meal and rest periods, and referred to the proposed payment under the new bill as a "civil penalty" for employers that violate those orders. [3] (A.B. 2509 1999-2000 Sen., Reg. Sess. (Cal. Aug. 7, 2000), § 12).

3  In the version of the bill analyzed by the state Senate on August 7, 2000, the proposed bill would have imposed a "civil penalty" on employers for violating meal and rest period laws of $ 50 per violation, and would have also made the employer liable to the employee for twice the employee's average hourly pay. (A.B. 2509 1999-2000 Sen., Reg. Sess. (Cal. Aug. 7, 2000), § 12). The $ 50 payment was later changed to a payment of "one hour of wages for each work day when rest periods were not offered." A.B. 2509 1999-2000 Sen., Reg. Sess. (Cal. Aug. 25, 2000), § 6). The Senate or the Assembly never referred to the new payment for violating *section 226.7* as either a penalty or a wage. The Court does not see a substantive difference between the proposed $ 50 payment and the enacted payment, as both are not correlated to the actual time an employee worked.

[*17]  Furthermore, the court agrees with the *Corder* court that because *section 226(a)* clearly prohibits employers from requiring that employees work during meal or rest periods, a violation of that prohibition must be considered a penalty. Id. (quotations, citation omitted).

Finally, when an employee is required to work during meal periods or rest time, he or she must be compensated for that work in addition to the *section 226.7* payment, reinforcing the conclusion that the latter payment is an additional penalty imposed on employers.

Plaintiffs urge the Court to refrain from dismissing any claims until the California Supreme Court rules on this issue. [Opp'n to MTD at 5.] To do otherwise, according to Plaintiffs, "would require that this Court accept the distinct possibility that it may be reading the tea leaves incorrectly." [Id.]

The Court declines Plaintiffs' request to rule in their favor on this Motion simply because the California Supreme Court is considering the same issues. Rather, the parties should not litigate claims that are subject to dismissal now based on a possible ruling at some future time.

Plaintiffs' Opposition hints that they are basing this claim [*18] not just on an allegation that Defendants failed to pay the *section 226.7* penalty for missed meal and rest breaks, but also on an assertion that Defendants failed to pay them *at all* for time worked during those breaks. [Opp'n to MTD at 7.] To the extent that employees who have left Defendants' employment were never paid any wages for time that actually worked, they may have a legitimate claim under *sections 201 through 203.* They have also requested leave to amend should any of their claims be dismissed. [Opp'n to MTD at 14.] Accordingly, while the Court dismisses Plaintiffs' second claim, it grants leave to amend to state a claim that is not based in any part on *section 226.7* payments. [4]

4  Furthermore, as noted above, the named Plaintiffs do not have standing to represent other, unnamed members of the purported class for such a claim as all of them allege they are presently working for Defendant BCI.

## 2. Claim Three: Failure to Provide Itemized Wage Statements

Plaintiffs allege that Defendants [*19] failed to provide "Representative Plaintiffs and Class Members with semimonthly itemized statements of the meal and rest periods taken by each and all Class Members . . . in violation of *California Labor Code § 226.*" [Compl. P 31.]

*Section 226*, states, in relevant part:

Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid

2006 U.S. Dist. LEXIS 43765, *

by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, . . . [and] (5) net wages earned . . .

*Cal. Lab. Code § 226(a).*

Plaintiffs' Claim Three also is premised on an alleged violation by Defendants of *California Labor Code § 1174.* That statute, in relevant part, states:

Every person employing labor in this state shall: . . .

Keep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours worked daily by and the wages **[\*20]** paid to . . . employees employed at the respective plants or establishments . . .

*Cal. Lab. Code § 1174(d).*

BCI asserts that Plaintiffs' claim for failure to provide and post accurate wage records fails because "missed meal and rest break payments are not wages." [MTD at 15.] Thus, BCI argues, it could not have violated *sections 226(a)* and *1174(d)* insofar as those claims are predicated on BCI's failure to provide and post *section 226.7* payments.

In light of the Court's ruling that payments to employees under *section 226.7* are a penalty and not wages, Defendants were under no obligation to provide and post such earnings.

Plaintiffs point out that their Claim Three alleges not only that itemized statements failed to reflect wages earned accurately, but also "that [Defendants] did not accurately report the total number of hours worked, the applicable hourly rates, and other required information." [Opp'n to MTD at 9.] Accordingly, Plaintiffs have stated a claim for violation of *sections 226(a)* and *1174(d).* To the extent that their third claim includes a reference to an obligation to report and distribute information regarding earnings under **[\*21]** *section 226.7*, that language shall be treated as surplusage and cannot form the basis for any recovery in this case.

**3. Claim Five: Violation of *California Business and Professions Code § 17200***

Plaintiffs seek damages under California's Unfair Competition Law ("UCL") (Bus. & Prof. Code *§ 17200*),

based on Defendants' failure to make payments under *section 226.7.* [Compl. PP 48-52; See, e.g., Compl. P 49 (asserting that Plaintiffs are asking the Court to "compel disgorgement of all profits obtained by Defendants through the unfair, unlawful and fraudulent business practices described herein for the period of time four (4) years prior to the filing of this action through and including the present.").]

BCI argues that the only remedies available under the UCL to aggrieved private parties are injunctive relief and restitution. [MTD at 16.] Furthermore, Plaintiffs cannot base their UCL claim on an alleged violation of *section 226.7* because payments under that statute are a penalty and not "restitution." [Id. at 17.] "A UCL action is equitable in nature; damages cannot be recovered." *Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1144, 131 Cal. Rptr. 2d 29, 63 P.3d 937 (2003).* **[\*22]** *Section 17200* does allow compensation "as may be necessary to restore to persons in interest any money or property acquired by unfair competition." *Cortez v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 176, 96 Cal. Rptr. 2d 518, 999 P.2d 706 (2000).* Thus, courts have noted that the UCL "provides for the restoration of money or property acquired by means of unfair competition." *Day v. AT&T Corp., 63 Cal. App. 4th 325, 338, 74 Cal. Rptr. 2d 55 (1998)* (quotations omitted). The Day court pointed out, however, that the UCL "operates only to return to a person those *measurable amounts* which are *wrongfully taken* by means of an unfair business practice." *Id. at 338-39* (emphasis in original).

The Cortez court, concluding that employees could collect unpaid wages from employers under the UCL, emphasized that "[t]he employer has acquired the money to be paid by means of an unlawful practice that constitutes unfair competition . . ." 23 Cal. 4th at 177. It reasoned that "[t]he commonly understood meaning of 're-store' includes a return of property to a person from whom it was acquired." *Id. at 178.* "Earned wages," according to the court, are **[\*23]** the property of the employee "who has given his or her labor to the employer in exchange for that property. . . ." Id. Thus, the court held, "[a]n order that earned wages be paid is therefore a restitutionary remedy authorized by the UCL." Id.

In Tomlinson, in which the court held that *section 226.7* payments are wages, *359 F. Supp. 2d at 896,* the court also held that the payment mandated under *section 203* was a penalty, meaning that "[t]his type of payment clearly is not restitutionary, and thus cannot be recovered under the UCL." *Id. at 895.*

Plaintiffs argue that, regardless of whether *section 226.7* payments are deemed wages or a penalty, Plaintiffs nonetheless have an "ownership interest" in such

payments, which therefore are subject to recovery under the UCL. [Opp'n to MTD at 11.]

The California authorities, however, emphasize that payments under the UCL are restitutionary in nature, i.e., they return property to one who formerly owned it. *Cortez, 23 Cal 4th at 178.* Section 226.7 payments, however, are a penalty with no correlation to the employee's actual labor: An employee who missed a ten minute rest period would [*24] be owed the same amount as an employee denied a one-hour meal break. Thus, *section 226.7* payments do not restore the employee to the position which he or she would have had absent the employer's violation, but are punitive. Accordingly, to the extent that Plaintiff's UCL claim is based on a violation of *section 226.7*, it must be dismissed.

If Plaintiffs are seeking to assert Defendants failed to pay them for hours worked, they may be able to allege a UCL claim based on restitution. Leave to amend is granted to allege such a claim, if the factual basis for one exists. Accordingly, Plaintiffs' Claim Five is dismissed with leave to amend.

**4. Claim Six: Conversion**

Plaintiffs base their claim for conversion on Defendants' alleged failure to compensate Plaintiffs properly. [Compl. PP 53-58.]

*California Civil Code § 3336* states:

The detriment caused by the wrongful conversion of personal property is presumed to be:

First -- The value of the property at the time of the conversion, with the interest from that time, or, an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of [*25] the wrongful act complained of and which a proper degree of prudence on his part would not have averted; and

Second -- A fair compensation for the time and money properly expended in pursuit of the property.

BCI argues that, in California, where a right did not exist at common law, a party injured by a violation of statute can sue only if a statutory remedy is provided. [MTD at 18.] BCI asserts that the right to extra payments for missed meal breaks and rest periods did not exist until it was created in a wage order in October 2000 by the IWC. [Id. at 17.] According to BCI, a plaintiff wishing to recover alleged payments due to him or her under *section 226.7*, therefore, has two options: to sue under *California Labor Code § 218*, which allows a "wage claimant to sue directly . . . for any wages or penalty due him under this article" or to seek administrative relief by filing a claim with the Labor Commissioner, pursuant to Labor Code §§ 98 to 98.8. [MTD at 17-18.] Labor Code § 98 states that "[t]he Labor Commissioner may provide for a hearing in any action to recover wages, penalties, and other demands for compensation. . . ."

"As a general [*26] rule, where a statute creates a right that did not exist at common law and provides a comprehensive and detailed remedial scheme for its enforcement, the statutory remedy is exclusive." *Rojo v. Kliger, 52 Cal. 3d 65, 79, 276 Cal. Rptr. 130, 801 P.2d 373 (1990).*

In *Green v. Party City Corp., 2002 U.S. Dist. LEXIS 7750, 2002 WL 553219, *1 (C.D. Cal. 2002),* the named plaintiff and alleged class members sued their employer for conversion based on failure to pay overtime wages in violation of the California Labor Code. The district court dismissed the claim, noting that Plaintiff had failed to cite any authority for the notion that a statutorily-based claim for unpaid overtime wages could also be the subject of a conversion claim, particularly given the existence of the state Labor Code's "detailed remedial scheme for violation of its provisions." *2002 U.S. Dist. LEXIS 7750, [WL] at *3.*

Plaintiff's conversion claim here is based on an alleged statutory violation, i.e., Defendants' failure to pay penalties for forcing Plaintiffs to work trough meal and rest periods. Like the unsuccessful *Green* Plaintiffs, Plaintiffs in the present case have been unable to cite any case in which a statutorily-based claim for nonpayment of wages has been [*27] the subject of a conversion claim; the Court finds unpersuasive their argument that Green is distinguishable because Plaintiffs there sought payment for overtime pay, unlike Plaintiffs here who seek payment for the penalty attaching when mean and rest breaks are not properly compensated. [Opp'n to MTD at 14.]

