**EXHIBIT 1**

LEXSEE 2004 U.S. DIST. LEXIS 28822

**BP CHEMICALS LIMITED, Plaintiff, v. YANKUANG GROUP BOYANG FOREIGN ECONOMIC & TRADE CO., YANKUANG GROUP COMPANY, LTD., SHANGHAI CHEMICAL INDUSTRY DESIGN INSTITUTE CO., LTD., and ASTROCOSMOS METALLURGICAL, INC., Defendants.**

**No. CV 04-02496 PA (JTLx)**

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

*2004 U.S. Dist. LEXIS 28822*

**April 9, 2004, Decided**
**April 12, 2004, Filed**

**COUNSEL:** [*1] For BP Chemicals Limited, an English corporation, Plaintiff: Daniel L Brockett, Quinn Emanuel Urquhart Oliver and Hedges, Los Angeles, CA; Harris A Senturia, James W Satola, Squire Sanders & Dempsey, Cleveland, OH; Martin J Trupiano, Michael T Purleski, Squire Sanders & Dempsey, Los Angeles, CA.

**JUDGES:** Percy Anderson, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Percy Anderson

**OPINION**

**ORDER DISMISSING ACTION AND DENYING AS MOOT EX PARTE APPLICATION OF PLAINTIFF FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

The Court has before it plaintiff BP Chemicals Limited's ("BP") *ex parte* application for a temporary restraining order, filed April 9, 2004. BP alleges that defendants Yankuang Group Boyang Foreign Economic & Trade Co., Ltd. ("YB"), Yankuang Group Company ("YGC"), AstroCosmos Metallurgical, Inc. ("AstroCosmos"), and Shanghai Chemical Industry Design Institute ("SCIDI") have misappropriated BP's trade secrets in BP's proprietary methanol carbonylation process for manufacturing acetic acid. BP contends that defendants are using its trade secrets to build an acetic acid plant in China (the "YMG Project"). BP first sought to enjoin the shipment of certain [*2] pieces of equipment from Astro-Cosmos' facility in Oxnard, California in action CV

03-08167 PA (JTLx). That case was dismissed for lack of subject matter jurisdiction on March 23, 2004. BP appealed the dismissal to the Ninth Circuit Court of Appeals, and the appeal is currently pending.

In this newly filed action, BP has added YGC in an attempt to confer federal subject matter jurisdiction pursuant to the Federal Sovereign Immunities Act ("FSIA"), *28 U.S.C. § 1602 et seq.* It is undisputed that this is the same action, stemming from the same facts, seeking the same relief against substantially the same parties.

This Court no longer has jurisdiction over BP's first action:

> [A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.

*Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58, 103 S. Ct. 400, 402, 74 L. Ed. 2d 225 (1982).* Nor is it appropriate [*3] for this Court to exercise jurisdiction over this action. It is universally recognized that a "litigant has no right to maintain a second action duplicative of another." *Barapind v. Reno, 72 F. Supp. 2d 1132, 1145 (E.D. Cal. 1999)* (citing *The Haytian Republic, 154 U.S. 118, 124, 14 S. Ct. 992, 993, 38 L. Ed. 930 (1894)*); accord *Zerilli v. Evening News Asso., 628 F.2d 217, 222,*

2004 U.S. Dist. LEXIS 28822, *

*202 U.S. App. D.C. 217 (D.C. Cir. 1980); Sutcliffe Storage & Warehouse Co. v. United States, 162 F.2d 849, 851 (1st Cir. 1947); Walton v. Eaton, 563 F.2d 66, 71 (3d Cir. 1977); Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc., 259 F.3d 949, 954 (8th Cir. 2001); Church of Scientology of California v. U.S. Dept. of Army, 611 F.2d 738, 750 (9th Cir. 1979).* Several circuits have also held that a newly filed complaint may not be tactically employed to bypass procedural conditions imposed on the first complaint. *See, e.g., Walton, 563 F.2d at 71; Oliney v. Gardner, 771 F.2d 856, 859 (5th Cir. 1985); Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp., 296 F.3d 982, [*4] (10th Cir. 2002).* While the Ninth Circuit has not explicitly recognized this principle, it has explicitly stated that it found the *Walton* Court's opinion instructive in determining whether a plaintiff could dismiss and refile her claims in order to demand a jury. *See Russ v. Standard Ins. Co., 120 F.3d 988, 990 (9th Cir. 1997).*

Accordingly, the Court dismisses this action as duplicative, and denies as moot the *ex parte* application for a temporary restraining order.

IT IS SO ORDERED.

DATED: April 9, 2004

Percy Anderson

UNITED STATES DISTRICT JUDGE

1189RJ

```
********** Print Completed **********

Time of Request: Friday, July 13, 2007   14:09:46 EST

Print Number:    1821:37526785
Number of Lines: 76
Number of Pages:
```

```
Send To:  ESCALONA, EVA
          MORGAN LEWIS & BOCKIUS LLP
          1 MARKET PLZ FL 5
          SAN FRANCISCO, CA 94105
```

**EXHIBIT 2**

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2006 WL 758311 (D.N.H.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Carey v. Hillsborough County Dept. of Corrections
D.N.H.,2006.
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
   United States District Court,D. New Hampshire.
William J. CAREY
v.
HILLSBOROUGH COUNTY DEPARTMENT OF
CORRECTIONS, Medical Department et al.
**No. Civ. 05-CV-442-PB.**

March 6, 2006.

William J. Carey, pro se.

### REPORT AND RECOMMENDATION
MUIRHEAD, Magistrate J.
*1 Pro se plaintiff William J. Carey has filed a complaint, pursuant to 42 U.S.C. § 1983, alleging that defendants have abridged his rights under the Eighth and Fourteenth Amendments to the United States Constitution by denying him adequate medical and dental care and failing to protect him from attack by a cell-mate (document no. 1). Named as defendants are the Hillsborough County Department of Corrections ("HCDOC"), the HCDOC Medical Department,[FN1] HCDOC Superintendent James O'Mara [FN2] and Correctional Medical Services ("CMS").

> FN1. Because the body of the complaint alleges that HCDOC/CMS denied Carey adequate medical care, I construe the claims to be brought against CMS and the HCDOC Medical Department.

> FN2. Construed liberally, the complaint names O'Mara as a defendant in his representative capacity.

The complaint is before me for preliminary review to determine whether, among other things, it states a claim upon which relief may be granted. See 28 U.S.C. § 1915A; U.S. District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2). For the reasons stated below, I recommend that the complaint be dismissed.

### Standard of Review

In reviewing a pro se complaint, this court must construe the pleading liberally and in favor of the pro se litigant. See Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir.1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976)). At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996) (stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true). This review ensures that pro se pleadings are given fair and meaningful consideration. See Eveland v. Director of CIA, 843 F.2d 46, 49 (1st Cir.1988). I apply this standard in reviewing Carey's complaint.

### Factual Background

Crediting the factual allegations in the complaint in the light most favorable to Carey, the material facts are as follows. Carey, a pretrial detainee at the HCDOC, alleges that during the course of his incarceration prison officials subjected him to constitutional deprivations in violation of his Eighth and Fourteenth Amendment rights. Defendants allegedly denied him adequate medical and dental care and failed to protect him from attack by his cell-mate. He now brings this action pursuant to Section 1983, alleging that defendants' acts and omissions rise to the level of constitutional deprivations.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                            Page 2

Not Reported in F.Supp.2d, 2006 WL 758311 (D.N.H.)
**(Cite as: Not Reported in F.Supp.2d)**

*Prior Litigation*

The claims in this action are identical to certain claims alleged in *Carey v. Hillsborough County Department of Corrections, et al.,* 05-cv-274-PB. In that case, I concluded that Carey stated Eighth Amendment claims for denial of adequate dental care against an unnamed HCDOC dentist and failure to protect against the HCDOC and HCDOC Superintendent, James O'Mara. I recommended dismissal of various claims, including the Eighth Amendment denial of adequate medical care claim against an HCDOC physician, Dr. Ward. My Report and Recommendation was approved on December 27, 2005 (attached).