In light of Plaintiffs' failure to demonstrate the availability of a right to recover *section 226.7* penalties at common law, they are confined to existing statutory remedies, i.e., *California Labor Code § 98*, which allows for aggrieved workers to recover penalties under *section 226.7.*

Lastly, Plaintiffs assert that *section 218* allows them to bring a conversion claim for a violation of *section 226.7*, because, they argue, *section 218*'s last sentence ("Nothing in this article shall limit the right of any wage claimant to sue directly or through an assignee for any wages or penalty due him under this article") allows

2006 U.S. Dist. LEXIS 43765, *

plaintiffs to bring any type of lawsuit involving *section 226.7*, outside of the Labor Code's statutory scheme.

Plaintiffs misread *section 218*, however. It does not create a tort action for any violation of the Labor Code; rather, it does [*28] not limit any pre-existing rights to bring tort actions under the Labor Code. Thus, *section 218* does not create a private tort action outside of the remedy provided in Labor Code *section 98 et seq.*

Accordingly, Plaintiffs' conversion claim is dismissed insofar as it is based on Defendants' alleged violation of *section 226.7*. Because Plaintiffs have requested leave to amend all claims, [Opp'n to MTD at 14], the Court grants them leave to amend to state a conversion claim based on a right that existed at common law, if such a right exists.

### III. Motion to Strike Under *Federal Rule of Civil Procedure 12(f)* A. Legal Standard

Under *Federal Rule of Civil Procedure 12(f)*, Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

*Fed. R. Civ. P. 12(f)* [*29] .

The Ninth Circuit has held that "[t]he function of a *12(f)* motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993)* (quotations, citation omitted). Additionally, *Rule 12(f)* motions "are generally disfavored." *City of Kalamazoo v. Mich. Disposal Serv. Corp., 125 F. Supp. 2d 219, 221 (W.D. Mich. 2000)*. The purpose of *Rule 12(f)* is to "minimize delay, prejudice, and confusion by narrowing the issues for discovery and trial." *Geer v. Cox, 242 F. Supp. 2d 1009, 1025 (D. Kan. 2003)* (citations, quotations omitted). "When allegations in a complaint are entirely collateral and immaterial to the underlying claims, they should be stricken." Id. (citations, quotations omitted).

### D. Discussion

### 1. References to *California Labor Code § 226(a)* in Claim One

BCI argues that all references to *California Labor Code § 226(a)* (alleging a failure to comply with record-keeping requirements) in Plaintiffs' first claim should [*30] be stricken because Plaintiffs have pleaded a separate claim "for failure to comply with the recordkeeping requirements set forth in *§ 226(a)*" in their third claim. [BCI's Motion to Strike ("MTS") at 3.] Plaintiffs do not oppose BCI's Motion to Strike this portion of Claim One. [Plaintiffs' Opposition to BCI's Motion to Strike ("Opp'n to MTS") at 2.] Accordingly, the Court grants BCI's Motion to Strike references to *section 226(a)* from Claim One of Plaintiffs' Complaint.

### 2. References to Monetary Remedies for Violation of *California Labor Code § 226.6* in Claim One

As part of their first claim, Plaintiffs seek remedies under *California Labor Code § 226.6* ("*section 226.6*"). [Compl. P 19(a).]

That statute, in relevant part, states:

Any employer who knowingly and intentionally violates the provisions of *Section 226* or *226.2* . . . is guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than one thousand dollars ($ 1,000) or be imprisoned not to exceed one year, or both, at the discretion of the court. . . .

*Cal. Lab. Code § 226.6*

Plaintiffs' Claim One [*31] is brought pursuant to the Labor Code Private Attorneys General Act of 2004, which allows private citizens to bring actions under the Labor Code. The Act, in relevant part, states:

Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees. . . .

*Cal. Lab. Code § 2699(a)* ("*section 2699(a)*").

*California Labor Code § 2699.3* ("*section 2699.3*") states that a civil action by "an aggrieved employee" pur-

suant to *section 2699(a)* "alleging a violation of any provision listed in *Section 2699.5* shall commence only after" several procedural requirements have been met, including written notice by the aggrieved employee to the Labor and Workforce Development Agency and the employer of the specific provisions of the labor code that the employer **[*32]** allegedly violated. *Cal. Lab. Code §§ 2699.3(a), (a)(1).*

*California Labor Code section 2699.5* ("*section 2699.5*") states: "The provisions of *Section 2699.3* shall apply to any alleged violation of the following provisions. . . ." *subdivision (a) of Cal. Lab. Code § 2699.5. Section 226.6* is not listed as one of these provisions.

BCI thus argues that because *section 226.6* is not listed as a violation covered by *section 2699.5*, then *section 2699.3*, and in turn, *section 2699(a)* do not apply to *section 226.6*, meaning that an employee could not bring a private claim under *section 226.6*. [MTS at 3-4.]

Plaintiffs argue that *section 226.6*'s absence from the statutes listed in *section 2699.5* means merely that *section 2699.3*'s procedural requirements do not apply to *section 226.6*, and that a private person could sue under *section 226.6*, and need not follow *section 2699.3*'s procedural requirements. [Opp'n to MTS at 2.]

In their Reply, BCI points out that the Labor Code accounts for private allegations brought under the Private Attorneys General Act for violation of provisions not listed in *section 2699.5*. [Reply **[*33]** for Motion to Strike ("Reply for MTS").] *Section 2699.3(c)* states, in relevant part:

> A civil action by an aggrieved employee pursuant to subdivision (a) or (f) of *Section 2699* alleging a violation of any provision other than those listed in *Section 2699.5* . . . shall commence only after [the performance of certain requirements, including the aggrieved employee giving notice by certified mail to the Labor and Workforce Development Agency and the

employer of the specific provisions of the code the employer allegedly violated, and giving the employer an opportunity to cure the alleged violation.]

*Cal. Lab. Code § 2699.3(c)(1)*

BCI points out that "Plaintiffs have not taken this required step," and thus "have not exhausted a required administrative prerequisite to their right to sue. . . ." [Reply for MTS at 4.] Indeed Plaintiff's Complaint fails to allege that they complied with the provisions of *section 2699(c)(1)*, which is a clear prerequisite to filing a private action under *section 226.6*. This Claim, accordingly is dismissed. Plaintiffs are given leave to amend the Claim if they can allege facts sufficient to state a Claim.

### 3. Redundancy **[*34]** of Claim Four

BCI argues that Plaintiffs' fourth Claim is identical to Claim Two and must be stricken. [MTS at 4.] Plaintiffs do not oppose BCI's Motion to Strike Claim Four. [Opp'n to MTS at 2.] Accordingly, the Court grants BCI's Motion to Strike Claim Four.

## IV. CONCLUSION

For the foregoing reasons, Defendant BCI Coca-Cola Bottling Company of Los Angeles' Motion to Dismiss is GRANTED for Plaintiffs' Claims Two, Three, Five, and Six. Plaintiffs are granted leave to amend all four claims. BCI's Motion to Strike is GRANTED for all references to *California Labor Code § 226(a)* in Claim One, GRANTED for all references to violations of *California Labor Code § 226.6* in Claim One, and GRANTED without leave to amend for Claim Four in its entirety. A First Amended Complaint must be filed by June 12, 2006.

Dated: May 25, 2006

VIRGINIA A. PHILLIPS

United States District Judge

# EXHIBIT 7

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1

Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824
(Cite as: Not Reported in F.Supp.2d)

▷
Sorensen v. CHT Corp.
N.D.Ill.,2004.

United States District Court,N.D. Illinois, Eastern Division.
Kurt SORENSEN, Paul Larson, Sarah Brown, John Winterman, and Belinda Chang on behalf of themselves and all other Plaintiffs similarly situated known and unknown, Plaintiffs,
v.
CHT CORP., a/k/a Charlie Trotters and Charlie Trotter, Defendants.
Beverly KIM on behalf of herself and all other Plaintiffs similarly situated known and unknown, Plaintiff,
v.
CHT CORP., a/k/a Charlie Trotters and Charlie Trotter, Defendants.
**Nos. 03 C 1609, 03 C 7362.**

March 10, 2004.

Douglas M. Werman, Law Office of Douglas M. Werman, Jamie G. Sypulski, Law Offices of Jamie G. Sypulski, Chicago, IL, for Plaintiffs.
Lawrence I. Kipperman, John G. Levi, Darren Ross Reisberg, Jessica Kaye Benenson, Sidley Austin Brown & Wood LLP, Bruce B. Jackson, Anna Coleen Pittman, Anthony J. Madonia & Associates, Ltd., Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*
PALLMEYER, J.
**\*1** Plaintiffs are current and former employees of Defendants CHT Corp., a/k/a Charlie Trotters and Charlie Trotter, the owners of Charlie Trotter's restaurant in Chicago, Illinois. Plaintiffs allege that Defendants violated the Fair Labor Standards Act (" FLSA"), 29 U.S.C. § 201 *et seq.,* the Portal-to-Portal Act, 29 U.S.C. § 251 *et seq.,* the Illinois Minimum Wage Law ("IMWL"), 820 ILCS

105/1 *et seq.,* and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.,* by failing to pay employees minimum wages and overtime pay as required under these statutes. Plaintiff Paul Larson now seeks to certify a class of similarly situated employees on a claim of unjust enrichment, and Plaintiff Beverly Kim seeks class certification of her IMWL and IWPCA claims. Defendants object to class certification and also seek judgment on the pleadings on the unjust enrichment claim. For the reasons set forth here, Defendants' motion for judgment on the pleadings is granted. Larson's motion for class certification is denied, and Kim's motion is entered and continued.

*BACKGROUND*

These related cases arise out of a compensation scheme in place at Charlie Trotter's restaurant from at least March 1998 until October 2002. Under that plan, Defendants paid waiters and servers ("waiters" ) $3.09 per hour, plus tips. The waiters were required to turn over their earned tips to Defendants, who then distributed back to the waiters a certain flat "per diem" rate representing " tips." (TAC ¶¶ 5, 6.) [FN1] Although waiters typically collected from $300 to $1,000 in tips per night, Defendants paid them "only a fractional amount of the tips they actually received ... as part of Defendants' tip pooling arrangement." (*Id.* ¶ 8.) Defendants allegedly used the excess tip money to pay the salaries of non-tipped employees, and to fund certain of Defendants' charitable activities. (*Id.* ¶ 9.) Defendants' compensation plan also provided for "back of the house employees" working as cooks and food preparers to receive $5.15 per hour, plus an additional payment termed "other." (Cmplt. ¶ 6.) [FN2] Plaintiffs allege that Defendants " excluded the weekly 'other' payment made to [back house employees] in calculating [their] applicable regular hourly rate of pay for overtime purposes." (*Id.* ¶¶ 7, 9.) In addition, Defendants

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 2

Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824
**(Cite as: Not Reported in F.Supp.2d)**

paid overtime wages only for hours worked in excess of 80 in bi-weekly pay periods rather than for hours worked in excess of 40 per week. (*Id.* ¶¶ 10, 11.)