### I. *Doctrine of* Res Judicata

**\*2** For the reasons stated below, I conclude that Carey's Eighth and Fourteenth Amendment claims for denial of adequate medical care are barred under the doctrine of *res judicata*.

Under the doctrine of *res judicata,* "a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action. " *Breneman v. United States ex rel. FAA,* 381 F.3d 33, 38 (1st Cir.2004) (citation omitted). For the doctrine to apply, three elements must be met:: "(1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions." *Brenemman,* 381 F.3d at 38 (quoting *Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mortg. Bankers Corp.),* 324 F.3d 12, 16 (1st Cir.2003)). "In general, causes of action are identical for *res judicata* purposes when they arise from the same factual transaction." *Baldi v. Broderick,* No. 04-cv-466-PB, 2005 WL 2338816, at \*5 (D.N.H. Sept. 21, 2005). "[F]ederal law governs the *res judicata* effect of a federal court judgment." *Id.* (citing *Apparel Art Int'l v. Amertex Enters.,* 48 F.3d 576, 583 n .7 (1st Cir.1995)).

The three elements of *res judicata* are met as to

Carey's denial of adequate medical care claim. First, a final judgment on the merits was issued by this court in an earlier action (Civil No. 05-cv-274-PB) where the court dismissed, among other claims, Carey's denial of adequate medical care claim under the Eighth and Fourteenth Amendments. Second, there is sufficient identity between the causes of action in the earlier action and this action as both seek relief under Section 1983 and the Eighth and Fourteenth Amendments. In each action, Carey alleged that defendants failed to provide adequate medical care for injuries to his neck and right knee and ankle. Third, there is sufficient identity between the parties in the two actions. Both actions bring medical care claims against the HCDOC and HCDOC Medical Department. While CMS is named as a new defendant in this action, it appears to hold similar interests to the HCDOC Medical Department. Thus, the fact that CMS is the only new defendant in this action does not nullify the sufficiency of identity between the parties of the two actions. *See Perez-Guzman v. Gracia,* 346 F.3d 229, 233-38 (1st Cir.2003)(applying *res judicata* to claims against new parties where new parties held the same interests as the original parties); *Santiago Otero v. Quirindongo Echevarria,* No. Civ. 05-1443(DRD), 2005 WL 2671048, at \*2 (D.P.R. Oct. 19, 2005)(applying the doctrine of *res judicata* and holding that addition of one defendant in later suit did not annihilate the sufficiency of identity between the parties in the two actions). Accordingly, I conclude that Carey's instant denial of adequate medical care claim is barred by the doctrine of *res judicata.*

### II. *Duplicative Claims*

**\*3** For the reasons stated below, I recommend that Carey's remaining claims be dismissed as duplicative.

"A federal suit may be dismissed 'for reasons of wise judicial administration ... whenever it is duplicative of a parallel action already pending in another federal court.' " *Serlin v. Arthur Andersen & Co.,* 3 F.3d 221, 223 (7th Cir.1993)(quoting *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.,* 572 F.Supp. 1210, 1213

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 3

Not Reported in F.Supp.2d, 2006 WL 758311 (D.N.H.)
**(Cite as: Not Reported in F.Supp.2d)**

(N.D.Ill.1983)); *accord Adeogba v. Migliaccio,* 266
F.Supp.2d 142, (D.D.C.2003). District courts are
accorded "a great deal of latitude and discretion" in
determining whether one action is duplicative of
another, but generally an action is duplicative if the
"claims, parties, and available relief do not
significantly differ between the two actions ." *Id.*
(quoting *Ridge Gold,* 572 F.Supp. at 1213); *accord
James v. AT & T Corp.,* 334 F.Supp.2d 410, 411
(S.D.N.Y.2004).

Here, the Eighth and Fourteenth Amendment claims
based on denial of adequate dental care and failure
to protect are duplicative of the claims raised in
Carey's parallel action pending before this court
(Civil No. 05-cv-274-PB). In that action, Carey
sued the HCDOC and an unnamed HCDOC dentist
for failing to provide adequate dental care regarding
injuries to his teeth and jaw. He further sued the
HCDOC and HCDOC Superintendent for failing to
protect him from an assault by his cell-mate. After
conducting a preliminary review of the complaint, I
concluded that Carey stated, among other things, a
cognizable Eight Amendment denial of dental care
claim against the unnamed HCDOC dentist. I
further found that he alleged Eighth Amendment
failure to protect claims against the HCDOC and
HCDOC Superintendent. Those claims currently are
pending before this court. In addition, the parties in
both actions do not significantly differ. Although
the caption of the complaint names CMS as a new
and sole defendant, construed liberally the
allegations in the body of the complaint are asserted
against CMS, HCDOC, HCDOC Superintendent
and HCDOC Medical Department. While CMS and
the HCDOC Medical Department are not identical
parties, they nevertheless appear to represent similar
interests. *See Curtis v. DiMaio,* 46 F.Supp.2d 206,
215-16 (E.D.N.Y.1999)(dismissing suit as
duplicative, but only after finding that although
parties were not identical, their interest were
sufficiently aligned). Because the claims, parties,
and available relief do not significantly differ
between Carey's earlier action and this action, I
conclude that the instant claims are duplicative.
Accordingly, I recommend that Carey's Eight
Amendment claims based on denial of adequate
dental care and failure to protect be dismissed.

*Conclusion*

For the reasons stated above, I recommend that the
complaint be dismissed.

If this recommendation is approved, the claims as
identified in this report and recommendation, will
be considered for all purposes to be the claims
raised in the complaint. If the plaintiff disagrees
with the identification of the claims herein, plaintiff
must do so by filing an objection within ten (10)
days of receipt of this report and recommendation,
or by properly moving to amend the complaint.

**\*4** Any objections to this report and
recommendation must be filed within ten (10) days
of receipt of this notice. Failure to file objections
within the specified time waives the right to appeal
the district court's order. *See Unauthorized Practice
of Law Committee v. Gordon,* 979 F.2d 11, 13-14
(1st Cir.1992); *United States v. Valencia-Copete,*
792 F.2d 4, 6 (1st Cir.1986).

ATTACHMENT 1
BARBADORO, J.

*ORDER*

I herewith approve the Report and
Recommendation of Magistrate Judge Muirhead
dated November 22, 2005, no objection having
been filed.

SO ORDERED.

D.N.H.,2006.
Carey v. Hillsborough County Dept. of Corrections
Not Reported in F.Supp.2d, 2006 WL 758311
(D.N.H.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 3**

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1

Not Reported in F.Supp.2d, 2002 WL 31465299 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Centocor, Inc. v. MedImmune, Inc.
N.D.Cal.,2002.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
CENTOCOR, INC., et al., Plaintiff,
v.
MEDIMMUNE, INC., Defendant.
**No. C 02-03252 CRB.**

Oct. 22, 2002.

Owners and exclusive licensee of patent on process to produce immunoglobulins brought action against sublicensee, seeking declarations that sublicensee infringed claims of the patent, that the claims of the patent were valid and enforceable, and that sublicensee was obligated to pay royalties under the parties' sublicense agreement. Sublicensee moved to dismiss complaint. The District Court, Breyer, J., held that: (1) because sublicensee was performing its obligations under the sublicense, future infringement was unlikely, and no "actual controversy" existed, and (2) given pending Maryland action, first-to-file doctrine applied, and plaintiffs failed to demonstrate the existence of " special circumstances" that would support adjudication of this second-filed complaint.