> FN1. The Third Amended Complaint filed by Plaintiff Kurt Sorensen et al. is cited as "TAC ¶ __."

> FN2. The Complaint filed by Plaintiff Beverly Kim is cited as "Cmplt. ¶ __."

Plaintiffs believe this scheme violates federal and state law. Specifically, the Fair Labor Standards Act requires that employees be paid not less than the federally mandated minimum wage (at the time, $5.15 per hour), plus overtime pay at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a work week. 29 U.S.C. §§ 206, 207. Under the Act, an employer may pay tipped employees a cash wage that is less than the minimum wage if the employee also receives "an additional amount on account of the tips received by such employee which amount is equal to the difference between the [cash] wage ... and the [effective minimum] wage." 29 U.S.C. § 203(m). An employer may only utilize this so-called "tip credit" arrangement if it notifies employees of such a plan, and if "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." *Id.*
Sorensen Litigation

**\*2** On March 5, 2003, Plaintiff Kurt Sorensen filed a five-count complaint on behalf of himself and other similarly situated waiters, alleging that Defendants willfully violated the FLSA and the Portal-to-Portal Act by unlawfully using a tip credit against their minimum wage obligations, and then failing to pay their waiters minimum wages (Count I) and overtime wages (Count III) as required by the statutes. In Counts II and IV, Sorensen alleged violations of the IMWL's minimum wage and overtime pay requirements, and in Count V, he alleged that Defendants were unjustly enriched by

their unlawful compensation arrangement with the waiters. On April 10, 2003, the complaint was amended to add Paul Larson, Sarah Brown, John Winterman, and Belinda Chang as plaintiffs (the " Sorensen Plaintiffs"). Plaintiffs made some additional changes in this First Amended Complaint and in a Second Amended Complaint filed on June 18, 2003.

On August 6, 2003, the Sorensen Plaintiffs filed a Third Amended Complaint ("TAC") which is now the current version before the court. In Count I of the TAC, the Sorensen Plaintiffs allege that Defendants' "tip credit" arrangement described above violates the FLSA and resulted in Plaintiffs being compensated at less than the applicable minimum wage of $5.15 per hour. (TAC ¶¶ 10, 11.) They also allege that Defendants' failure to pay them the minimum wage violates the IMWL (Count II.) In Count III, the Sorensen Plaintiffs allege that they and other tipped employees were entitled to be paid at an overtime rate of $7.72 per hour, i.e., one and one-half times the minimum wage of $5.15 per hour. (TAC ¶ 24.) Defendants instead paid the wait staff an overtime rate of only $5.66 per hour. The Sorensen Plaintiffs also allege that Defendants paid waiters overtime wages for hours worked "in excess of 80 hours in bi-weekly work weeks" rather than for all hours worked in excess of 40 hours per week as required by the FLSA and the Portal-to-Portal Act. (*Id.* ¶ 25.) In Count IV, the Sorensen Plaintiffs assert a similar violation under the IMWL.

In Count V, the Sorensen Plaintiffs allege, in the alternative, that for each week in which they and other waiters worked in excess of 40 hours, Defendants paid them a minimum wage of $3.09 per hour, an overtime rate of $5.66 per hour, and a daily "per diem" or "day rate." According to the Sorensen Plaintiffs, "[t]hese [per diem] payments were fictitious rates of pay which were aggregated each week by Defendants to equate to a fixed bi-weekly salary paid to Plaintiffs and other wait staff." (TAC ¶ 40.) The Sorensen Plaintiffs claim that this plan violates the FLSA and the Portal-to-Portal Act.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 3

Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA)
824
**(Cite as: Not Reported in F.Supp.2d)**

Count VI of the TAC alleges that Defendants were unjustly enriched by their practice of requiring the Sorensen Plaintiffs and other waiters to turn over their earned tips, and then paying the employees " substantially less than 50% of the total tips earned by Plaintiffs in each two week pay period" and using the excess tip money to pay non-tipped employees and fund charitable events. (TAC ¶¶ 48, 50.) Larson seeks to represent a class of similarly situated waiters for this claim. Finally, in Count VII of the TAC, the Sorensen Plaintiffs allege a violation of the IWPCA based on Defendants' failure to "compensate Plaintiffs for all hours they worked for Defendants." (*Id.* ¶ 64.)

Kim Litigation

**\*3** On or about September 9, 2003, Plaintiff Beverly Kim filed a complaint in the Circuit Court of Cook County seeking overtime pay and other earned wages on behalf of herself and other similarly situated "back house" employees working at Charlie Trotter's restaurant as cooks and food preparers. The complaint alleges that from at least August 11, 2000 to October 2002, Defendants paid Kim and other back house employees an hourly rate, typically $5.15, plus an additional payment termed "other." (Cmplt.¶ 6.) Defendants directed these employees to work in excess of 40 hours per week but did not pay them the proper overtime rate of one and one-half times their regular rate of pay. Instead, Defendants "excluded the weekly 'other' payment made to Plaintiff in calculating Plaintiff's and the class' applicable regular hourly rate of pay for overtime purposes" in violation of the IMWL and the FLSA. (*Id.* ¶¶ 7, 9.) In addition, Kim alleges, Defendants failed to pay her and other back house employees all earned overtime wages, and implemented an unlawful practice of paying overtime wages only for hours worked in excess of 80 in bi-weekly pay periods rather than for hours worked in excess of 40 per week. (*Id.* ¶¶ 10, 11.) Kim claims that these practices violate the minimum wage and maximum hour provisions of the IMWL (Count I), and the requirements of the IWPCA (Count II), and she seeks to certify a class of all similarly situated employees on both Counts.

The complaint also alleges a violation of the FLSA's overtime pay requirements (Count III).

On October 17, 2003, Defendants timely removed Kim's case to federal court pursuant to 28 U.S.C. § 1331. On October 31, 2003, the case was reassigned to this court pursuant to Local Rule 40.4, and consolidated with Case No. 03 C 1609 filed by the Sorensen Plaintiffs. Defendants oppose class certification by both Larson and Kim and seek judgment on the pleadings on the former's unjust enrichment claim in Count VI of the TAC.

*DISCUSSION*

I. Motion for Judgment on the Pleadings

A motion for judgment on the pleadings is governed by the same standards as a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Gustafson v. Jones,* 117 F.3d 1015, 1017 (7th Cir.1997). A court will grant such a motion only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452 (7th Cir.1998) (internal quotations omitted). In making this determination, the court views the facts in the complaint in the light most favorable to the nonmoving party. *Id.*

Defendants [FN3] argue that they are entitled to judgment on the pleadings on the Sorensen Plaintiffs' unjust enrichment claim because (1) their relationship with Plaintiffs "was clearly governed by contract principles"; (2) they were not "unjustly" enriched by their compensation arrangement; and (3) the FLSA provides a complete and exclusive remedy for the violations alleged. (Def. Mem., at 4, 7, 9.) [FN4]

> FN3. Defendants argue, in a footnote without any citation, that Charlie Trotter is not a proper defendant on the unjust enrichment claim because Plaintiffs deem

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 4

Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824
(Cite as: Not Reported in F.Supp.2d)

him an "employer" solely pursuant to the FLSA, and not under common law principles. (Def. Mem., at 2 n. 1.) Absent further development of this argument, the court declines to dismiss Trotter as a defendant in Count VI of the TAC on this basis. "It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Kauthar SDN BHD v. Sternberg,* 149 F.3d 659, 668 (7th Cir.1998).

Defendants also dispute Plaintiffs' assertion that all the Sorensen Plaintiffs, and not just Larson, are bringing the unjust enrichment claim. The court agrees that the TAC is inartfully drafted in this regard but, given the early stage of the proceedings, it would not be inappropriate to grant Plaintiffs leave to amend the TAC to reflect more clearly their stated intention. In any event, this distinction does not affect the outcome of Defendants' motion; the court will assume here that all of the Sorensen Plaintiffs seek to recover for unjust enrichment.

FN4. Defendants CHT Corp., Inc. and Charlie Trotter's Memorandum of Law in Support of their Motion for Judgment on the Pleadings on Count VI of Plaintiffs' Third Amended Complaint is cited as " Def. Mem., at ____."

A. Contractual Relationship

*4 Defendants claim that the Sorensen Plaintiffs cannot pursue an unjust enrichment claim because their relationship with Defendants was governed by contract. It is well-established that "unjust enrichment is not available where an action is based on an alleged contract." *Cohabaco Cigar Co. v. U.S. Tobacco Co.,* No. 98 C 1580, 1999 WL 988805, at *16 (N.D.Ill. Oct.22, 1999). *See also F.H. Prince & Co. v. Towers Fin. Corp.,* 275 Ill.App.3d 792, 804, 211 Ill.Dec. 950, 656 N.E.2d 142 (1st Dist.1995) ("[s]ince the doctrine of unjust enrichment presents an implied or quasi-contract

claim, where there is a specific contract which governs the relationship of the parties, the doctrine has no application"). The Sorensen Plaintiffs describe a "compensation arrangement" with Defendants they claim violates the FLSA, the IMWL and the IWPCA: specifically, payment of only $3.09 per hour, an overtime rate of $5.66 per hour, and a daily "per diem" constituting only a small fraction of the waiters' actual earned tips, the remainder of which were used to pay the salaries of non-tipped employees and fund certain charitable activities. The Sorensen Plaintiffs rely on that same compensation arrangement as the basis for their claim of unjust enrichment which, Defendants contend, demonstrates that the parties were operating under a contractual relationship. (Def. Mem., at 5.)

More revealing, in Defendants' view, is the fact that the Sorensen Plaintiffs assert in their IWPCA claim that "Defendants agreed to compensate Plaintiffs for their work at the hourly rate agreed to by the parties." (TAC ¶ 63.) Defendants suggest that the use of the term "agreed" denotes a contractual relationship between the parties. They also note that the IWPCA defines "wages" as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties," 820 ILCS 115/2, and argue that because the Sorensen Plaintiffs did not plead the IWPCA in the alternative, it is clear that they are claiming a contractual relationship with Defendants that precludes recovery under an unjust enrichment theory. (Def. Mem., at 5-6.)

The Sorensen Plaintiffs do not dispute that their compensation arrangement with Defendants is contractual in nature, but they claim that it violated federal wage and hour laws. Such an illegal contract, the Sorensen Plaintiffs argue, is void and unenforceable such that their unjust enrichment claim is eminently viable. (Pl. Resp., at 4-5.) FN5 *See Ryan v. State of Illinois,* No. 91 C 3725, 1993 WL 147416, at *2 (N.D.Ill. May 3, 1993) ("[i]f void, the Bank's contract with Cosentino would not govern the relationship and the unjust enrichment claim could proceed"); *Podromos v. Poulos,* 202 Ill.App.3d 1024, 1032, 148 Ill.Dec. 345, 560

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                  Page 5

Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824
**(Cite as: Not Reported in F.Supp.2d)**

N.E.2d 942, 949 (1st Dist.1990) (observing that in some circumstances, where a contract is unenforceable, a party may seek relief on a theory of unjust enrichment, provided the party has fully performed and the other party has benefitted as a result).