Motion to dismiss granted.
West Headnotes
**[1] Declaratory Judgment 118A ☞233**

118A Declaratory Judgment
   118AII Subjects of Declaratory Relief
     118AII(L) Patents
      118Ak231 Patents
       118Ak233 k. Infringement of Patents.
Most Cited Cases
Owners and exclusive licensee of patent on process to produce immunoglobulins who brought suit against sublicensee that was manufacturing antibody alleging patent infringement failed to meet actual controversy requirement necessary to

maintain suit under the Declaratory Judgment Act, where, although sublicensee was admittedly " making, selling, or using" a product that may have been covered by the subject patent, it was doing so with a valid license, and it was continuing to perform its obligations under the sublicense agreement. 28 U.S.C.A. § 2201.

**[2] Federal Courts 170B ☞1145**

170B Federal Courts
   170BXIII Concurrent and Conflicting Jurisdiction and Comity as Between Federal Courts
     170Bk1145 k. Pendency and Scope of Prior Proceedings; Prisoners Under Arrest. Most Cited Cases
Where sublicensee of patent on process to produce immunoglobulins had brought declaratory judgment action against licensee in federal court in Maryland, first-to-file doctrine applied to preclude subsequent action by patent owners and licensee against sublicensee in federal court in California; sublicensee offered to allow patent owners to intervene in the Maryland action, and patent owners and licensee failed to demonstrate the existence of " special circumstances" supporting adjudication of the second-filed complaint.

ORDER GRANTING DEFENDANT'S MOTION
TO DISMISS
BREYER, J.
**\*1** Now before the Court is defendant Medimmune, Inc.'s Motion to Dismiss the Complaint filed against it. For the reasons stated herein, the Court GRANTS defendant's motion.

BACKGROUND

In 1992, Stanford and Columbia Universities granted Centocor an exclusive license on Patent '715, a process to produce immunoglobulins. Under the license, Centocor has the right to sublicense the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 31465299 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

patented process. Some time thereafter, Centocor contacted MedImmune regarding MedImmune's product, Synagis, a monoclonal antibody which targets infant respiratory viruses. Centocor claimed that its patent covered Synagis and that absent a sublicense, MedImmune would be infringing that patent Although MedImmune believed the patent was invalid and not infringed by its product, it did not want to risk an infringement claim. On September 15, 2000, MedImmune applied for and was granted a non-exclusive sublicense to make, use, offer for sale, sell and import products covered by the '715 patent. Under the agreement, MedImmune is required to pay royalties to Centocor for sales of Synagis. MedImmune continues to pay those royalties and remains in full compliance with its obligations under the license.

In April 2002, MedImmune filed an action in United States District Court for the District of Maryland seeking a declaration of its rights and obligations under the sublicense agreement and a declaration that the '715 patent is invalid or unenforceable. Centocor has filed a motion to dismiss in the Maryland action for failure to join the universities, the owners of the patent. In response, MedImmune informed the universities that it had no objection if they wished to intervene. One day later, the universities and Centocor filed the Complaint in this case.

Plaintiffs seek declarations from this Court that: (1) MedImmune infringes valid and enforceable claims of the '715 patent; (2) the claims of the '715 patent are valid; (3) the claims of the '715 patent are enforceable; and (4) MedImmune has an obligation to pay royalties under the sublicense agreement. Defendant has filed a Motion to Dismiss the Complaint for failure to state a claim, or in the alternative, under the first-to-file rule.

## DISCUSSION

### A. *The Actual Controversy Requirement*

Plaintiffs seek declaratory relief pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act.

Under the Act, there must be an "actual controversy " between the parties before a federal court may exercise jurisdiction. *See* 28 U.S.C. § 2201. The initial burden of establishing the trial court's jurisdiction rests on the party invoking that jurisdiction. *Cardinal Chem. Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 98, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993). The threshold question, then, is whether plaintiffs have established that an actual controversy exists.

Most declaratory actions in the patent field are brought by manufacturers of allegedly infringing products against patent owners after manufacture has already begun. *See, e.g., Cordis Corp. v. Medtronic, Inc.,* 835 F.2d 859, 862 (Fed.Cir.1987); *Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d 953, 955 (Fed.Cir.1987). Such actions allow a manufacturer to determine whether its product would infringe a patented invention without waiting until the patent owner finds it convenient to file suit. Here, the situation is reversed. It is the *owners* of the '715 patent who are asking the Court to declare the patent valid and potentially infringed. [FN1] Although it is unusual for a court to grant declaratory relief to a patent owner, the Federal Circuit has acknowledged that in rare cases, such relief may be appropriate. *See Lang v. Pac. Marine & Supply Co., Ltd.,* 895 F.2d 761, 764 (Fed.Cir.1990).

> FN1. Although the Complaint seeks a declaration that MedImmune "infringes valid and enforceable claims of the '715 claims," plaintiffs are actually requesting a declaration that MedImmune's activities " would infringe" the patent should it stop paying royalties. *See* Pls.' Opp'n to Mot. to Dismiss at 6. Thus, *Lang* applies.

*2 In *Lang,* the Federal Circuit ruled that a patentee can bring a declaratory judgment action against a potential future infringer provided that there is a " true, actual controversy." *Id.* This requirement is met by "a sufficient allegation of immediacy and reality." *Id.* The *Lang* court set out a two-prong test designed to satisfy the justiciability requirement of the Declaratory Judgment Act. First, the defendant

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 31465299 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

must be engaged in, or making meaningful preparations for engagement in, an activity directed toward making, selling, or using a patented invention. *Id* . Second, the acts of the defendant must indicate a refusal to change the course of its actions in the face of acts by the patentee sufficient to create a reasonable apprehension that a suit will be forthcoming. *Id.*

[1] Here, the Federal Circuit's two-prong test is not satisfied. Although MedImmune is admittedly " making, selling, or using" a product that may be covered by the '715 patent, it is doing so with a *valid license.* Plaintiffs acknowledge that MedImmune continues to perform its obligations under the sublicense agreement. *See* Pls.' Opp'n to Mot. to Dismiss at 7. Nonetheless, they contend that an actual controversy exists because the defendant has filed an action in Maryland to have the patent declared invalid. But plaintiffs have cited no cases in which the filing of a lawsuit established that the defendant was "making meaningful preparation" to infringe. In fact, MedImmune's filing of the Maryland action would seem to indicate just the opposite. By continuing to maintain its obligations under the licensing agreement, MedImmune has demonstrated its willingness to follow the proper legal channels to ensure it that it will *not* infringe should it stop paying royalties. The fact that MedImmune obtained a license in the first place, despite its belief that its product did not infringe the patent, is further evidence of its desire to avoid infringement.

Essentially, plaintiffs ask this Court to declare its patent valid just in case the defendant licensee, at some undetermined point in the future, stops complying with the terms of the license. But plaintiffs do not and cannot cite any cases in which a court has issued a declaratory judgment to stop such an uncertain future act. In fact, courts rarely afford declaratory relief to the patent owner, even when the likelihood of future infringement is much greater than it is here. In *Lang,* for example, the owners of two patents that pertained to features of a ship's hull brought a declaratory judgment action against a shipbuilder in the process of constructing a ship hull. *See Lang,* 895 F.2d at 763. The plaintiffs claimed the hull, when completed, would

infringe the patents. The court held that the plaintiffs failed to meet the actual controversy requirement because the hull would not be completed for at least another nine months. *See id.* at 764.

Similarly, in *Intermedics, Inc. v. Ventritex, Inc.,* 775 F.Supp. 1269 (N.D.Cal.1991), the court declined to exercise jurisdiction of a declaratory judgment claim when the possibility of FDA approval of the product at issue would have taken a year or more from the time that plaintiffs filed their complaint. *See id.* at 1289-90; *see also Amgen, Inc. v. Hoechst Marion Roussel, Inc.,* 3 F.Supp.2d 104 (D.Mass.1998) (declining to exercise jurisdiction to issue declaratory judgment when FDA approval was uncertain and the process itself was subject to alteration prior to approval); *Abbott Labs. v. Zenith Labs., Inc.,* 934 F.Supp. 925 (N.D.Ill.1995) (declining to exercise jurisdiction when alleged future infringer did not have FDA approval for its generic drug and had never indicated it planned to enter patentee's market).