> FN5. Plaintiffs' Response to Defendants' Motion for Judgment on the Pleadings on Count VI of the Third Amended Complaint is cited as "Pl. Resp., at ___."

**\*5** The Sorensen Plaintiffs admit that they failed to expressly plead unjust enrichment as an alternative theory of relief to the IWPCA claim. Significantly, however, they do not incorporate the IWPCA allegations into their unjust enrichment claim. This distinguishes *Samuels v. Old Kent Bank,* No. 96 C 6667, 1997 WL 458434 (N.D.Ill. Aug.1, 1997), cited by Defendants, in which the plaintiffs alleged the existence of a contract for a breach of contract claim and incorporated those allegations into the equitable claim without anywhere asserting that the contract was invalid. *Id.* at \*15. Here, the Sorensen Plaintiffs clearly take the position that the tip credit arrangement was illegal, though they failed to expressly allege it as a void contract. The court declines to grant judgment on the pleadings on the basis of a pleading deficiency that may be readily cured.

Defendants insist that they have identified more than a mere pleading deficiency because the Sorensen Plaintiffs cannot claim that the entire compensation arrangement is void just because the tip credit system is invalid. (Def. Reply, at 5-6.) FN6 As Defendants see it,

> FN6. Defendants CHT Corp., Inc. and Charlie Trotter's Reply to Plaintiffs' Response to Defendants' Motion for Judgment on the Pleadings on Count VI of Plaintiffs' Third Amended Complaint is cited as "Def. Reply, at ___."

if an employer agreed to provide its employees with a certain salary level as part of a compensation arrangement for a given period, the employer's improper application of the tip credit under the FLSA during such period certainly would not render the entire compensation arrangement unenforceable so as to absolve the employer of its obligation to provide the agreed salary to employees.

(*Id.*) In support of this argument, Defendants cite *Heder v. City of Two Rivers,* 295 F.3d 777 (7th Cir.2002), in which the court characterized a collective bargaining agreement as valid under state law even though certain provisions violated the FLSA. *Id.* at 782. In this case, however, the tip credit arrangement formed the basis of the entire payment plan, with Defendants relying on the tip credit to calculate minimum wage and overtime pay rates. Based on the information currently before the court, it is not clear that the Sorensen Plaintiffs could present no set of facts to demonstrate that the entire compensation plan is illegal and void. *See Brunt v. Service Employees Int'l Union,* 284 F.3d 715, 718-19 (7th Cir.2002) ("[a] court will grant a Rule 12(c) motion only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved").

## B. FLSA As Exclusive Remedy

At the same time, the Sorensen Plaintiffs concede that their unjust enrichment claim is based on the same factual assertions as their FLSA claims, and that they are not entitled to bring state common law claims that seek relief identical to that under the FLSA. *See, e.g., Cichon v. Exelon Generation Co.,* No. 02 C 3441, 2002 WL 31455986, at \*3 (N.D.Ill. Nov.1, 2002) ("Illinois common law does not provide for a retaliatory discharge cause of action where an alternative remedy (specifically that under the FLSA) provides effective deterrence to the complained-of conduct"); *Tombrello v. USX Corp.,* 763 F.Supp. 541, 544 (N.D.Ala.1991) (common law claims for "wrongful refusal to pay" were " nothing more than claims for wages [which] must be brought under the Fair Labor Standards Act ...

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824
(Cite as: Not Reported in F.Supp.2d)

the exclusive remedy for enforcing these rights"); *Nettles v. Techplan Corp.,* 704 F.Supp. 95, 100 (D.S.C.1988) (claims for unpaid overtime and negligent failure to pay overtime were governed by the FLSA). The Sorensen Plaintiffs nonetheless argue that the remedy they seek for unjust enrichment-i.e., disgorgement of tip income-is not available under the FLSA, which provides only for recovery of their minimum wage entitlement. (Pl. Resp., at 8-9.) *See Davis v. B & S, Inc.,* 38 F.Supp.2d 707, 714 (N.D.Ind.1998) ("an employer is not eligible to take the tip credit, and will be liable for reimbursing an employee the full minimum wage that employee would have earned, if the employer exercises control over a portion of the employee's tips").

**\*6** Defendants respond that in similar circumstances, "courts have not turned to the extraordinary remedy of unjust enrichment to award employees all of the tips collected during the applicable period" but, instead, have awarded employees an amount equal to the minimum wage. (Def. Reply, at 7.) *See, e.g., Davis,* 38 F.Supp.2d at 714; *Wright v. U-Let-Us Skycap Servs., Inc.,* 648 F.Supp. 1216, 1217-18 (D.Colo.1986) (tip agreement requiring plaintiffs to "turn in all monies received in tips and be reimbursed just up to the amount that would equal the minimum wage" was " in blatant contravention of § 203(m) of the FLSA"; plaintiffs recovered back wages, interest, and attorneys' fees). There is no evidence, however, that the plaintiffs in these cases requested such equitable relief.

The court recognizes that the Sorensen Plaintiffs' Individual tip income is high, averaging between $300 and $1,000 per night. (TAC ¶ 8.) Thus, recovery of the difference between the tip credit rate paid ($3.09 per hour) and the applicable minimum wage ($5.15 per hour) arguably would not adequately reimburse the Sorensen Plaintiffs for the amount of tips they turned over to Defendants but never recovered. The FLSA, however, specifically addresses this situation where an employer essentially participates in a tip pooling arrangement by retaining a portion of the money, and provides that the appropriate relief is to deny

the employer the use of the tip credit arrangement. *See, e.g., Chung v. New Silver Palace Restaurant, Inc.,* 246 F.Supp.2d 220, 230 (S.D.N.Y.2002) (" Congress, in crafting the tip credit provision of section 3(m) of the FLSA did not create a middle ground allowing an employer both to take the tip credit and share employees' tips"; employers of tipped employees must either "allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage" ); *Ayres v. 127 Restaurant Corp.,* 12 F.Supp.2d 305, 308-09 (S.D.N.Y.1998) (where tip pool violated FLSA by allowing general manager to participate, employer had to "disgorge the amount of tip credit deducted from each plaintiff's wages" during the relevant time period). In fact, the tip credit and tip pooling systems are expressly described in, and governed by, the FLSA. 29 U.S.C. § 203(m). Plaintiffs have not cited any cases where courts have allowed an unjust enrichment claim under such circumstances.

The Sorensen Plaintiffs are correct that state law claims are not automatically preempted by the FLSA. None of the cases they cite for this proposition, however, supports their entitlement to the remedy they seek here. In *Paukstis v. Kenwood Golf & Country Club, Inc.,* 241 F.Supp.2d 551 (D.Md.2003), for example, the plaintiff alleged violations of the FLSA's overtime requirements, as well as state law claims for negligent failure to comply with the FLSA and negligent supervision of the person responsible for such compliance. *Id.* at 559. Defendants there argued that the negligence claims were merely alternate causes of action because the defendants could not be liable for negligently failing to comply with the FLSA unless they actually violated the Act. *Id.* The court disagreed with that analysis and declined to dismiss the negligence claims, observing that such claims " do not necessarily conflict with the purpose of the FLSA's remedial scheme, at least where a plaintiff seeks identical damages under both federal and state law." *Id.* at 559-60. Here, the Sorensen Plaintiffs highlight the fact that they do not seek the same damages under both federal and state law, so *Paukstis* does not establish that their unjust enrichment claim can property coexist with the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 7

Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824
**(Cite as: Not Reported in F.Supp.2d)**

FLSA claims.

*7 *Balducci v. Chesterfield County,* 187 F.3d 628 (Table), 1999 WL 604040 (4th Cir.1999) is also inapposite because the plaintiffs in that case could not establish any minimum wage or maximum hour violations under the FLSA. As a result, "[a]ny dispute between these two parties about the number of hours for which the employees' salary was intended to compensate them is not cognizable under the FLSA, but instead should be pursued under state contract law." *Id.* at *7. In this case, the Sorensen Plaintiffs must establish a violation of the FLSA in order to pursue their unjust enrichment claim at all.

The court agrees that the Sorensen Plaintiffs have presented evidence that Defendants' tip credit arrangement was unjust in that waiters received only a fraction of their earned tips in violation of the FLSA, and is not persuaded by Defendants' belief that the allegedly "generous compensation package that amounted to roughly $70,000 on an annualized basis" establishes that they were paid fairly for their work as a matter of law. (Def. Mem., at 7.) Nevertheless, the Sorensen Plaintiffs' remedy is found in the FLSA and not the common law of quantum meruit. In *Johnston v. Davis Security, Inc.,* 217 F.Supp.2d 1224, 1227-28 (D.Utah 2002), for example, the plaintiff filed suit for unpaid wages and overtime under the FLSA and also brought ten state common law claims, including one for unjust enrichment. *Id.* at 1226. The court dismissed the state law claims because they were based on the same facts and circumstances as the plaintiff's FLSA claims and, thus, were "barred as merely duplicative" of those claims. *Id.* at 1227-28. In this case, similarly, the Sorensen Plaintiffs concede that their unjust enrichment claim is based on the same factual assertions as their FLSA claims. As a result, the common law claim is preempted by the FLSA and not properly before this court.

## II. Class Certification

Having determined that Defendants are entitled to judgment on the pleadings on the Sorensen

Plaintiffs' unjust enrichment claim, the court need not address Larson's motion to represent a class of all similarly situated waiters for purposes of that claim. The court thus turns to Plaintiff Kim who, for purposes of her state law IMWL and IWPCA claims, seeks to represent a class of all similarly situated cooks and food preparers who worked at Charlie Trotter's restaurant from at least August 11, 2000 to October 2002.

### A. Standards for Rule 23 Class Certification

A court has broad discretion to resolve whether certifying a class is proper under Federal Rule of Civil Procedure 23. *Keele v. Wexler,* 149 F.3d 589, 592 (7th Cir.1998). In making this determination, the substantive allegations in the complaint are taken as true and, generally, the ultimate merits of the case are not examined. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890, 895 (7th Cir.1981); *Hill v. Shell Oil Co.,* No. 98 C 5766, 2002 WL 663583, at *2 (N.D.Ill. Mar.28, 2002). The court should, however, "make whatever factual and legal inquiries are necessary under Rule 23" before deciding whether a case should proceed as a class action. *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir.2001); *Woodard v. Tower Automotive Products Co.,* No. 00 C 50459, 2002 WL 832572, at *2 (N.D.Ill. May 1, 2002). Plaintiffs bear the burden of demonstrating that their case meets all of the requirements of Rule 23. *Williams v. Chartwell Fin. Servs., Ltd.,* 204 F.3d 748, 760 (7th Cir.2000).