*3 Here, future infringement is not only uncertain but unlikely. Should the Maryland court rule in favor of MedImmune and declare the '715 patent invalid, MedImmune would be free to stop its royalty payments to Centocor because there would be no patent to infringe. Should the court rule in favor of Centocor, there is no indication that MedImmune would discontinue performance of its obligations under the sublicense and thus infringe the patent. In short, there is no immediate and real threat of infringement to justify declaratory relief at this time.

Even had plaintiffs met their burden of showing the existence of an actual controversy, the Court has discretion to decline jurisdiction if it feels the action will serve no useful purpose. *See Spectronics Corp. v. H.B. Fuller Co., Inc.,* 940 F.2d 631, 634 (Fed.Cir.1991). Many courts decline to exercise jurisdiction when, as here, a suit between the same parties is pending in another forum. *See, e.g., Intermedics Infusaid, Inc. v. Univ. of Minn.,* 804 F.2d 129 (Fed.Cir.1986); *Int'l Harvester Co. v. Deere & Co.,* 623 F.2d 1207 (7th Cir.1980); *Aluminum Housewares Co. v. Chip Clip Corp.,* 609

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2002 WL 31465299 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

F.Supp. 358 (E.D.Mo.1984).

Plaintiffs readily admit this case mirrors MedImmune's first-filed Maryland action. *See* Pls.' Opp'n to Mot. to Dismiss at 6-7. The complaints differ only insofar as the universities have been named as parties to the case at bar. Still, plaintiffs assert arguments in favor of allowing this action to go forward. First, they contend that the universities are necessary and indispensable parties to this dispute, but are not named as defendants in the Maryland action. Second, plaintiffs contend that Maryland is an improper forum for the original action because the court lacks personal jurisdiction over the universities.

Whether or not plaintiffs' arguments have merit is not for this Court to decide. Rather, those issues properly belong before the Maryland court; in fact, the parties' motions on those very topics are now pending before that court. For purposes of this action, there is no actual controversy to satisfy the Declaratory Judgment Act.

### B. *The First-To-File Rule*

[2] Under the first-to-file doctrine, it is "a principle of sound judicial administration [that] the first suit should have priority, absent special circumstances.... Restraint of the first-filed suit is made only to prevent wrong or injustice...." *Kahn v. Gen. Motors Corp.,* 889 F.2d 1078, 1081 (Fed.Cir.1989). The party filing the second action must demonstrate the existence of special circumstances to overcome the strong presumption in favor of the first-filed action. *See id.* at 1081-83; *Applied Vision Inc. v. Optical Coating Lab., Inc.,* No. C 97-1233, 1997 WL 601425 at *2 (N.D.Cal.1997).

Here, plaintiffs argue that the rule does not apply because the universities are not named as parties to the Maryland action. While acknowledging that the issues involved in this case mirror those in the Maryland action, plaintiffs claim that any adjudication of the '715 patent without the universities would be incomplete and prejudicial. But plaintiffs' argument ignores the fact that courts generally do not require identical issues or parties

so long as the actions involve closely related questions or common subject matter. *See, e.g., Guthy-Renker-Fitness L.L.C. v. Icon Health & Fitness Inc.,* 46 U.S.P.Q.2d 1344, 1346 (C.D.Cal.1998) ("When two actions involving similar parties and issues are commenced in separate forums ... preference is given to the first-filed plaintiff's choice of forum under the ' first-to-file' rule."); *Texas Instruments Inc. v. Micron Semiconductor, Inc.,* 815 F.Supp. 994, 997 (E.D.Tex.1993) ("[A]ll that need be present is that the two actions involve closely related questions or common subject matter, or that the core issues substantially overlap. The cases need not be identical...."); *Marshak v. Reed,* No. 96 CV 2292, 2000 WL 33152076, at *3 (E.D.N.Y.2000) (invoking the first-to-file rule when the second action involved additional parties since "[p]arties whose interests are clearly aligned may be treated as if they were the same parties"). Plaintiffs' argument is rendered even less compelling by defendant's offer to allow the universities to intervene in the Maryland action.

**\*4** Finally, plaintiffs argue that the first-to-file rule does not apply because there is sound reason for a change in forum. As noted above, however, the issue of forum properly belongs before the Maryland court. "If the second-filed court is demonstrably more convenient for the parties and witnesses, a motion to transfer under Section 1404(a) should be addressed to the *first-filed* court." 8 Donald S. Chisum, *Chisum on Patents* § 21.02[4][b] (2002) (emphasis added).

In short, plaintiffs have failed to demonstrate the existence of "special circumstances" that would support adjudication of this second-filed complaint.

### CONCLUSION

For the reasons stated above, defendant's Motion to Dismiss is hereby GRANTED.

IT IS SO ORDERED.

N.D.Cal.,2002.
Centocor, Inc. v. MedImmune, Inc.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 5

Not Reported in F.Supp.2d, 2002 WL 31465299 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

Not Reported in F.Supp.2d, 2002 WL 31465299
(N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 4**

LEXSEE 2006 U.S. DIST. LEXIS 30584

**DISTRICT COUNCIL 37 HEALTH & SECURITY PLAN, DON L. COLEMAN and MAUREEN COWIE, individually and on behalf of all others similarly situated, Plaintiff, v. McKESSON CORPORATION, a Delaware corporation, Defendant.**

**Case No. C06-00718 SBA**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

***2006 U.S. Dist. LEXIS 30584***

**May 11, 2006, Decided**
**May 11, 2006, Filed**

**COUNSEL:** [*1] For District Counsel 37 Health & Security Plan, Don Coleman, individually and on behalf of all others similarly situated, Maureen Cowie, individually and on behalf of all others similarly situated, Plaintiffs: Elaine T. Byszewski, Steve W. Berman, Hagens Berman LLP, Los Angeles, CA.

For McKesson Corporation, a Delaware corporation, Defendant: Lori A. Schechter, Paul Flum, Morrison & Foerster, San Francisco, CA.

**JUDGES:** Honorable Saundra B. Armstrong, United States District Judge.

**OPINION BY:** Honorable Saundra B. Armstrong

**OPINION**

**ORDER GRANTING McKESSON'S MOTION TO DISMISS OR TO STAY**

Hon. Saundra B. Armstrong

Defendant McKesson Corporation's Motion to Dismiss or to Stay came before the Court for hearing on May 9th, 2006, the parties being represented by their respective counsel. The Court being fully advised and having considered the Memoranda, Declarations, and Exhibits and other evidence submitted, the arguments of counsel, and good cause appearing,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is GRANTED as follows:

Under the first-to file-rule, the Court has the authority to stay or dismiss an action when "a complaint involving the same parties and issues has already [*2] been filed in another district." *Alltrade, Inc. v. Uniweld Prods., Inc., 946 F.2d 622, 625 (9th Cir. 1991).* The Court finds that this case was filed on February 1, 2006, after a similar action against McKesson Corporation was filed in the District of Massachusetts on June 2, 2005. "Exact parallelism between the two actions need not exist; it is enough if the parties and issues in the two actions are 'substantially similar.'" *Alioto v. Hoiles, 2004 U.S. Dist. LEXIS 21398, No. C 04-1395 PJH, 2004 WL 2326367, at *5 (N.D. Cal. Oct. 12, 2004)* (citing *Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989)).* Where each of these factors is present, the second-filed action should be dismissed or stayed. *See, e.g., Visx, Inc. v. Garabet, 2000 U.S. Dist. LEXIS 19063, No. C 00-3633 CRB, 2000 WL 1929328, at *2, *4 (N.D. Cal. Dec. 18, 2000)* (dismissal without prejudice); *N. Am. Cas. Ins. Co. v. Encompass Power Servs., 2005 U.S. Dist. LEXIS 33314, No. Civ. S051587DFLGGH, 2005 WL 3453947, at *2-*3, *5 (E.D. Cal. Dec. 16, 2005)* (stay); *Alibaba.com, Inc. v. Litecubes, Inc., 2004 U.S. Dist. LEXIS 3492, No. C03-5574 MHP, 2004 WL 443712, at *2-*3 (N.D. Cal. March 8, 2004)* (stay).