*8 Rule 23(a) sets forth four requirements for class certification: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequate representation). *See Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir.1992). If a plaintiff meets all of these prerequisites, she must next satisfy one of the requirements set forth in Rule

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 8

Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824
**(Cite as: Not Reported in F.Supp.2d)**

23(b). *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993). In this case, Kim seeks certification pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).[FN7]

> FN7. Kim's motion for class certification, which was initially filed in state court pursuant to 735 ILCS 5/2-801, does not expressly state which prong of Rule 23(b) is the basis for class certification in federal court. In her reply memorandum, however, she proceeds with an analysis under Rule 23(b)(3).

B. Kim's Motion for Class Certification

In responding to Kim's motion for class certification, Defendants do not dispute that Kim's IMWL and IWPCA claims satisfy the requirements of commonality, typicality, and adequate representation. They argue, instead, that the class is not so numerous as to make joinder impracticable, and that a class action is not a superior method of adjudication. The court addresses each argument in turn.

1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." *See Williams,* 204 F.3d at 760. There is no "magic number" for numerosity, but "permissive joinder is usually deemed impracticable where the class members number 40 or more." *Chandler v. Southwest Jeep-Eagle, Inc.,* 162 F.R.D. 302, 307 (N.D.Ill.1995). Courts have observed, however, that a "relatively small group may form a class if other considerations make joinder impracticable." *Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 56 (N.D.Ill.1996) (quoting *Patrykus v.*

*Gomilla,* 121 F.R.D. 357, 361 (N.D.Ill.1988)). These other considerations include judicial economy, the ability of class members to initiate individual suits, geographic dispersement of the potential class members, the type of relief sought by the class, and the practicability of relitigating a common core of issues. *See Radmanovich v. Combined Ins. Co. of America,* 216 F.R.D. 424, 431 (N.D.Ill.2003); *Patrykus,* 121 F.R.D. at 360-61; *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D.Ill.1986).

The putative class in Kim's case consists of at least 50 members. (Def. Resp., at 4.) [FN8] This number easily satisfies the numerosity requirement, and courts have certified classes with far fewer members. *See, e.g., Rosario v. Cook County,* 101 F.R.D. 659, 661 (N.D.Ill.1983) (class of 20 sufficiently numerous); *Bamer v. City of Harvey,* No. 95 C 3316, 1997 WL 139469, at *3 (N.D.Ill. Mar.25, 1997) (class of 13 sufficiently numerous). Defendants argue, however, that numbers notwithstanding, joinder is not in fact impracticable here because all of the potential class members can join this case pursuant to the FLSA's opt-in procedures under 29 U.S.C. § 216(b). (Def. Resp., at 5.) In Defendants' view, "class certification-with its attendant class notices, opt-out issues, fairness hearings and all other Rule 23 requirements-would expend *more* judicial resources than maintaining this action as one in which potential class members can opt-in if they so choose." (*Id.* at 6.)

> FN8. Defendants' CHT Corp., Inc.'s, a/k/a Charlie Trotter, and Charlie Trotter's Response to Plaintiff's Motion for Class Certification is cited as "Def. Resp., at ___."

*9 In *Thiebes v. Wal-Mart Stores, Inc.,* No. CIV. 98-802-KI, 2002 WL 479840 (D.Or. Jan.9, 2002), for example, the plaintiffs alleged claims under the FLSA and Oregon state wage laws. *Id.* at *1. The court granted the plaintiffs' motion to proceed as an FLSA collective action and 425 individuals, representing 2.7% of the potential class members, opted-in. *Id.* at *1, 3. The plaintiffs also sought to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824
**(Cite as: Not Reported in F.Supp.2d)**

certify a Rule 23 class for their state law claims, but the court found that joinder was not impracticable. The court expressed concern that "certification of the proposed class would bring in many more employees than those who believe they were actually aggrieved by Wal-Mart's alleged conduct." *Id.* at *3. Defendants here speculate that as in *Thiebes,* only a small percentage of the potential class members would opt-into an FLSA action, so joinder of a Rule 23 class on the state law claims would not be impracticable. (Def. Resp., at 5.)

Kim responds that she has not pleaded a collective action under the FLSA and therefore has no right to invoke the Act's opt-in procedures. (Kim Reply, at 5.) [FN9] She also contends that few persons are likely to opt-into a lawsuit that may jeopardize their careers, citing *Scott v. Aetna Servs., Inc.,* 210 F.R.D. 261 (D.Conn.2002). In *Scott,* the plaintiffs sought to certify their state labor claims in a class action. The court certified a collective action under the FLSA and 21 of the 281 potential class members opted-into the lawsuit. *Id.* at 266. The defendant argued that joinder of the 21 individuals was not impracticable and that it was "highly unlikely that an individual who elects not to opt-into the FLSA collective action but fails to opt-out of the Rule 23 class is actually making a conscious decision to participate in the law suit only on the state law claims." *Id.* at 267 (citing *Muecke v. A-Reliable Auto Parts and Wreckers, Inc.,* No. 01 C 2361, 2002 WL 1359411 (N.D.Ill. June 21, 2002)). The court disagreed and found the potential class sufficiently numerous, particularly because there was evidence that potential class members failed to join the FLSA action "because they feared reprisal." *Id.*

        FN9. Plaintiff's Reply in Support of her Motion for Class Certification of Illinois Minimum Wage Law and Illinois Wage Payment and Collection Act Claims is cited as "Kim Reply, at ___."

In this court's view, neither *Thiebes* nor *Scott* is directly on point for purposes of a numerosity determination. Unlike in *Thiebes,* there is no FLSA collective action pending in which many potential class members chose not to opt-in; thus, there is no evidence that certifying a class for the state law claims would bring in more individuals than actually feel aggrieved. *See Hickey v. Great Western Mortgage Corp.,* 158 F.R.D. 603, 609 (N.D.Ill.1994) ( "the court is not required to deny certification for speculative reasons; the certification decision always remains within the sound discretion of the court"). For similar reasons, the court is not persuaded that numerosity exists merely because many individuals may feel aggrieved but fear retaliation if they join Kim's lawsuit. In any event, as noted, there are currently 50 identified class members available to participate in this lawsuit which, at this time, is more than adequate to meet the numerosity requirement of Rule 23(a)(1). [FN10]

        FN10. Defendants suggest in a footnote that joinder is "wholly practicable" because the putative class members are likely concentrated in the Chicago area. (Def. Resp., at 5 n. 1.) It is true that geographic dispersement of the potential class members is one factor to consider in determining whether to certify a relatively small class (assuming this is an appropriate characterization of a class of at least 50 members). Other considerations, however, include judicial economy, the ability of class members to initiate individual suits, the type of relief sought by the class, and the practicability of relitigating a common core of issues. *See Radmanovich,* 216 F.R.D. at 431; *Patrykus,* 121 F.R.D. at 360-61; *Riordan,* 113 F.R.D. at 62. Thus, the location of the potential class members is not dispositive on the issue of numerosity. *See Diehl v. Twin Disc. Inc.,* No. 94 C 50031, 1995 WL 330637, at *3 (N.D.Ill. May 30, 1995) (where the proposed class included approximately 120 members, the court found the numerosity requirement of Rule 23(a) satisfied despite "no evidence of geographic dispersion").

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 10

Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824
**(Cite as: Not Reported in F.Supp.2d)**

### 2. Superiority

**\*10** Defendants make a similar argument against class certification with respect to Rule 23(b)(3)'s superiority requirement. They assert that an FLSA collective action, and not a Rule 23 class action, is the superior method of adjudicating Kim's claims. " While a class action may or may not be an ' appropriate method' here, it is clearly not superior to the Congressionally-designed, mandated and encouraged collective action under Section 216(b) of the FLSA." (Def. Resp., at 7.) Defendants cite several cases in support of this proposition.

In *De La Fuente v. FPM Ipsen Heat Treating, Inc.,* No. 02 C 50188, 2002 WL 31819226 (N.D.Ill.Dec.16, 2002) (Reinhard, J.), the plaintiffs moved to begin opt-in notice on their FLSA collective action and simultaneously sought class certification of their IMWL and IWPCA claims. *Id.* at \*1. The defendants did not object to the FLSA collective action and the court granted the plaintiffs' motion to proceed with notice of the class members' opt-in rights. *Id.* The court, however, declined to certify a Rule 23 class until after the opt-in period on the FLSA action closed. "The court shares *Thiebes [v. Wal-Mart Stores, Inc.,* No. 98-802-KI, 1999 WL 1081357 (D.Or. Dec.1, 1999) ] concern about a notice that both calls for a decision whether to opt-in to the collective action and also whether to opt-out of the class action." 2002 WL 31819226, at \*2. The court stated that it would have a better idea whether joinder was impractical after the opt-in period closed. *Id.*

The plaintiffs in *Muecke v. A-Reliable Auto Parts and Wreckers, Inc.,* similarly filed suit under the FLSA, the IMWL, and the IWPCA, and sought to send collective action opt-in notices under the FLSA claim and to certify a class under Rule 23 for the state law claims. 2002 WL 1359411, at \*1 (Kennelly, J.) The court agreed to let the plaintiffs proceed with an FLSA collective action but declined to certify a Rule 23 class until after the opt-in period closed, at which time "we will have before the Court as plaintiffs all of the present and former employees who wish to pursue a claim for unpaid wages." *Id.* at \*2. The court noted the possibility that only a few employees would opt-into the FLSA action, and explained that it would be incongruous to have "an FLSA 'class' including only a tiny number of employees who are interested in seeking back wages, with a state-law class that nonetheless includes all or nearly all of the companies' present or former employees." *Id.* The court concluded that a Rule 23 class action was not a superior means of resolving the state law claims and declined to "impose on the collective FLSA claim an overlay of a Rule 23(b)(3) state-law class." *Id.*

In *Rodriguez v. The Texan, Inc.,* No. 01 C 1478, 2001 WL 1829490 (N.D.Ill. Mar.7, 2001) (Shadur, J.), the plaintiff attempted to represent a class of similarly situated persons under the FLSA, the IMWL, and the IWPCA. The court issued an opinion *sua sponte* notifying the plaintiff that the FLSA did not permit Rule 23 class certification, instead requiring the use of an opt-in procedure. *Id.* at \*1-2. The court then explained that the plaintiff would have "an uphill burden" to obtain class certification of the state law claims:

**\*11** There are powerful policy considerations that led Congress to change the original version of the Fair Labor Standards Act by enacting the Portal to Portal Act of 1947 so as to require the opt-in procedure via individualized written consents by employees wishing to join such actions ... That policy and the underlying congressional intent would be thwarted if a plaintiff were permitted to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement.

*Id.* at \*1 (internal citations omitted). The court noted that the rules regarding supplemental jurisdiction under 28 U.S.C. § 1367(a) support this view. Section 1367(a), which gives federal courts jurisdiction over state law claims that are sufficiently related to the federal claims, provides that "[s]uch supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." That language, the court stated, " plainly betokens actual joinder or intervention, not the type of representative treatment that is sought by Rodriguez and his counsel here instead of such

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 11

Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824
(Cite as: Not Reported in F.Supp.2d)

actual joinder." *Id.* at *4.