The Court finds that the parties to the [*3] two cases are substantially similar. Although the named plaintiffs are different in the two cases, the named plaintiffs are members of classes which are defined identically in the two actions and are therefore substantially similar. *See Peak v. Green Tree Fin. Servicing Corp., 2000 U.S. Dist. LEXIS 9711, No. C 00-0953 SC, 2000 WL 973685, at *2-*3 (N.D. Cal. July 7, 2000).* The presence of an additional defendant in the Massachusetts action does not render the actions dissimilar for the purposes of the first to file rule. *See N. Am. Cas. Ins. Co., 2005 U.S. Dist. LEXIS 33314, 2005 WL 3453947, at *3 n.4.* The court also finds that the issues in the two cases are substantially similar,

2006 U.S. Dist. LEXIS 30584, *

resting on identical factual allegations and asserting identical or analogous causes of action against McKesson Corporation. *See L. Cohen Group v. Herman Miller, Inc., C 05-4476 SI, 2006 U.S. Dist. LEXIS 2301, at *9 (N.D. Cal. Jan, 18, 2006).*

Therefore, the Court ORDERS that this action is dismissed without prejudice under the first-to-file rule.

**IT IS SO ORDERED.**

Dated: May 11, 2006

The Honorable Saundra B. Armstrong

United States District [*4] Judge

**EXHIBIT 5**

Westlaw.

Slip Copy                                                                    Page 1

Slip Copy, 2006 WL 2160934 (E.D.Mich.)
**(Cite as: Slip Copy)**

**H**
Hahn v. Tarnow
E.D.Mich.,2006.
Only the Westlaw citation is currently available.
United States District Court,E.D.
Michigan,Southern Division.
Alan Thomas HAHN, Plaintiff,
v.
Arthur J. TARNOW et al., Defendants.
**No. 06-CV-12814.**

July 31, 2006.

Alan Hahn, Standish, MI, pro se.

### ORDER DISMISSING PLAINTIFF'S CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e) AND 1915A.

ROBERT H. CLELAND, District Judge.
**\*1** The above-entitled cause of action is one of eight cases filed in federal court by Plaintiff Alan Thomas Hahn within a five-year period of time: (1) *Hahn v. Martin et al.,* No. 01-CV-74656 (E.D.Mich.) (*"Martin"* ); (2) *Hahn v. Mich. Dep't Corr.,* No. 01-CV73720 (E.D.Mich.) (*"MDC I"* ); (3) *Hahn v. Engler et al.,* No. 04-CV-0051 (W.D.Mich.) (*"Engler"* ); (4) *Hahn v. H. Foote Hosp. et al.,* No. 04-CV-73318 (E.D.Mich.) (*" Foote Hospital"* ); (5) *Hahn v. Mich. Dep't Corr. et al.,* No. 05-CV-70151 (E.D.Mich.) (*"MDC II"* ); (6) *Hahn v. Fullerton et al.,* No. 05-CV-70783 (E.D.Mich.) (*"Fullerton"* ); (7) *Hahn v.. Mich. Dep't Corr.,* No. 05-CV-70778 (E.D.Mich.) (*"MDC III"* ). The *Engler* matter was dismissed pursuant to 28 U.S.C. §§ 1915(e) and 1915A for failure to state a claim upon which relief could be granted. The remaining six cases have been consolidated and are pending in the Eastern District of Michigan before the Honorable Arthur J. Tarnow.[FN1]

> FN1. The claims are consolidated as No. 01-CV-74656, *Hahn v. Martin et al.*

Because Plaintiff originally named Judge Tarnow as a defendant in the current suit, it has not been consolidated with the remaining six claims pending before Judge Tarnow.

Plaintiff has been proceeding *pro se.* It is established that "the allegations of a complaint drafted by a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers." *Jourdan v. Jabe,* 951 F.2d 108, 110 (6th Cir.1991); *see Haines v. Kerner,* 404 U.S. 519, 520 (1972). In reviewing a *pro se* complaint, a court must construe the pleadings liberally and in favor of the *pro se* litigant. *Id.* At this preliminary stage of review, all factual assertions made by Plaintiff and inferences reasonably drawn there from will be accepted as true. *Id.* This review ensures that *pro se* pleadings are given fair and meaningful consideration. *Id.*

The current fee for a civil action is $350. (5/22/06 Order to Proceed In Forma Pauperis Without Payment of Initial Fee.) Normally, a prisoner plaintiff must pay a portion of this as an initial partial filing fee with the filing of his complaint. *McGore v. Wrigglesworth,* 114 F.3d 601, 607 (6th Cir.1997). However, Plaintiff has "no funds in his account" and "no assets." (5/22/06 Order.) On May 22, 2006, Plaintiff was granted leave to proceed *in forma pauperis* and was not required to pay any initial filing fee.[FN2] (*Id.*) Pursuant to that order, any pleadings served by Plaintiff shall be at the expense of the United States government. (*Id.*) Plaintiff's complaint exceeds one hundred pages and must be served upon sixteen defendants.[FN3] The court need not, however, determine specifically how these costs will be covered. The court will instead review the complaint pursuant to the power granted by 28 U.S.C. §§ 1915(e), 1915A, as well as the court's inherent authority to control its docket in the interest of wise judicial administration, to ensure judicial efficiency for all parties.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2160934 (E.D.Mich.)
**(Cite as: Slip Copy)**

FN2. Plaintiff was not entirely relieved from paying the $350.00 filing fee; instead, he was required to pay as funds become available through monthly payments of 20 percent of the preceding month's income credited to his prison trust fund account. (Order to Proceed In Forma Pauperis Without Payment of Initial Fee at 1-2.) Therefore, Plaintiff remains responsible for the filing fee, despite this order dismissing his complaint. (*Id.* at 2.) *See McGore v. Wrigglesworth,* 114 F.3d 601, 607 (6th Cir.1997).

FN3. The suit originally named twenty-seven defendants. However, eleven were dismissed by the Western District of Michigan pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). (6/6/06 Order Transferring Case.) The case was then transferred to the Eastern District of Michigan. (*Id.*)

"A complaint that merely repeats pending or previously litigated claims may be considered abusive and a court may look to its own records to determine whether a pleading repeats prior claims." *Ballentine v. Crawford,* 563 F.Supp. 627, 629 (N.D.Ind.1983) (citing *Crisafi v. Holland,* 655 F.2d 1305, 1308 (D.C.Cir.1981); *see also Van Meter v. Morgan,* 518 F.2d 366, 368 (8th Cir.1975) (citing *Dave v. Bounds,* 509 F.2d 66, 68-69 (4th Cir.1975); *Duhart v. Carlson,* 469 F.2d 471, 473 (10th Cir.1972)). As such, the court will consider all seven of the previous complaints filed by Plaintiff. The court finds that, pursuant to principles of judicial economy, 28 U.S.C. § 1915(e), and Section 1915A(b), this complaint is repetitive, malicious and frivolous, and duplicative, and will therefore dismiss Plaintiff's instant case.

## I. BACKGROUND

**\*2** On August 23, 1996, Plaintiff was sentenced to the custody of the Michigan Department of Corrections for a term of 8 to15 years following his conviction in the Clinton County Circuit Court for second-degree criminal sexual conduct. (Compl. at

¶ 40; *Engler* Opinion at 2.) Plaintiff is a paraplegic, and is paralyzed fully from the armpits down; he only has use of his arms, neck, upper chest and upper back. (Compl. at ¶ 47.) Since March 9, 2004, Plaintiff has been confined at Standish Maximum Facility ("SMF") in a general population unit. (*Id.* at ¶ 67.) Due to his condition, Plaintiff has allegedly sustained injuries from falls, dating as early as November 17, 2000. (*Id.* at ¶ 73.)