As noted, Kim has not pleaded and does not seek to pursue an FLSA collective action. For this reason, she argues the cases cited by Defendants are inapposite. (Kim Reply, at 10-11.) In any event, she points out, other courts in this district have allowed class certification of state law wage claims notwithstanding a pending FLSA claim. *See Ladegaard v. Hard Rock Concrete Cutters, Inc.,* No. 00 C 5755, 2000 WL 1774091 (N.D.Ill.Dec.1, 2000) (after removal from state court, court certified a class under the IMWL and IWPCA despite the availability of a class action for FLSA claims, observing that potential confusion could be eliminated by appropriately-drafted notice); *O'Brien v. Encotech Constr. Servs., Inc.,* 203 F.R.D. 346 (N.D.Ill.2001) (following *Ladegaard,* court permitted plaintiffs to proceed both with FLSA collective action and a Rule 23 class action on their IMWL and IWPCA claims, as the possibility of separate claims in state court would be inefficient, and notice need not be unduly confusing to class members).

Neither party disputes that Kim's sole avenue for representing a class under the FLSA is the opt-in procedure set forth in § 216(b). They disagree, however, whether Kim is required to pursue an FLSA collective action-an issue that has not been addressed in the courts-and, if so, whether class certification on her state law claims remains viable. Kim argues that she is the "master" of her complaint and cannot be forced to plead an FLSA collective action. (Kim Reply, at 7-8.) Defendants insist that Kim cannot avoid the FLSA's exclusive class mechanism by "strategically modif[ying] h[er] pleading technique" to exclude such a claim.

In the Portal-to-Portal Act, Congress sought to "limit collective actions by requiring that each employee give written consent to becoming a party." *Rochlin v. Cincinnati Ins. Co.,* No. IP00-1898CHK, 2003 WL 21852341, at *15 n. 6 (S.D.Ind. July 8, 2003). Allowing plaintiffs to avoid the FLSA's opt-in procedure simply by omitting a request for collective action and seeking class certification of state law wage claims would

arguably subvert this congressional intent. *See Rodriguez,* 2001 WL 182940, at *1. At the same time, the court recognizes that Illinois courts contemplate class action treatment for IMWL and IWPCA claims. *See, e.g., Gelb v. Air Con Refrigeration and Heating, Inc.,* 326 Ill.App.3d 809, 260 Ill.Dec. 421, 761 N.E.2d 265 (1st Dist.2001). Thus, permitting Defendants to remove Kim's state law claims to this court and object to class action treatment of those claims arguably subverts the rights of unnamed class members. As noted, Rule 23(b)(3) requires a showing that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." An FLSA collective action is certainly available to Kim, but the running of the statute of limitations with respect to all other class members may render it unavailing for them. *See* 29 U.S.C. § 256 (for an individual not named in a complaint, his or her FLSA action is commenced on the date he or she consents to be a party plaintiff). Defendants do not object to allowing Kim to amend her complaint to allege an FLSA collective action, but have not offered to toll the statute of limitations as of the date Kim first filed her complaint in state court. The court therefore is not prepared to assume that the FLSA collective action is a superior method of adjudication. Further, because Kim has not sought inclusion of other back house workers in her FLSA claim, denial of this motion for class certification may effectively dispose of the rights of persons whose interests Kim purports to protect.

*12 The court recognizes its own obligation to consider the interests of absent class members and is for this reason reluctant to deny Kim's motion for class certification. At the same time, the court is reluctant to grant such a motion, where the result would be that a single individual's FLSA claim is the only basis for the court's jurisdiction over a potentially large class of claimants under a state law theory. The court is therefore inclined to revisit the issue of removal and consider whether the state law claims should be remanded under 28 U.S.C. § 1367(c). In *De Asencio v. Tyson Foods, Inc.,* 342 F.3d 301 (3d Cir.2003), where FLSA claims were brought together with fair wage claims under state law, the court observed that "the disparity in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 12

Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824
**(Cite as: Not Reported in F.Supp.2d)**

numbers of similarly situated plaintiffs [alleging state as opposed to federal claims] may be so great that it becomes dispositive by transforming the action to a substantial degree, by causing the federal tail represented by a comparatively small number of plaintiffs to wag what is in substance a state dog." *Id.* at 311. The *De Asencio* court reversed the district judge's exercise of supplemental jurisdiction over the state wage claims, albeit noting also the presence of unresolved state law issues. *See also Jackson v. City of San Antonio,* 220 F.R.D. 55.2003 WL 23180857 (W.D.Tex. Dec. 3, 2003) (declining to exercise supplemental jurisdiction over state law claims of pendent plaintiffs who failed to opt-in to collective FLSA claim).

The court therefore will continue Kim's motion for further briefing. The parties are directed to brief the issue of whether, in light of Kim's decision not to seek collective action treatment of the FLSA claims, and her obligation to unnamed class members, the court should sever Kim's state law class claims and remand them to state court.

### CONCLUSION

For the reasons stated above, Defendants' Motion for Judgment on the Pleadings on Count VI of Plaintiffs' Third Amended Complaint (43-1) is granted. Plaintiff Larson's Motion for Class Certification on that Count VI (24-1) is denied as moot, and Plaintiff Kim's Motion for Class Certification is entered and continued for further briefing.

N.D.Ill.,2004.
Sorensen v. CHT Corp.
Not Reported in F.Supp.2d, 2004 WL 442638 (N.D.Ill.), 149 Lab.Cas. P 34,823, 9 Wage & Hour Cas.2d (BNA) 824

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 8

Westlaw.

Slip Copy                                                                    Page 1

Slip Copy, 2007 WL 1660972 (E.D.Cal.)
**(Cite as: Slip Copy)**

Vasquez v. Coast Valley Roofing Inc.
E.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,E.D. California.
Enrique VASQUEZ and Juan Andres Ruiz on
behalf of a class of similarly situated employees,
Plaintiffs,
v.
COAST VALLEY ROOFING INC. dba Coast
Roofing, Defendant.
**No. CV-F-07-227 OWW/DLB.**

June 6, 2007.

Hector Rodriguez Martinez, Law Office of Mallison
& Martinez, Lafayette, CA, for Plaintiffs.
David A. Dixon, Hogan & Klingenberger P.C.,
Bakerfield, CA, for Defendant.

ORDER GRANTING DEFENDANT'S MOTION
TO DISMISS PLAINTIFFS' TWELFTH CAUSE
OF ACTION WITH LEAVE TO AMEND (Doc.
11)
OLIVER W. WANGER, United States District
Judge.
**\*1** Plaintiffs' Complaint is brought as a class action
on behalf of Plaintiffs and former non-exempt
employees of Defendant. Paragraph 22 of the
Complaint alleges that Defendant has maintained
and enforced against its non-exempt employees, the
following unlawful practices and polices in
violation of California and federal wage and hour
laws:
a. failing to pay premium overtime wages for hours
worked in excess of 8 hours in one day, 40 hours in
a workweek, and on the seventh day of a workweek
without overtime pay;
b. failing to pay minimum wages for all hours
worked;
c. failing to pay accrued vacation wages
d. failing to permit rest periods of at least (10)
minutes per four (4) hours worked or major fraction

thereof and failing to pay such employees one (1)
hour of pay at the employee's regular rate of
compensation for each workday that the rest period
was not provided;
e. failing to provide, to work at least five (5) hours
without a meal period and failing to pay such
employee one (1) hour of pay at the employee's
regular rate of compensation for each workday that
the meal period was not provided;
f. failing to provide accurate itemized wage
statements;
g. failing to maintain accurate time-keeping records;
h. failing to reimburse employees for expenses
reasonably incurred;
i. failing to pay wage deductions to the proper state
and federal authorities;
j. failing to compensate for all hours worked at
hourly wage rates above the minimum wage rate;
k. requiring employees to report to work but not
putting employees to work or furnishing less than
half their usual or scheduled day's work, and while
paying less than half the usual or scheduled day's
work at their regular rate of pay;
l. failing to pay all earned wages and/or premium
wages due and owing at the time that any Class
member's employment with DEFENDANT
terminated;
m. refusing to pay all wages when due;
n. charging employees to rent equipment needed to
complete tasks for the benefit of the employer; and
o. failing to timely permit inspection and/or copying
of employment records requested by employees.

The Twelfth Cause of Action is for Conversion.
After incorporating all preceding allegations, the
Twelfth Cause of Action alleges:117. PLAINTIFFS
and the Class labored for and was subject to the
control of DEFENDANT and was permitted and/or
required to suffer work, all for the benefit of
DEFENDANT, and earned wages lawfully
belonging to PLAINTIFFS and the Class.
PLAINTIFFS also made reasonable
expenditures-including the provision of vehicles
and equipment, and even the renting of equipment

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                      Page 2

Slip Copy, 2007 WL 1660972 (E.D.Cal.)
**(Cite as: Slip Copy)**

from DEFENDANT-on the DEFENDANT'S behalf and have not been reimbursed. DEFENDANT converted to it's own use the lawful wages and monies of PLAINTIFFS and the class by unlawfully requiring them to work at hourly and/or piece rates below the minimum wage and converting minimum wages due to DEFENDANT'S own use, failing to pay overtime premium and converting overtime wages due to DEFENDANT'S own use; failing to provide rest and meal periods without compensating non-exempt employees one hour's pay for each instance such periods were not provided, failing to reimburse employees for expenditures taken on the employer's behalf and the other violations described in this complaint and converted said monies and labor DEFENDANT'S [sic] own use.
**\*2** 118. As a result of the unlawful acts of DEFENDANT, PLAINTIFFS and the Class have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, punitive damages, and other equitable relief.

Defendant moves to dismiss the Twelfth Cause of Action pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, 3 contending that the cause of action does not state a cognizable legal theory.

### A. *Governing Standards.*

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Novarro v. Black,* 250 F.3d 729, 732 (9th Cir.2001). Dismissal of a claim under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir.1984). In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light

most favorable to the nonmoving party. *Thompson v. Davis,* 295 F.3d 890, 895 (9th Cir.2002). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.,* 349 F.3d 1191, 1200 (9th Cir .2003). Immunities and other affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint. *See Morley v. Walker,* 175 F.3d 756, 759 (9th Cir.1999); *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir.1980) When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Parrino v. FHP, Inc.,* 146 F.3d 699, 705-706 (9th Cir.1988).

### B. *Merits of Motion.*

Defendant contends that the Twelfth Cause of Action for conversion is simply an effort to recast statutory wage and hour claims as a tort in order to recover tort damages.