In his *pro se* complaint, Plaintiff sues the following twenty-seven defendants: Judge Arthur J. Tarnow; the State of Michigan; the Michigan Department of Corrections ("MDOC"); Corrections Medical Services ("CMS"); Patricia Caruso, MDOC Director; Dennis Straub, MDOC Deputy Director; Dr. William Bogerdine, former Region 1 Health Administrator; Dr. (unknown) Pandya, *Pro Tem* Region 1 Health Administrator; Craig Hutchinson, CMS liaison to the MDOC; James MacMeekin, Region 1 Prison Administrator; Terry Malloy, Region 1 Nurse/Health Care Manager; Dr. (unknown) Pramstaller, MDOC Chief Health Care Administrator; Thomas Birkett, SMF Warden; David Sivik, SMF Assistant Resident Unit Manager; Raymond Bowerson, SMF Resident Unit Manager; Joseph Burtch, SMF doctor; Karen Peters, SMF Health Unit Manager; Heather Bailey, SMF Nursing Supervisor; and current and former SMF Deputy Wardens B. Meagher, O.T. Winn, T. Ball, (unknown) Krajnik, S.M. King, C. Walker, (unknown) Ricumdtrict, J. Sciotti, and M. Curley.[FN4] Each is named "in his/her job capacity." (*Id.* at ¶ 51).

FN4. Pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), the following eleven Defendants were dismissed: Judge Arthur J. Tarnow; State of Michigan; MDOC; Patricia Caruso; Denis Straub; William Bogerdine; (unknown) Pandya; Craig Hutchinson; (unknown) Pramstaller; James MacMeekin; and Terry Maloy. (No. 5:06-CV-74 Order of Transfer (W.D.Mich.).) Each of these Defendants either had immunity, or Plaintiff failed to state a claim against the defendant.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2160934 (E.D.Mich.)
**(Cite as: Slip Copy)**

Plaintiff's claims concern the conditions of his confinement at SMF. (*Id.* at ¶ 35.) Plaintiff is provided a bed that lacks a trapeze, proper rails, functioning height adjustability and sufficient width. (*Id.* at ¶ 69.) This makes transfer out of his bed, given his medical condition, extremely difficult and painful. (*Id.*) Plaintiff is not assigned a prisoner aide to assist with transfers between his bed and wheelchair. (*Id.* at ¶ 70.) Plaintiff is not provided with a four-by-six-foot rubber-backed floor mat to help prevent his wheelchair from slipping during transfers between his bed and wheelchair. (*Id.* at ¶ 71.) As a result, Plaintiff sustained numerous falls and injuries. (*Id.* at ¶ 73(A).)

Plaintiff requires medication three times daily to treat urinary tract infections, a serious threat to his health given spinal cord injury and his paralyzing disability. (*Id.* at ¶ 72; *Id.* at 34-35.) Defendants will not deliver antibiotics directly to Plaintiff's bed, requiring him instead to leave his cell to retrieve his medication. (*Id.* at ¶¶ 72, 74-76.) Plaintiff has requested that his medication be self-dispensed, but has been refused. (*Id.* at ¶ 77.) Therefore, to receive his medication, Plaintiff must transfer himself from his bed to his wheelchair three times a day. (*Id.* at ¶¶ 72, 74-76.) Plaintiff contends that making the transfer to receive his medication without the proper bed or floor mat is dangerous and results in "excruciating pain" to him, as well as fear and exhaustion. (*Id.* at 25-26.) However, foregoing the medication to avoid the painful transfer could result in serious health risks to Plaintiff. (*Id.* at 35-36.)

**\*3** Plaintiff claims that Defendants' conduct violates his Eighth Amendment right against cruel and unusual punishment, and his rights under the Americans with Disabilities Act ("ADA"). *See* 42 U.S.C. §§ 12101 *et seq.* Plaintiff seeks injunctive relief requiring SMF to bring its facilities in to compliance with the ADA. Plaintiff also seeks monetary damages in the amount of $200,000 from each Defendant for each claim, for a total of approximately $22,000,000, and further requests criminal prosecution of each Defendant.

As previously mentioned, Plaintiff has six suits pending in this district. The court has reviewed these suits and finds that they similarly concern the conditions of Plaintiff's confinement by the MDOC and the improper facilities at SMF.

## II. DISCUSSION

### A. DISMISSAL PURSUANT TO 28 U.S.C. §§ 1915(e) AND 1915A

Section 1915(a) of Title 28, United State Code, authorizes courts to allow indigent litigants to proceed *in forma pauperis* without paying administrative costs of proceeding with a civil or criminal action. 28 U.S.C. § 1915(a). However, the statute protects against abuses of this privilege by allowing a district court to dismiss a case "if at any time the court determines that ... the action or appeal ... is frivolous or malicious." 28 U.S.C. § 1915(e)(2). The statute goes on to require courts, before docketing (or as soon as practicable), to " screen" the complaint. 28 U.S.C. § 1915A(a). Upon this screening, "the court shall ... dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b).

Courts have held that an *in forma pauperis* complaint that merely "repeats pending or previously litigated claims may be considered abusive and dismissed under the authority of [ section] 1915[e]" as "malicious." *Bailey v. Johnson,* 846 F.2d 1019, 1021 (5th Cir.1988) (citing *Ballentine,* 563 F.Supp. at 629); *see also Cato v. United States,* 70 F.3d 1103, 1105 n2 (9th Cir.1995). The Supreme Court explained, "[a] litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (citations omitted).

In determining whether a dismissal is warranted, there is no specific test to follow; instead, a district court is "vested with especially broad discretion." *Green v. McKaskle,* 788 F.2d 1116, 1117 (5th

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2160934 (E.D.Mich.)
**(Cite as: Slip Copy)**

Cir.1986). Courts generally look to the identity of the parties, legal claims, factual allegations including temporal circumstances, and the relief sought to determine if the complaint is repetitive or malicious. *See, e.g., Van Meter,* 518 F.2d at 366 (8th Cir.1975); *Bailey,* 846 F.2d at 1019 (5th Cir.1988). The court has considered each aspect of Plaintiff's litigation and determines that his complaint is repetitive.

**\*4** The identities of the parties in the current complaint are substantially similar to those in other pending actions. Of the remaining sixteen Defendants in this case, eleven are named in at least one suit (and some in as many as five suits) filed by Plaintiff and pending in this district. As to these eleven Defendants, the complaints are identical.

Only five parties are unique to this suit. However, while courts require that multiple complaints do not "significantly differ," there is no requirement that the parties be exactly identical; instead, courts focus on the substance of the complaint. *See Vinson v. Michigan Parole Board,* No. 05-72401, slip op. at 1 (E.D.Mich. Mar. 2, 2006) (quotation omitted). Similarly, although this complaint names different individuals as defendants, they are in essence performing the same role and acting in identical capacities.[FN5]

> FN5. Other courts have held that, for the purpose of determining repetitive suits, different parties can be substantially similar. For example, in *Bailey v. Johnson,* 846 F.2d 1019, 1021 (5th Cir .1988), the Fifth Circuit held that, despite the fact that different defendants were named, the " complaint repeat[ed] the same factual allegations" asserted in the earlier case and was therefore correctly dismissed. *See also Simms v. Santa Rita Jail Med. Staff,* 2004 U.S. Dist. LEXIS 2314, \*1-2 (N.D.Cal., Feb. 13, 2004) (holding a complaint repetitive and therefore abusive under 28 U.S.C. § 1915A, despite the fact that plaintiff added additional defendants in the later-filed action).