As explained in *Farmers Inc. Exchange v. Zerin,* 53 Cal.App.4th 445, 451, 61 Cal.Rptr.2d 707 (1997): 'Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages. It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied to property to his own use .... ' ... Money can be the subject of an action for conversion if a specific sum capable of identification is involved ....
**\*3** Neither legal title nor absolute ownership of the property is necessary ... A party need only allege it is *'entitled to immediate possession at the time of conversion* ...' ... However, a mere contractual right of payment, without more, will not suffice.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1660972 (E.D.Cal.)
**(Cite as: Slip Copy)**

Defendant argues that Plaintiffs have not stated a cognizable claim for conversion because generalized claims for unspecified sums of money or indebtedness are not cognizable as conversion. Defendant relies on *Farmers Ins. Exchange v. Zerin, supra,* and *Vu v. California Commerce Club,* 58 Cal.App.4th 229, 68 Cal.Rptr.2d 31 (1997).

In *Farmers Ins. Exchange,* the insurance company issued separate policies of automobile insurance to Joseph Stewart and Linda Kendrick, which provided for the payment of medical benefits in the event of an accident in which the insured or another covered person is injured. Both insureds were involved in automobile accidents in which the insureds and other were injured. Claims for medical benefits were submitted and the insurance company paid the claims. The policies issued to the insureds contained the provision: "When a person has been paid damages by us under this policy and also recovers from another, the amount recovered from the other shall be held by that person in trust for us and reimbursed to us to the extent of our payment .... " The insureds hired attorney Zerin to represent them in their claims against third party tortfeasors responsible for their injuries. The insurance company notified Zerin of the policy provisions requiring reimbursement upon recovery from third parties. Zerin thereafter received payments from the third party tortfeasors on behalf of the insureds but failed to pay any portion of the recovery to Farmers, disbursing the funds instead to himself and others. 53 Cal.App.4th at 450, 61 Cal.Rptr.2d 707. On appeal, Farmers argued that it had a sufficient property interest in the third party recoveries by virtue of the policies' provisions which created an actual or equitable lien on the funds, citing cases holding that "[o]ne who wrongfully withholds personal property from another who is entitled to it under a security agreement may be liable for conversion." *Id.* at 452, 61 Cal.Rptr.2d 707. The Court of Appeals then discussed cases involving equitable liens, noting that "[a] promise to pay a debt out of a particular fund, without more, will not create an equitable lien on that fund" and discussing other issues relevant to the creation of equitable liens, *Id.* at 453-456, 61 Cal.Rptr.2d 707, and concluded that "[o]n the bare allegations of the complaint, this matter appears to be nothing more

than an attempt by Farmers to avoid the necessity of seeking repayment from the parties primarily responsible by simply giving notice to their personal representative". The Court of Appeal thus upheld the demurrer to the insurance company's claim for conversion.

In *Vu v. California Commerce Club, Inc.,* two card players brought an action against a card club to recover moneys lost while playing card games at the club, the plaintiffs alleging that their losses were the result of other players' cheating and a breach of the card club's implied contractual obligations to them. The Court of Appeal held that the trial court properly granted summary judgment for the card club on the cause of action for conversion and conspiracy to commit conversion:
*4 The subject of these causes of action, and the damages alleged in them, once again were the funds plaintiffs lost. But neither by pleading nor responsive proof did plaintiffs identify any specific, identifiable sums that the club took from them. That rendered the generalized claim for money not actionable as conversion ... Indeed, the gist of plaintiffs' case was that much of the money they lost was taken by persons other than the club or its employees. Any amounts the club may have taken (e.g., Pan-Nine bets confiscated upon discovery of cheating) also were not identified.

58 Cal.App.4th at 235, 68 Cal.Rptr.2d 31.

Relying on these two cases, Defendants argue that Plaintiffs' conversion cause of action does not relate to a "specified fund":
Plaintiffs have simply alleged that Defendant owes them what they contend amount to wages and/or unreimbursed expenses under Labor Code section 203 (and other Code sections) because of violations of the specified Labor Code sections. These allegations may establish a statutory or property right to payment, but is not the specified fund essential to plead a claim for conversion of money.

Defendants further contend that the California Labor Code provides statutory remedies for employees to seek unpaid wages and that common law remedies are not generally available in actions

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1660972 (E.D.Cal.)
**(Cite as: Slip Copy)**

to recover wages.

Defendants cite *Oppenheimer v. Robinson,* 150 Cal.App.2d 420, 422-423, 309 P.2d 887 (1957). However, there is no such holding in this case or any discussion that common law remedies are not generally available in actions to recover wages. Therefore, Defendants' contention is not supported by authority.

Plaintiffs cite *Department of Industrial Relations v. UI Video Stores, Inc.,* 55 Cal.App.4th 1084, 64 Cal.Rptr.2d 457 (1997) as authority that a claim for conversion can be stated as well as statutory claims for unpaid wages. There, the Department of Industrial Relations (DLSE) brought an action against an employer seeking reimbursement for the cost of uniforms the employer had required its employees to furnish in violation of law. The DLSE and the employer entered into a settlement agreement whereby the employer agreed to deliver to the DLSE checks made payable to each affected employee. Rather than comply with the settlement agreement, the employer mailed the checks directly to the employees. A number of the checks were returned as undeliverable. The employer eventually turned over the undelivered checks to the DLSE, but instructed its bank not to honor them, asserting that it had complied with the settlement agreement and intended to keep the funds equal to the undeliverable checks. The DLSE filed a complaint against the employer for breach of the settlement agreement and conversion of the checks. The trial court granted summary judgment for the employer and the Court of Appeals reversed. With regard to DLSE's claim for conversion, the Court of Appeal held:

The DLSE's second cause of action alleged that the DLSE had the right to immediate possession of the checks and that Blockbuster unlawfully converted the checks to its own use ... Blockbuster argues that the DLSE has no right to exercise dominion and control of the checks, that Blockbuster is willing to issue a new check if the missing employee is located, and that appellant suffered no damages because it has no right to deposit the checks.

*5 The issues of DLSE's authority and Blockbuster's theory of lack of damages have been resolved by our discussion of the DLSE's statutory

and contractual authority to collect wages on behalf of the employees absent an actual assignment. Furthermore, the DLSE need not possess legal title to the property at issue to support a cause of action for conversion. A person without legal title to property may recover from a converter if the plaintiff is responsible to the true owner, such as in the case of a bailee or pledgee of the property ... The DLSE, which is empowered by section 96.7 to collect and deposit unpaid benefits, has such an interest. It was error to grant summary judgment on this cause of action.

55 Cal.App.4th at 1096, 64 Cal.Rptr.2d 457.

Plaintiffs acknowledge that *UI Video Stores, Inc.* is not on point authority supporting their claim for conversion, but contend that the decision demonstrates that a conversion cause of action may be brought for recovery of unpaid wages, including reimbursement of employee expenses. Although the viability of the conversion claims was not at issue in either case, Plaintiffs also cite *Singh v. Superior Court,* 140 Cal.App.4th 387, 44 Cal.Rptr.3d 348 (2006) and *Smith v. Superior Court,* 39 Cal.4th 77, 45 Cal.Rptr.3d 394, 137 P.3d 218 (2006) to suggest the "common practice" under California labor law is to bring conversion claims as well as California Labor Code wage and hour claims.

Defendants rejoin that *UI Video, Inc.* is not authority that the Plaintiffs can state a cause of action for conversion for unpaid wages, because that conversion claim was based on the employer's retention of undeliverable checks that DLSE had an interest in, in violation of the settlement agreement with the DLSE. Defendants further argue that the Plaintiffs' cases cited to demonstrate the alleged " common practice" of asserting conversion as well as statutes as a basis for recovery of unpaid wages, do no such thing:

[U]nless this alleged 'common practice' has been recognized judicially as legitimate, then this assertion may amount to nothing more that the assertion that plaintiffs attorneys [sic] have made a ' common practice' of throwing in an appropriate (if not indeed frivolous) conversion claim with their wage and hour pleadings.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1660972 (E.D.Cal.)
**(Cite as: Slip Copy)**

At the hearing, Plaintiffs argued that because Blockbuster had ordered its bank not to honor the undeliverable checks and intended to maintain sufficient funds to cover those amounts, *UI Video, Inc.* involved a general fund as opposed to a specified fund.

Plaintiffs' contention is meritless. The specified fund was the amount set forth in the Settlement Agreement. Checks were to be drawn against that specified fund and delivered to the DLSE for transmittal to the employees. The conversion occurred because Blockbuster failed to turn over to the DLSE the undeliverable checks as required by the Settlement Agreement, instead using those funds for Blockbuster's own use.

Plaintiffs argue that Paragraph 117 of the Complaint pleads their ownership or right to possession of personal property because personal vehicles, equipment and earned wages are all property rights of the Plaintiffs. Plaintiffs rely on *Moreno v. Greenwood Auto Center,* 91 Cal.App.4th 201, 210, 110 Cal.Rptr.2d 177 (2001) (individual sued a car dealer for conversion of an older truck and recovered damages based on her belief she was trading in her old truck and buying a newer truck, when in fact she executed a lease agreement for the newer truck); *O'Flaherty v. Belgum,* 115 Cal.App.4th 1044, 1079, 9 Cal.Rptr.3d 286 (2004) (dissenting opinion) ("The withdrawing partners did not reimburse OB for the reasonable value of the offices, equipment, supplies, and employees paid for by OB and used by the withdrawing partners from October 12, 1997, to December 31, 1997, to set up and promote the business of OCMOH. This use constituted conversion of OB's property.").

**\*6** Defendant replies that *Moreno* and *O'Flaherty* do not support Plaintiffs' claim for conversion based on the allegations in Paragraph 117 that "Plaintiffs also made reasonable expenditures-including the provision of vehicles and equipment, and even the renting of equipment from DEFENDANT-on the DEFENDANT'S behalf and have not been reimbursed."

*Moreno* involved a deprivation of the use of her older truck after the plaintiff was duped into signing a lease for a new truck instead of buying a new truck and the removal of accessories from the older truck by the car dealer. Defendant argues that *Moreno* does not support Plaintiffs here because there is no allegation that Defendant confiscated Plaintiffs' personal vehicles and prevented them from using it or any allegation that Defendant removed accessories from Plaintiffs' vehicles. Defendant contends:
Plaintiffs have instead alleged an issue regarding reimbursement they now seek for the alleged use of their personal vehicles. This is not a claim for the common law tort of conversion. Plaintiffs offer the Court the opportunity to accept an absurd misinterpretation of *Moreno* in order to apply conversion in a way it has never been applied before. The Court should decline that opportunity.

*O'Flaherty* entailed a wrongful withdrawal from a medical partnership and the retention by the withdrawing partners of the exclusive use and possession of the partnership's furniture, supplies and equipment. Defendant argues: "Such *exclusive, wrongful possession and use* of supplies and equipment constituted conversion. But the facts of *O'Flaherty* are obviously and easily distinguishable from the alleged facts in this litigation[,]" for the reason that the taking of tangible personal property was in dispute.