Each party is sued "in his/her job capacity." (Compl. at ¶ 51 .) As a result, the individual identities of each party does not matter so much as the position they held. For example, Defendant Heather Bailey is presently sued in her capacity as " Nursing Supervisor." (*Id.* at ¶ 16.) In five of the pending suits, however, Plaintiff named Karen Wright, who is not party to this suit, in *her* capacity as "Nursing Supervisor" and "Nurse Manager." ( *See, e.g., Martin* Compl. at 1; *Fullerton* Compl. at ¶ 27.) Though the individual names have changed, the professional position and capacity in which each is sued is identical. The same is true for Defendants Sivik (Assistant Resident Unit Manager), Krajnik (Deputy Warden Successor), Ricumstrict (Deputy Warden Successor) and Sciotti (Deputy Warden Successor). Though they are not personally a party to any other of the pending suits, another individual holding the identical job title is also a defendant. The complaint has, in essence, named Defendants identical to those in pending suits. Regarding the identity of the parties, this complaint therefore is substantially similar to those already pending.

Plaintiff's legal theories are also duplicative. Plaintiff's complaint broadly alleges that his "cause of action arises out of each Defendant's equal protection, Due Process, liberty interest, Atypical and significant hardship, cruel and unusual punishment violations; their tortuous, negligent, deliberately indifferent, grossly negligent, conspiratiorial, retaliatory, and/or otherwise wrongful conduct." (Compl. at ¶ 35.) This allegation is reproduced verbatim in *MDC II, Fullerton,* and *MDC III.* (*MDC II* Compl. at ¶ 2; *Fullerton* Compl. at ¶ 2; *MDC III* Compl. at ¶ 2.) In the current complaint, Plaintiff alleges violations of his rights "under the U.S. Constitution's 1 st, 4th, 5th, 8th, and 14th Amendments, [the] Michigan Constitution, Art. I, Sections 1, 2, 5, 11, 16 and 17, to be protected from denial of his necessary medical/disability needs." (Compl. at ¶ 53.) Again, the court finds this allegation repeated in *MDC II, Fullerton,* and *MDC III.* (*MDC II* Compl. at ¶ 37; *Fullerton* Compl. at ¶ 30; *MDC III* Compl. at ¶ 30.) Plaintiff also alleges violations of his rights under "the ADA, FRA, CRIPA, 18 U.S.C. Sections 241, 242, and 371." (Compl. at ¶ 53.) This allegation is also not new, as Plaintiff stated the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2160934 (E.D.Mich.)
**(Cite as: Slip Copy)**

same legal grounds in *Foote Hospital. (Foote Hospital* Compl. at 32, ¶ 7.) The court has difficulty imagining how Plaintiff could be more repetitive.

**\*5** This Court also compares Plaintiff's factual allegations, paying specific attention to temporal circumstances. Similar to the doctrine of *res judicata,* a "plaintiff has no continuing obligation to file amendments to the complaint to stay abreast of subsequent events; plaintiff may simply bring a later suit on those later-arising claims." *Curtis v. Citibank, N.A.,* 226 F.3d 133, 139 (2d Cir.2000). If a complaint alleges facts that occurred after the filing of other pending complaints, then the action is not duplicative and shall not be dismissed. Such a situation is not the case here.

Plaintiff's complaint presently before the court dates from the beginning of his custody under the Michigan Department of Corrections on August 3, 1996. (Compl. at ¶ 40.) Of the six pending suits before Judge Tarnow, all of them were filed well after this date, with the first in 2001. (*Martin* Compl. at 1.) Plaintiff places emphasis on his transfer to SMF compound on March 9, 2004. (Compl. at ¶ 66.) In reading this *pro se* complaint liberally, this Court will narrow its scope of review to these dates.

Three of the pending suits are temporally identical to the narrower dates in the current complaint: *MDC II, Fullerton,* and *MDC III.* (*MDC II* Compl. at ¶ 7; *Fullerton* Compl. at ¶ 7; *MDC III* Compl. at ¶ 7.) *Foote Hospital,* also pending, is temporally similar, as it alleges incidents before, on and well after June 8, 2004. (*Foote Hospital* Compl. at ¶ 12.) In regard to temporal circumstances, Plaintiff's present complaint is repetitive of those already consolidated.

In reviewing the factual allegations of the complaint, the court considers Plaintiff's alleged injuries, the location of the alleged bad acts, and the specific circumstances of those acts. In limiting its review to the four pending cases that are temporally similar to Plaintiff's instant case, this Court finds that the factual allegations are substantially similar. Plaintiff alleges the following injuries:

loss of muscle mass and strength; ensuing falls and injuries; denials of prescribed medicines and medical care; lingering and severe pain in muscular and skeletal structures; bruises; urinary tract infections; mental and emotional pain and sufferings; continuous muscular and skeletal injuries ; contractures; abnormal and injurious to paraplegic weight gain of paralyzed body portions; atrophy in paralyzed portions; and the totality of these to him.

(Compl. at ¶ 47.) Each of these injuries is alleged in at least one (if not all) of Plaintiff's other temporally similar complaints. (*MDC II* Compl. at ¶ 14; *Fullerton* Compl. at ¶ 14; *MDC III* Compl. at ¶ 14; *Foote Hospital* Compl. at 53-55.) With regard to the injuries alleged, this complaint is substantially similar to those pending. Plaintiff's current complaint focuses upon Plaintiff's incarceration at SMF. (Compl. at ¶ 35.) All four of the temporally similar complaints do the same. ( *MDC II* Compl. at ¶ 2; *Fullerton* Compl. at ¶ 2; *MDC III* Compl. at ¶ 2; *Foote Hospital* Compl. at ¶ 4.) With regards to the location of the alleged incidents and injuries, this complaint is identical.

**\*6** The complaint before the court focuses specifically on Plaintiff's alleged denial of medications, prescribed medical care, and safe bed and floor accommodations. (Compl. at ¶ 49.) These allegations, though not the centerpiece of any pending suit, are not new or unique to litigation. Plaintiff specifically avers that he was denied medications and medical care in *Foote Hospital* and *MDC II.* (*Foote Hospital* Compl. at 22, ¶ 71 D; *MDC II* Compl. at ¶ 16.) Plaintiff specifically complains about the standard and unsafe nature of his bed in *MDC II.* (*MDC II* Compl. at ¶ 67.) Plaintiff even states in the present complaint that the rubber floor mat he seeks is already being litigated in *Martin.* (Compl. at ¶ 71 D; *Martin* Compl. at 1.) The court notes that the rubber mat is also complained of in *MDC III.* (*MDC III* Notice Pleading Part 3 at 4 (citing Hahn Aff. ¶ 5).) Because all of Plaintiff's factual allegations in this case already appear in pending litigation, the complaints are substantially similar factually.

In addition, the court considers the relief sought by Plaintiff and compares it to pending cases. Plaintiff

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                         Page 6

**Slip Copy, 2006 WL 2160934 (E.D.Mich.)**
**(Cite as: Slip Copy)**

seeks monetary relief, as in his other cases. His complaint in this case seeks monetary damages upwards of $22,000,000. (Compl. at 31.) However, as described above, his claims are based upon the same factual allegations and legal assertions already pending before the court, so assuming the viability of those claims, damages would be repetitive and inequitable to Defendants. Furthermore, the amount sought in this complaint pales in comparison to the more than $165,530,000 sought in pending litigation. Plaintiff's claim for monetary damages in this complaint is repetitive and abusive.

Plaintiff also seeks injunctive relief in the form of a proper bed, a rubber floor mat, an aide to assist with transfers to and from his bed, and proper distribution of medication. (*Id.* at 29-30.) In essence, Plaintiff is demanding that his incarceration meet the standard allegedly required by the Constitution and relevant statutes given his unique disability. (*Id.* at 31.) The court recognizes that Plaintiff has not sought this exact relief in other pending litigation. However, Plaintiff has sought injunctive relief for "adequate facilities to sleep" ( *MDC II* Compl. at 39), for medical "treatment without delay" (*Foote Hospital* Compl. at 42), and for "transfer ... to a proper facility" in compliance with his rights under the ADA, FRA, CRIPA and the Eighth Amendment (*Id.* at 42; *see also Fullerton* Compl. at 36; *MDC III* Compl. at 19; *MDC II* Compl. at 23). It is clear that at the heart of all pending litigation, including this complaint, is Plaintiff's desire to be housed in an appropriate facility, given his disability. *See Vinson,* No. 05-72401, slip. op. at 1. As such, the relief sought in this matter is, in essence, substantially similar to the relief in the other cases.