Plaintiffs cite *Cortez v. Purolator,* 23 Cal.4th 163, 96 Cal.Rptr.2d 518, 999 P.2d 706 (2000) as authority that earned wages are the property of the employee who has performed labor for compensation. In *Cortez,* a former employee brought an action against her former employer for failure to pay overtime wages. Plaintiff sought overtime pay that had accrued as a result of the failure of defendant's predecessor company to comply with certain regulations when it changed its workers' weekly schedules from five 8-hour days to four 10-hour or longer days. In addition to her individual cause of action, plaintiff prosecuted an Unfair Competition Law (UCL) claim for unfair business practice seeking restitution of the overtime wages withheld from her and other employees. In pertinent part, the California Supreme Court ruled:
We conclude that orders for payment of wages

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1660972 (E.D.Cal.)
**(Cite as: Slip Copy)**

unlawfully withheld from an employee are also a restitutionary remedy authorized by [Business and Professions Code] section 17203. The employer has acquired the money to be paid by means of an unlawful practice that constitutes unfair competition as defined by section 17200. The employee is, quite obviously, a 'person in interest' (§ 17203) to whom that money may be restored. The concept of restoration or restitution, as used in the UCL, is not limited to the return of money or property that was once in the possession of that person. The commonly understood meaning of 'restore' includes a return of property to a person from whom it was acquired ..., but earned wages that are due and payable pursuant to section 200 et seq. of the Labor Code are as much the property of the employee who has given his or her labor to the employer in exchange for that property as is property a person surrenders through an unfair business practice. An order that earned wages be paid is therefore a restitutionary remedy authorized by the UCL. The order is not one for payment of damages. The Court of Appeal concluded that a claim for wages owed is not a damage claim in holding that claims for wages earned but not paid are not damage claims subject to the claim filing requirement of Government Code section 905 in *Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1080, 195 Cal.Rptr. 576 ... ('Earned but unpaid salary or wages are vested property rights, claims for which may not be properly characterized as actions for monetary damages.'). Because equity regards that which ought to have been done as done (Civ.Code § 3529) , and thus recognizes equitable conversion ( *Parr-Richmond Industrial Corp. v. Boyd* (1954) 43 Cal.2d 157, 165-166, 272 P.2d 16 ..., we also conclude that unlawfully withheld wages are property of the employee within the contemplation of the UCL. Our conclusion that these wages may be the subject of a restitutionary order under section 17203 is consistent with our recognition in *Walnut Creek Manor v. Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 263, 284 Cal.Rptr. 718, 814 P.2d 704 ..., that restitutionary awards encompass quantifiable sums one person owes to another, and with that of the United States Supreme Court in *Curtis v. Loether* (1974) 415 U.S. 189, 197, 94 S.Ct. 1005, 39 L.Ed.2d 260 ..., that backpay may be

a form of restitution.
*7 We are satisfied therefore, that an order that a business pay to an employee wages unlawfully withheld is consistent with the legislative intent underlying the authorization in section 17203 for orders necessary to restore to a person in interest money or property acquired by means of an unfair business practice.

23 Cal.4th at 177-178, 96 Cal.Rptr.2d 518, 999 P.2d 706.

Defendant argues that *Cortez* cannot be read as approval for a claim of conversion by employees for unpaid wages. Defendants correctly contend that there is no discussion in *Cortez* of the common law tort of conversion and only a single reference to " equitable conversion". Neither *Cortez* nor the cases cited in *Cortez* involve the common law tort of conversion.

Defendant moves to dismiss the Twelfth Cause of Action on the ground that it does not state a cognizable theory of relief as a matter of law. However, Defendant does not identify a California case that holds a cause of action for conversion cannot be stated by employees against their employer for failure to pay wages as required by law.

Defendant provides authority from other jurisdictions. *Temmen v. Kent-Brown Chevrolet Co.,* 227 Kan. 45, 605 P.2d 95 (1980), involved a claim by an employee against the employer for withholding money from the employee's wages without authorization. In holding that the employer's action did not constitute the tort of conversion, the Court ruled:
It has been uniformly held that conversion is an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another ... We note also that:
'An action will not lie for conversion of a mere debt or chose in action. Hence, where there is no obligation to return identical money, but only a relationship of debtor and creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor.' ....

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 1660972 (E.D.Cal.)
**(Cite as: Slip Copy)**

605 P.2d at 99. In *Erlich v. Howe,* 848 F.Supp. 482 (S.D.N.Y.1994), a former partner brought an action against his law firm, alleging that his discharge violated ERISA and COBRA, and, *inter alia,* alleged a claim for conversion of his deferred compensation. In dismissing the conversion claim, the District Court held in pertinent part:This claim is one for conversion of monies owed to Ehrlich under the [Partnership] Agreement. An action for conversion of money is insufficient as a matter of law unless it is alleged that the money converted was in specific tangible funds of which the claimant was the owner and entitled to immediate possession. An action of conversion does not lie to enforce a mere obligation to pay money.

848 F.Supp. at 492. In *Huff v. Biomet, Inc.,* 654 N.E.2d 830 (1995), an executrix of an employee's estate brought an action against the employer for violating the Indiana Wage Payment Statute and for conversion. In affirming the trial court's dismissal of the conversion claim, the Indiana Court held in pertinent part:*8 To constitute the tort of conversion there must be an appropriation of the personal property of another ... Money may be the subject of an action for conversion, so long as it is capable of being identified as a special chattel ... The money must be a determinate sum with which the defendant was entrusted to apply to a certain purpose ... The refusal to pay a debt will generally not support a conversion action ....

...

Here, Huff [the executrix] seeks payment of money which was allegedly withheld from Carrell's [the employee] commissions. Huff alleges no facts which would indicate that Carrell entrusted money to Biomet for a particular purpose. Moreover ..., Huff has not shown that Biomet retained specific funds which could be directly attributed to Carrell. The facts alleged in Huff's complaint do not support a claim for conversion.

654 N.E.2d at 836.

Plaintiffs argue that these cases are not dispositive because Plaintiffs have alleged they have earned a specific amount, or have expended a specific amount for which reimbursement is due, and for which they are entitled to under California labor

laws, and that these "specific tangible amounts, wages that are the property of Plaintiffs and reimbursement of expenses were converted by Defendants for its own use."

As to Defendant's claim Plaintiffs must prove that Defendant is obligated to return a specific sum capable of identification, i.e., a specified fund, Plaintiffs argue Defendant is equitably estopped to make such an assertion at the pleading stage. Plaintiffs assert that Defendant controls this information and has denied Plaintiffs' access to the documents after Plaintiffs made a request for them pursuant to California Labor Code § 226.

California Labor Code § 226(a) requires an employer to provide itemized written statements semimonthly or at the time of payment of wages showing, *inter alia,* gross wages earned; total hours worked (unless salaried and exempt from overtime); the number of piece-rate units earned and applicable piece-rate if employee paid on a piece-rate basis; all deductions; net wages earned; the inclusive dates of the period for which the employee is paid; and all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee. Section 226(b) requires the employer to keep the information described in Section 226(a) and to afford current and former employees the right to inspect and copy the records upon reasonable request to the employer. Section 226(c) provides that an employer who receives an oral or written request to inspect or copy the records shall comply as soon as practicable, but no later than 21 calendar days from the date of the request.

Plaintiffs refer to the following allegations of Paragraph 22 of the Complaint, incorporated by reference into the Twelfth Cause of Action:
a. failing to pay premium overtime wages for hours worked in excess of 8 hours in one day, 40 hours in a workweek, and on the seventh day of a workweek without overtime pay;
*9 b. failing to pay minimum wages for all hours worked;
c. failing to pay accrued vacation wages
...
l. failing to pay all earned wages and/or premium

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 1660972 (E.D.Cal.)
**(Cite as: Slip Copy)**

wages due and owing at the time that any Class member's employment with DEFENDANT terminated ....

Plaintiffs state that further discovery will reveal the specific sum amount of wages that were converted by Defendant's actions. Because such documents are in the exclusive possession of Defendant, such sums are "capable of identification".

Defendant responds that "allegedly unpaid wages are a category of damages which are *categorically* unavailable through a tort action for conversion." Therefore, Defendant contends:
The important legal point for the Court not to lose sight of is that it is the categorical nature of the allegedly unpaid wages-not their alleged or unalleged amount-that prevents them from constituting the 'specific fund' required to state a tort for conversion. Unpaid wages are not a specific fund.
Plaintiffs' erroneous arguments based on allegations of non-access to documents also help to point out some of the hidden dangers in accepting their unprecedented theory of conversion ... [T]he Court may notice that the Opposition tends to obscure one of the major categories of unspecified allegedly unpaid wages that Plaintiffs seek to recover-allegedly unpaid wages predicated on allegations of missed meal and rest periods. Quantification of any allegedly missed meal and rest periods over an extended time period is a matter that may turn on the vagaries of testimony, the problems of human memory, the willingness of some persons to offer self-serving but inaccurate testimony, and other related problems. Does the potential for such discovery now mean that a conversion claim alleging meal and rest period violations can never be dismissed? It cannot be so, under existing law. Plaintiffs' theory of the common law tort of conversion would stretch the tort far beyond any past conception of it by seeking to include recovery of alleged meal and rest period violations. This example helps to further underscore the new kinds of unanticipated problems that this Court could be opening up, if it were to seriously entertain any notion of now extending the common law tort of conversion in the unprecedented manner Plaintiffs' request.

Plaintiffs here seek to extend the California law of conversion into the wage and hour field in a context unrecognized by existing state law. Well-reasoned cases from other jurisdictions explain why unliquidated and unpaid employment compensation does not constitute the requisite personal property or chattels, capable of conversion. When the law of a state is silent, the District Court is to endeavor to predict what the Supreme Court of the state will decide. *See Vernon v. City of Los Angeles,* 27 F.3d 1385, 1391 (9th Cir.), *cert. denied,* 513 U.S. 1000, 115 S.Ct. 510, 130 L.Ed.2d 417 (1994) ("Where the state supreme court has not spoken on an issue presented to a federal court, the federal court must determine what result the state supreme court would reach based on state appellate court opinions, statutes, and treatises.").

**\*10** Based on the absence of any California authority, the reasoning of the out-of-state cases, and the comprehensive remedial scheme protecting employees under California and federal law, the conversion theory proffered by Plaintiffs is an idea whose time has not come. There is no reason to extend tort law into a field comprehensively regulated by federal and state wage and hour laws.

Plaintiff requests leave to amend, subject to the requirements of Rule 11, Federal Rules of Civil Procedure. Given Plaintiffs' representation that the Twelfth Cause of Action can be amended to state a claim in compliance with Rule 11, leave to amend is GRANTED.

*CONCLUSION*

For all the reasons stated above, Defendants' motion to dismiss the Twelfth Cause of Action is GRANTED WITH LEAVE TO AMEND. Plaintiffs shall file a First Amended Complaint in accordance with this Order within 14 days of the filing date of this Order.

IT IS SO ORDERED.

E.D.Cal.,2007.
Vasquez v. Coast Valley Roofing Inc.
Slip Copy, 2007 WL 1660972 (E.D.Cal.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 1660972 (E.D.Cal.)
**(Cite as: Slip Copy)**


END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.