*7 Given the substantial similarities among the parties, legal claims, factual allegations, temporal circumstances and relief sought, the complaint is repetitive.[FN6] Pursuant to the authority granted by 28 U.S.C. §§ 1915(e) and 1915A, the court will dismiss the complaint on the grounds that it is repetitive, malicious and frivolous.[FN7] *See Bailey,* 846 F.2d at 1021 (citing *Ballentine,* 563 F.Supp. at 629); *see also Cato,* 70 F.3d at 1105, n2.

FN6. Plaintiff may seek leave of the court, pursuant to Federal Rule of Civil Procedure 15(a), to amend his complaints before Judge Tarnow if he feels that a specific allegation is missing. Amendments are "freely given when justice so requires." Fed.R.Civ.P. 15(a). Courts "assume a ' liberal policy of permitting amendments.' " *Turner v. City of Taylor,* 412 F.3d 629, 646 (6th Cir.2005) (citing *Ellison v. Ford Motor Co.,* 847 F.2d 297, 300 (6th Cir.1988)).

FN7. This dismissal pursuant to § 1915(e) is not a dismissal on the merits, but rather an exercise of the court's discretion under the *in forma pauperis* statute. *See Denton v. Hernandez,* 504 U.S. 25, 34 (1992). This dismissal on these grounds does not prejudice the filing of a paid complaint making the same allegations. *See id.* However, as explained below, the complaint is also dismissed by the court in the exercise of wise judicial administration as duplicative. This dismissal is a decision on the merits, and therefore Plaintiff is barred on these grounds from refiling, regardless of payment. (*Id.*) Furthermore, pursuant to the "three strikes rule," a prisoner may not file any claims "if, on three or more occasions, while incarcerated or detained in any facility, [the prisoner has] brought an action or appeal in a court of the United States that was dismissed on the grounds that it [was] frivolous, malicious, or fail[ed] to state a claim ... unless the prisoner is under imminent danger of serious physical injury. " 28 U.S.C. § 1915(g). Because the *Engler* matter was dismissed for failure to state a claim and this matter will be dismissed as frivolous and malicious, Plaintiff already has two strikes. The court cautions Plaintiff to be aware of the consequences of a third. Plaintiff could lose his ability to bring claims while detained, unless he can prove that he is under *imminent* danger of *serious* physical injury. *Id.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 7

Slip Copy, 2006 WL 2160934 (E.D.Mich.)
**(Cite as: Slip Copy)**

## II. DISMISSAL OF DUPLICATIVE CLAIMS IN THE INTEREST OF WISE JUDICIAL ADMINISTRATION

Independent of the statutory grounds allowing dismissal of Plaintiff's *in forma pauperis* claims as frivolous and malicious, the court will, pursuant to its inherent powers, dismiss this action as duplicative. A federal district court has "the inherent power to administer its docket in a manner that conserves scarce judicial resources and promotes the efficient and comprehensive disposition of cases." *Ridge Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.,* 572 F.Supp. 1210, 1212-13 (N.D.Ill.1983) (citing *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976)). "Whereas only exceptional circumstances justify a federal court's refusal to exercise its jurisdiction in state court, a federal suit may be dismissed for reasons of wise judicial administration ... whenever it is duplicative of a parallel action already pending in another federal court." *Ridge Gold,* 572 F.Supp. at 1213 (citing *Colo. River Water,* 424 U.S. at 817-18); *see also Vinson,* No. 05-72401, slip op. at 1. The Supreme Court has recognized that "the general principle is to avoid duplicative litigation." *Colo. River Water,* 424 U.S. at 817 (citing *McClellan v. Carland,* 217 U.S. 268, 282 (1910)) (citation omitted); *see also Curtis,* 226 F.3d at 138 (stating that, "as part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit").

While some courts will order a litigant to show cause, "simple dismissal of the second suit is [a] common disposition because plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Curtis,* 226 F.3d at 138-39. This policy against allowing duplicative litigation is related to *res judicata,* as the two doctrines serve many of the same purposes. Both allow the dismissal of claims " to foster judicial economy and the 'comprehensive disposition of litigation,' " and to 'protect parties from 'the vexation of concurrent litigation over the same subject matter.' " *Id.* at 138 (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,* 342 U.S. 180, 183 (1952), and *Adams v. Jacobs,* 950 F.2d

89, 93 (2d Cir.1991)). As another court explained:
The irrationality of tolerating duplicative litigation in the federal system is all the more pronounced where, as here, two federal judges sitting on the same district court are ... devoting scarce judicial resources to the adjudication of the same charges.

**\*8** *Ridge Gold,* 572 F.Supp. at 1213. In like manner, it would be irrational to tolerate Plaintiff's duplicative litigation.

There is no rigid test for a court to follow in determining if a suit is duplicative. *Colo. River Water,* 424 U.S. at 817. Instead, a federal court is accorded a great deal of latitude and discretion when undertaking considerations of this nature. *See Kerotest Mfg.,* 342 U.S. at 183-84; *see also Curtis,* 226 F.3d at 138 ("[t]he complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion").[FN8] Generally, "[a] suit is duplicative, and thus subject to dismissal, if the claims, parties, and available relief do not significantly differ between the two actions." [FN9] *Harrington v. Stegall,* No. 02-70573, slip op. at 2 (E.D.Mich. Feb. 2, 2002) (citing *Barapind v. Reno,* 72 F.Supp.2d 1132, 1145 (E.D.Cal.1999)).

> FN8. "[T]he Court of Appeals for the Seventh Circuit emphasized that the decision whether to defer to a concurrent proceeding remains, in essence, a balancing test. Thus, even where ... avoiding redundant litigation is highly desirable, any countervailing 'special factors' counseling the exercise of the court's jurisdiction also must be considered. " *Ridge Gold,* 572 F.Supp. at 1213 (citing *Calvert Fire Ins. Co. v. Am. Mut. Reinsurance Co.,* 600 F.2d 1228, 1233 (7th Cir.1979)). Such countervailing considerations, however, are of no moment in this case.

> FN9. Courts do not require the claims to be identical; instead, courts only look to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2160934 (E.D.Mich.)
**(Cite as: Slip Copy)**

see if there are any "significant differences. " *Serlin v. Arthur Anderson & Co.,* 3 F.3d 221, 224 (7th Cir.1993).

As previously discussed, the claims, parties and available relief do not significantly differ between the present complaint and Plaintiff's other pending litigation. In addition, the factual allegations, temporal circumstances and alleged injuries are substantially similar. Therefore, pursuant to the court's inherent authority to manage its docket in the interest of wise judicial administration, the court will dismiss the complaint as duplicative.[FN10]

> FN10. It is a recognized principle of law that a *pro se* litigant should be granted " leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Cato v. United States,* 70 F.3d 1103, 1105 n2 (9th Cir.1995). After reviewing Plaintiff's voluminous complaints and copious briefs in support, the court is satisfied that his current complaint cannot be cured by amendment. Furthermore, it was made clear to the Plaintiff by the Western District Court of Michigan, in its order granting Plaintiff in forma pauperis status, that, "the Court shall review the case pursuant to 28 U.S.C. §§ 1915(e), 1915A and ... will determine whether dismissal or service of process is appropriate." (5/22/06 Order to Proceed In Forma Pauperis Without Payment of Initial Fee.) Plaintiff was thus placed on notice regarding the possible deficiencies of his complaint, and the standard under which it would be reviewed.

### III. CONCLUSION

Plaintiff's complaint is substantially similar to litigation already pending in this district before the Honorable Arthur J. Tarnow. The instant complaint is therefore frivolous and duplicative. IT IS ORDERED that the complaint is DISMISSED.

E.D.Mich.,2006.
Hahn v. Tarnow
Slip Copy, 2006 WL 2160934 (E.D.Mich.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.