**EXHIBIT 6**

LEXSEE 2005 U.S. DIST. LEXIS 19778

Caution
As of: Jul 13, 2007

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Plaintiff, -v- LIBERTY MUTUAL FIRE INSURANCE COMPANY, Defendant.**

**05 Civ. 5262 (DLC)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2005 U.S. Dist. LEXIS 19778*

**September 6, 2005, Decided
September 7, 2005, Filed**

**SUBSEQUENT HISTORY:** Summary judgment granted by *Nat'l Union Fire Ins. Co. v. Liberty Mut. Fire Ins. Co., 2006 U.S. Dist. LEXIS 41480 (S.D.N.Y., June 22, 2006)*

**DISPOSITION:** [*1] Liberty Mutual's motion to dismiss denied.

**COUNSEL:** For the Plaintiff: Erik W. Drewniak, Nixon Peabody LLP, New York, New York; Mitchell A. Stearn, Kevin M. Grace, Kathrin V. Smith, Nixon Peabody LLP, Washington, D.C.

For the Defendant: Robert L. Hoegle, Carter Ledyard & Milburn LLP, New York, New York.

**JUDGES:** DENISE COTE, United States District Judge.

**OPINION BY:** DENISE COTE

**OPINION**

*MEMORANDUM OPINION AND ORDER*

DENISE COTE, District Judge:

In a dispute over insurance coverage, Liberty Mutual Fire Insurance Company ("Liberty Mutual") brought an action on April 11, 2005 against National Union Fire Insurance Company of Pittsburgh, PA ("National Union") in the United States District Court for the District of Kansas seeking reimbursement for an insurance payment. On June 2, 2005, National Union brought this action against Liberty Mutual seeking a declaratory judgment that it does not owe reimbursement to Liberty Mutual. Liberty Mutual has moved to dismiss this action based on the "first-filed" rule, and its alternate claim that National Union's action is improper under the Federal Declaratory Judgment Act, *28 U.S.C. § 2201*. Because the decision on the first-filed rule [*2] is for the Kansas court to decide, Liberty Mutual's motion to dismiss is denied. This action is stayed for thirty days to allow Liberty Mutual to bring a motion in the Kansas action pursuant to the first-filed rule. In the event that motion is brought, this action is stayed until the motion is resolved.

"It is a well-settled principle in this Circuit that where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." *Amos v. Reno, 2000 U.S. Dist. LEXIS 18318, No. 00 Civ. 6151 (DLC), 2000 WL 1871710, at *2 (S.D.N.Y. Dec. 21, 2000)* (citation omitted). "It is the court in which the first-filed action was brought that should decide whether one of the exceptions applies." *Id. See also Schnabel v. Ramsey Quantitative Sys., Inc., 322 F. Supp. 2d 505, 510-11 (S.D.N.Y. 2004)*. "Under this Circuit's first-filed rule, a district court may enjoin the suitor in a more recently commenced case from taking any further action in the prosecution of that case if the claims presented in the second action should have been interposed as compulsory counterclaims to the claims in the suit [*3] pending before it." *Computer Assoc. Int'l, Inc. v. Altai, Inc., 893 F.2d 26, 28-29 (2d Cir. 1990)*. "Where an action is brought in one federal district court and a later action embracing the

2005 U.S. Dist. LEXIS 19778, *

same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action." *Id. at 29* (citation omitted). *See also City of New York v. Exxon Corp., 932 F.2d 1020, 1025 (2d Cir. 1991).*

Because the action filed in the District of Kansas was filed first, it is up to that court to decide whether any exceptions to the first-filed rule apply. Therefore, Liberty Mutual's motion to dismiss is denied.

**CONCLUSION**

Liberty Mutual's motion to dismiss is denied. This action is stayed for thirty days. The parties shall provide a status report on October 6, 2005.

SO ORDERED:

Dated: New York, New York

September 6, 2005

DENISE COTE

United States District Judge

**EXHIBIT 7**

Westlaw.

Not Reported in F.Supp.2d                                                                                        Page 1

Not Reported in F.Supp.2d, 2000 WL 973685 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

C
Peak v. Green Tree Financial Servicing Corp.
N.D.Cal.,2000.
Only the Westlaw citation is currently available.
United States District Court, N.D. California.
James N. PEAK, on behalf of himself and all others
similarly situated Plaintiff,
v.
GREEN TREE FINANCIAL SERVICING
CORPORATION, and Conseco, Inc., Defendants.
No. C 00-0953 SC.

July 7, 2000.

*ORDER RE DEFENDANTS' MOTION TO
DISMISS OR STAY*
CONTI, J.

## I. INTRODUCTION

*1 In this proposed class action, Plaintiff James N.
Peak, on behalf of himself and all others similarly
situated, sued Defendants Green Tree Financial
Servicing Corporation, and their parent Conseco,
Inc. (collectively "Defendants") for alleged
violations of the United States Bankruptcy Code, 11
U.S.C. § 101 *et. seq.,* and the Fair Debt Collection
Practices Act, 15 U.S.C. § 1692 *et. seq.* Defendants
now move this Court for an order dismissing
Plaintiff's claims, or for the issuance of a stay of
those claims. This motion is made on the ground
that there is an earlier-filed action pending in the
Eastern District of California titled *Lavern Bigelow
v. Green Tree Financial Servicing Corporation and
Conseco, Inc.,* No. F-99-CV-06644 REC ("*Bigelow
*") which entails substantially similar parties and
claims. For the reasons discussed below, the Court
grants the Defendants' motion to dismiss Plaintiff's
complaint without prejudice.

## II. BACKGROUND

On August 27, 1999 in the Eastern District of
California, Lavern Bigelow filed a complaint on
behalf of herself and all others similarly
situated containing ten claims for relief against Green
Tree Financial Servicing Corporation and Conseco, Inc.
That complaint, assigned the case number
F-99-CV-06644 REC, contained the following
claims: violation of the reaffirmation provisions of
the Bankruptcy Code, violation of the automatic
stay provision of the Bankruptcy Code, violation of
the Bankruptcy Code's discharge provision,
contempt of court, violation of the Racketeer
Influenced and Corrupt Organizations Act ("RICO"
), violation of the Fair Debt Collection Practices
Act, declaratory relief, injunctive relief, accounting,
and attorney's fees. Ms. Bigelow's complaint
defined the class of persons whom she proposed to
represent, and declared herself to be an adequate
representative of that class.

On March 17, 2000, Plaintiff filed his complaint, on
behalf of himself and all persons similarly situated
containing eight claims for relief against
Defendants. Plaintiff's complaint contained the
following claims: violation of the reaffirmation
provisions of the Bankruptcy Code, violation of the
automatic stay provision of the Bankruptcy Code,
violation of the Bankruptcy Code's discharge
provision, violation of the Fair Debt Collection
Practices Act, declaratory relief, injunctive relief,
accounting, and attorney's fees. Plaintiff also
declared himself to be an adequate class
representative. Plaintiff's allegations defining the
proposed class are identical to Ms. Bigelow's.

## III. LEGAL STANDARD

Under the generally recognized doctrine of federal
comity, a district court may decline jurisdiction
over an issue that is properly before another district
court. *Kerotest Mfg. Co. v. C-O-Two Fire Equip.
Co.,* 342 U.S. 180, 185-86 (1952). The purpose of
the comity principle is of paramount importance.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2000 WL 973685 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

*Church of Scientology of California v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir.1979). The doctrine is designed to promote judicial efficiency by avoiding any unnecessary burden on the federal judiciary and by avoiding duplicative or conflicting judgments. *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir.1991); *Church of Scientology*, 611 F.2d at 750.

**\*2** In the Ninth Circuit, the "first-to-file" rule embodies the principles of federal comity. *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir.1982). Under this rule a district court may transfer, stay, or dismiss an action when a similar complaint has been filed in another district court. *Alltrade*, 946 F.2d at 623. The rule is not to be mechanically applied, but rather "it is to be applied with a view to the dictates of sound judicial administration," and "should not be disregarded lightly." *Pacesetter Systems*, 678 F.2d at 95; *Church of Scientology*, 611 F.2d at 750.

IV. *ANALYSIS*

In deciding whether to apply the first to file rule, a court must look at three factors: the chronology of the two actions, the similarity of the parties, and the similarity of the issues. *Alltrade*, 946 F.2d at 625-26; *Pacesetter Systems*, 678 F.2d 95; *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D.Cal.1994).

There is no dispute that *Bigelow* predates the present action. *Bigelow* was filed in the Eastern District on August 27, 1999. The present action was filed in this Court on March 17, 2000.

Additionally, there can be no question that the issues presented in these cases are similar. The first-to-file rule only requires that the two cases contain similar issues, not identical issues. *Ward*, 158 F.R.D. at 648. The proposed class in both cases is identically defined. The alleged offending behavior, Defendants' alleged practice of collecting and/or attempting to collect discharged debt as a continuing personal liability of such individuals, is the same in both cases. Furthermore, the claims for relief are nearly identical in the two cases.

The only remaining consideration in the first to file analysis concerns the similarity of the parties in the Plaintiff's complaint and *Bigelow*. Clearly, the named plaintiff in each action is different. Defendants argue that this fact should not prevent the Court from applying the first to file rule because each complaint seeks to certify a class action, because the class is identically defined in each complaint, and because each plaintiff asserts that they adequately represent the interests of the entire class. Defendants argue that the key party in interest in each action is the identical proposed class.

Plaintiff does not dispute that this action is similar to *Bigelow*. Instead, Plaintiff seeks a ruling from the Court that he is a proper member of the proposed class in *Bigelow*, and argues that the Court should transfer this matter to the Eastern District. As the issue of whether Plaintiff is a member of the proposed class in *Bigelow* is not properly before it, the Court declines to issue such a ruling.

The underlying objectives of the first to file rule will be achieved by its application in this case. Though the named plaintiffs are different, the issues presented in this case sufficiently duplicate those presented to the Eastern District in *Bigelow* to justify dismissing this case. Allowing this case to proceed would both impede judicial efficiency and run a significant risk of conflicting judgments.

**\*3** A Court can dispense with the first to file rule for reasons of equity. *Alltrade*, 381 F.2d at 628. Typical reasons that would justify such a departure include bad faith, anticipatory suit, and forum shopping. *Id.* Plaintiff has presented no such reason for the Court to depart from the first to file rule.

V. *CONCLUSION*

Based on the foregoing analysis, it is HEREBY ORDERED that Defendants' Motion to Dismiss is GRANTED without prejudice.

IT IS SO ORDERED.

N.D.Cal.,2000.
Peak v. Green Tree Financial Servicing Corp.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                   Page 3

Not Reported in F.Supp.2d, 2000 WL 973685 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**


Not Reported in F.Supp.2d, 2000 WL 973685
(N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 8**

LEXSEE 2003 U.S. DIST. LEXIS 7871



Positive
As of: Jul 13, 2007

**JOHN WALKER and KEVIN A. KRIEG, individually and on behalf of all others
similarly situated, Plaintiffs, v. PROGRESSIVE CASUALTY INSURANCE
COMPANY, a foreign insurance company, Defendant.**

**NO. C03-656R**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
WASHINGTON, SEATTLE DIVISION**

*2003 U.S. Dist. LEXIS 7871; 8 Wage & Hour Cas. 2d (BNA) 1273*

**May 9, 2003, Decided
May 9, 2003, Filed, Entered**

**DISPOSITION:**    The court granted the defendant's
motion to dismiss.

**COUNSEL:**    [*1]   For JOHN WALKER, KEVIN A
KRIEG, plaintiffs:  Bradley Jerome  Moore,
STRITMATTER KESSLER WHELAN WITHEY
CALUCCIO, SEATTLE, WA.

For  PROGRESSIVE  CASUALTY  INSURANCE
COMPANY, defendant: Daniel L Thieme, LITTLER
MENDELSON PC, SEATTLE, WA.

**JUDGES:**    BARBARA  JACOBS  ROTHSTEIN,
UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Barbara Jacobs Rothstein

**OPINION**

    ORDER GRANTING PROGRESSIVE'S MOTION
TO DISMISS IN FAVOR OF PRIOR ACTION

    THIS MATTER comes before the court on defendant
Progressive Casualty Insurance Company's ("Progres-
sive") motion to dismiss in favor of a prior action. The
prior action to which Progressive refers is a class action
for overtime pay now pending against Progressive in the
Eastern District of Louisiana. Plaintiffs, a putative class of
former Progressive employees who allege they are owed
overtime wages, oppose the motion, arguing that the par-
ties and legal claims in the two actions are dissimilar and

thus the first-to-file rule is inapplicable. Having reviewed
the documents filed in support of and in opposition to this
motion, the court finds and rules as follows:

I. BACKGROUND

    This is one of two cases seeking relief against Pro-
gressive for its alleged failure to pay overtime to its in-
surance [*2] adjusters. On August 31, 2001, a class action
was initiated against Progressive in the Eastern District of
Louisiana, alleging that Progressive owed some of its
insurance adjusters unpaid overtime wages under the Fair
Labor Standards Act ("FLSA"), *29 U.S.C. §§ 201 et. seq.*
Camp v. The Progressive Corp. et al., Case No.
01-CV-2680 (E.D. La) (hereinafter "Camp"). In that ac-
tion, the plaintiffs allege that defendants misclassified
their claims adjusters as "administrative employees," who
are otherwise exempt from the provisions of the FLSA.
The plaintiffs in this case, John Walker and Kevin Krieg,
have joined that class action along with several other
insurance adjusters from Washington.

    In spite of their presence in the Camp action, plain-
tiffs filed the present case against Progressive. The instant
case, in fact, is the plaintiffs' second action initiated in
Washington. Plaintiffs originally filed suit in federal court,
asserting overtime claims under both the FLSA and par-
allel Washington state statutes. Walker v. Progressive
Casualty Insurance Company, CV02-0318P ("Walker ").
Walker I was assigned to United States District Judge
Marsha J. Pechman. [*3] Judge Pechman found that the
earlier-filed Camp action involved the same parties and

Case 3:07-cv-02633-SI    Document 20-3    Filed 07/13/2007    Page 10 of 25

Page 2

2003 U.S. Dist. LEXIS 7871, *; 8 Wage & Hour Cas. 2d (BNA) 1273

claims and dismissed the action without prejudice on June 25, 2002.

Following Judge Pechman's dismissal, on August 8, 2002, plaintiffs filed the present case ("Walker II") in Pierce County Superior Court. The sole difference between Walker I and the present case is that plaintiffs have now omitted their FLSA claims, presumably in an attempt to elude dismissal in favor of Camp. Walker II involves factual allegations identical to those stated in Walker I but asserts claims only under the *Washington Minimum Wage Act*, ("MWA"). Plaintiffs allege that the work they performed was non-exempt work within the meaning of the MWA and that Progressive's failure to compensate them for their overtime work violates the MWA. Plaintiffs define their putative class as "All persons who . . . have been employed as a claims representative or claims adjuster (or any other job title whose duties are substantially similar in scope) by Progressive . . . ." Compl. P 18.

Progressive removed the case to federal court in Seattle, claiming diversity of citizenship. [1] Progressive has now again moved to [*4] dismiss this action in favor of the earlier-filed Camp action.

> 1  A number of procedural issues then arose, as a result of which Judge Pechman transferred the case to Tacoma. United States District Judge Franklin Burgess, to whom the case was assigned, remanded the case to state court because the amount in controversy was not yet proven to exceed the jurisdictional minimum. On remand to the state court, Progressive established that the amount in controversy did exceed $ 75,000, and subsequently removed the case to this court. On April 9, 2003, following Progressive's motion to determine propriety of venue, this court determined that the case is properly in the federal district court, Seattle division.

## II. DISCUSSION

The first-to-file rule is a generally recognized doctrine of federal comity that permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district. *Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982).* [*5] The rule was developed to "serve[] the purpose of promoting efficiency well and should not be disregarded lightly." *Church of Scientology v. United States Dep't of the Army, 611 F.2d 738, 750 (9th Cir. 1979).* Exact parallelism between the two actions need not exist; it is enough if the parties and issues in the two actions are "substantially similar." *Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989).*

### 1. Similarity of Parties

The parties in the two actions need not be identical for purposes of the first-to-file rule, but there must be similarity or substantial overlap. *Dumas v. Major League Baseball Props., Inc., 52 F. Supp. 2d 1183, 1189(S.D. Cal. 1999),* vacated on other grounds, *104 F. Supp. 2d 1220 (S.D. Cal. 2000).* Here, there is clearly substantial overlap between the parties in the two actions. Both actions seek recovery from Progressive, and, furthermore, the two named plaintiffs in the present case, John Walker and Kevin Krieg, are parties in the Camp action. In addition, at least thirty-nine other Progressive employees with Washington addresses, who potentially qualify as members of plaintiffs' proposed [*6] class, have joined the Camp action. [2]

> 2  The Camp class represents "all current and former salaried employees of [Progressive] located in the 50 states, who are/were employed as claims adjusters or otherwise performed claims adjusting services," which, of course, includes Washington state claims adjusters.

Despite this similarity of the parties, plaintiffs advance two arguments for why this similarity does not weigh in favor of dismissal. First, plaintiffs argue that they intend to withdraw from the Camp action if this case is allowed to proceed and the court certifies a class action. This argument does not carry the day. Whatever plaintiffs' stated intentions, the fact remains that they are currently parties in the Camp action, and it is this fact, not plaintiffs' future plans, that the court finds controlling. Next, plaintiffs point out that the deadline for opting in to the Camp action passed on March 10, 2003 and that the Camp class only includes those persons who opted in to [*7] the class by the cut-off date. There are, plaintiffs aver, several Washington insurance adjusters who did not opt into Camp but who could be parties in this action. If the court were to dismiss this action, plaintiffs argue, then those insurance adjusters would have no remedy. According to plaintiffs, the statute of limitations has expired for bringing a separate action, and, as noted above, the deadline for opting into Camp has passed. These facts do not change the outcome. The adjusters who elected not to opt in to Camp received notice of that action, and, for whatever reason, elected not to opt in. They could have filed a timely independent action but likewise did not do so. Plaintiffs here cannot use other adjusters' legal predicament to demonstrate that this case should proceed on their behalf.

### 2. Similarity of Issues

The issues in the two actions need not be identical for purposes of the first-to-file rule but must only be substantially similar. *Dumas, 52 F. Supp. 2d at 1193; Ward v.*

Case 3:07-cv-02633-SI    Document 20-3    Filed 07/13/2007    Page 11 of 25

Page 3

2003 U.S. Dist. LEXIS 7871, *; 8 Wage & Hour Cas. 2d (BNA) 1273

*Follett Corp., 158 F.R.D. 645, 648-49 (N.D. Cal. 1994).* Accordingly, slight differences in the claims asserted do not prevent application of the [*8] rule where the underlying complained-of conduct is almost identical. See *Dumas, 52 F. Supp. 2d at 1193.*

Both Camp and the instant case allege that Progressive failed to compensate its claims adjusters for overtime pay and both seek compensation for that alleged injury. The legal issue in both cases is whether Progressive's claims adjusters are employed in a bona fide administrative capacity and are therefore exempt from overtime pay. See *Palacio v. Progressive Ins. Co., 8 Wage & Hour Cas. 2d (BNA) 914, 244 F. Supp. 2d 1040, 2002 U.S. Dist. LEXIS 17021 (C.D. Cal. 2002)*(dismissing an FLSA overtime claim against Progressive because the claims adjuster was an exempt administrative employee).

Plaintiffs here argue that, while the claims in the two cases are similar, the FLSA and the MWA are materially different and, thus, they should be allowed to proceed with their state-law based claims. Whatever the minor differences between those two statutes, these differences do not warrant maintaining this action. The FLSA and the MWA contain materially identical definitions of the administrative capacity exemption. Cf. *29 C.F.R. § 541.2* (FLSA) [*9] with *WAC 296-128-520* (MWA). In addition, both the FLSA and Washington law require that an employee meet both a "duties test" and a "salary basis test" to qualify as an exempt administrative employee. *RCW 49.46 et seq.Webster v. Pub. Sch. Employees of Wash., Inc., 148 Wn.2d 383 at 386, 60 P.3d 1183 (2003).* The only potential difference between the laws is that, while the duties test receives the same treatment under state and federal law, the Washington Supreme Court has held that the state salary basis test is slightly broader than the federal test.*148 Wn. 2d at 401* (noting that "MWA's test for exemption considers not only the federal 'salary basis' test, but also allows the court to consider policies and practices that do not affect base pay" (citing *Drink-*

*witz v. Alliant Techsystems, Inc., 140 Wn.2d 291, 996 P.2d 582 (2000)).* [3]

> 3 Specifically, the Court has departed from the federal standard in asserting that deductions from accrued leave could destroy exempt status, and refusing to allow employers a window of correction to correct improper practices. *Webster, 148 Wn.2d at 401; Drinkwitz, 140 Wn.2d at 301-05.*

The continued validity of*Drinkwitz* and*Webster* is questionable in light of recent amendments to the MWA. On January 21, 2003, shortly after Webster's publication, the Washington Department of Labor and Industries (DLI) amended the MWA "to clarify and develop requirements associated with paying exempt employees on a salary." The changes were 'a result of [Drinkwitz]," and were effectuated, among other reasons, to "issue similar provisions that exist in federal regulations."

[*10] Given that the first-to-file rule requires only a substantial similarity between the claims, this slight difference between federal and state law does not prevent application of the rule. In any event, plaintiffs have failed to demonstrate how any broader standard under the MWA would affect adjudication of their claims.

III. CONCLUSION

For the foregoing reasons, the court hereby GRANTS defendant's motion to dismiss based on prior action [doc. no. 5-1], on the grounds that the earlier filed Camp action involves substantially similar parties and claims.

DATED at Seattle, Washington this 9th day of May, 2003.

BARBARA JACOBS ROTHSTEIN

UNITED STATES DISTRICT JUDGE

**EXHIBIT 9**

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1

Not Reported in F.Supp.2d, 2006 WL 3201045 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

C
Weinstein v. Metlife, Inc.
N.D.Cal.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
Neil WEINSTEIN, Plaintiff,
v.
METLIFE INC., et al., Defendants.
No. C 06-04444 SI.

Nov. 6, 2006.

Scott Edward Cole, Clyde Hobbs Charlton, Matthew Roland Bainer, Scott, Cole & Associates, APC, John M. Kelson, Law Office of John M. Kelson, Oakland, CA, for Plaintiff.
Rebecca D. Eisen, Theresa C. Mak, Morgan, Lewis & Bockius, LLP, San Francisco, CA, Christopher A. Parlo, Morgan, Lewis & Bockius LLP, New York, NY, Jennifer Elizabeth White-Sperling, Morgan, Lewis & Bockius LLP, Los Angeles, CA, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION TO STAY, AND DENYING DEFENDANTS' MOTION TO DISMISS

SUSAN ILLSTON, District Judge.

*1 Defendants Metlife Inc., Metropolitan Life Insurance Company, and Metlife Securities, Inc., move to dismiss, or in the alternative, stay plaintiff's third cause of action on behalf of plaintiff Weinstein and the proposed California class. Defendants argue that the claim is duplicative of *Sims v. Metropolitan Life Insurance Co .,* 05-cv-2980 ("*Sims* "), an action currently pending before Judge Henderson, of this court. Defendants argue that there is no significant difference between the parties, issues, or relief sought; therefore, allowing plaintiff's third cause of action to move forward would be a waste of judicial resources, and the Court should exercise its judicial discretion to either dismiss or stay this cause of action. On November 3, 2006, the Court heard oral argument on defendants' motion to dismiss, or in the alternative, to stay plaintiff's third cause of action. Having carefully considered the arguments of counsel and the papers submitted, the Court hereby GRANTS defendants' motion to stay and DENIES defendants' motion to dismiss.

### BACKGROUND

Plaintiff Neil Weinstein filed the instant action on July 20, 2006 against defendants Metlife, Inc., Metropolitan Life Insurance Company and Metlife Securities, Inc. ("defendants"). Weinstein brought this action individually and on behalf of all persons similarly situated. *See* Weinstein Compl. ¶ 2. Weinstein's complaint sets forth eight causes of action: (1) unlawful failure to pay overtime wages, under the Fair Labor Standards Act ("FLSA"); and the following causes of action under California law: (2) unlawful failure to pay overtime wages; (3) failure to reimburse expenses and/or failure to refund plaintiffs' contributions to the capital and expenses of the defendants' business (alleged to constitute a "cash bond"); (4) prohibited wage chargebacks; (5) failure to provide meal and rest periods; (6) failure to provide accurate itemized wage statements; (7) failure to pay wages on termination; and (8) unfair business practices. *See id.* ¶¶ 34-95. The complaint defines two classes of plaintiffs: a California class, for the California-law claims, and a nationwide FLSA class, for the alleged FLSA violation. *See id.* ¶ 3.

In support of the third cause of action, Weinstein alleges that defendants required Weinstein and California class members to "pay other agents/employees of [d]efendants for their services to the clients in processing orders, assisting in sales, or otherwise handling business matters of the employer." *Id.* In addition, it is alleged that defendants required Weinstein and California class members to make "cash contributions" from their earned and paid commission to defendants for "

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2

Not Reported in F.Supp.2d, 2006 WL 3201045 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

previously paid and for claimed customer losses by [d]efendants' customers." *Id.* Further, Weinstein alleges that defendants required him and other class members to pay for the normal business expenses of defendants. *See id.* Weinstein claims that by doing this, defendants violated California Labor Code § 2802(a), which provides:

**\*2** An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

*Id.* ¶ 51. Weinstein also claims that defendants violated California Labor Code § 406, which provides:Any property put up by an employee, or applicant as a part of the contract of employment, directly or indirectly, shall be deemed to be put up as a bond and is subject to the provisions of this article whether the property is put up on a note or as a loan or an investment and regardless of the wording of the agreement under which it is put up.

*Id.* ¶ 52. Lastly, Weinstein claims that this was a violation of California Labor Code § 407, which provides:Investments and the sale of stock or an interest in a business in connection with the securing of a position are illegal as against the public policy of the State and shall not be advertised or held out in any way as a part of the consideration for any employment.

Weinstein Compl. ¶ 53.

In connection with the third cause of action, Weinstein seeks reimbursement for "expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, plus return of all cash bonds or other coerced investments in the business of the employer, with interest at the statutory rate and attorneys' fees." *Id.* ¶ 36.

On June 14, 2005 Jon Paul Sims ("Sims") filed an action individually and on behalf of all those

similarly situated in the Superior Court for the State of California, County of Sonoma, against defendant Metropolitan Life Insurance Company. The action was removed, and is currently pending before the Judge Henderson of this court. *Sims v. Metropolitan Life Insurance Co.,* No. 05-2980 (N.D. Cal. filed July 21, 2005). The complaint in *Sims* states two causes of action: (1) violation of § 2802 of California Labor Code; and (2) injunctive relief and restitution under California Business and Professions Code § 17200, et seq. *See* White-Sperling Decl., Ex. 1, Sims Compl. [hereinafter Sims Compl.].

The plaintiffs in *Sims* allege that defendant Metropolitan Life Insurance Company failed to indemnify plaintiffs for expenses and losses incurred as a result of discharging their duties. *See id.* ¶ 17. These expenses included a "Rent Charge" for office space, a "Support Charge" for clerical staff, a "Basic Expense Charge" and "Extra Charges." *See id.* ¶ 18. The plaintiffs in *Sims* allege that defendants imposed these charges pursuant to a Metropolitan Life Insurance Company policy called the "Expense Allowance Plan" ("EAP"). *See id.* ¶ 18.

The *Sims* complaint proposes the following class:
**\*3** All California employees of Metropolitan Life Insurance Company *whose job title was Financial Services Representative,* during the period from June 14, 2001 to the present, who's [sic] compensation was subject to deductions for business expenses, including office space "Rent Charge", clerical staff "Support Charge", "Basic Expense Charge" and "Extra Charges", according to a MetLife policy called the Expense Allowance Plan.

*See id.* ¶ 10 (emphasis added). The class period in the Sims action is from June 14, 2001 through the present. *See id.*

The *Weinstein* action defines its proposed California class as:
All persons who are, or have been, employed by the defendants Metlife, Inc., Metropolitan Life Insurance Company, and/or Metlife Securities, Inc. in the State of California to sell and/or assist in

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 3

Not Reported in F.Supp.2d, 2006 WL 3201045 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

selling and/or to market and/or assist in marketing securities and other financial products on their behalf to the public within the applicable statutory periods.

Weinstein Compl. ¶ 20. The California class period in the instant action is from July 20, 2002 through the trial date. *See id.* ¶ 3.

On August 21, 2006, the *Sims* defendant filed a notice of related case in the *Sims* action, notifying Judge Henderson of the *Weinstein* action. The notice was unopposed by plaintiffs in *Sims.* On September 13, 2006, Judge Henderson issued an order finding that the instant action was not related to the *Sims* action.[FN1] *See* Pl.'s Opp'n to Defs.' Mot. Dismiss or, Alternative to Stay, Ex. C.

> FN1. The notice of related case was made pursuant to Civil Local Rule 3-12, which provides that "[a]n action is related to another when ... [t]he actions concern substantially the same parties, property, transaction or event; and ... [i]t appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different Judges."
> It is important to note that pursuant to Civil Local Rule 3-12, Judge Henderson's ruling was based on a comparison of the entire *Sims* action to the entire instant action, which is not the issue here. Judge Henderson's refusal to relate the cases is therefore not dispositive.

The *Sims* action is substantially further along than the instant action. In *Sims,* the parties have deposed plaintiffs Jon Paul Sims, Michael B. Bagley and Jeffrey A. Pfeiffer, as well as some of the Metropolitan Life Insurance Company representatives. *See* White-Sperling Decl. 1:12-14. " [T]housands of pages of documents" have been produced in *Sims. Id.* 1:14-16. The parties in *Sims* have fully briefed a summary judgment motion and a motion for class certification. Both motions are scheduled for oral argument on November 27, 2006. In *Weinstein,* no discovery has been

conducted and defendants have responded to the complaint only with the instant motion.

## LEGAL STANDARD

Defendants' arguments turn on relatively underdeveloped law regarding duplicative lawsuits. The Ninth Circuit has stated the following regarding duplicative suits:
The principles of comity allow a district court to decline jurisdiction over an action where a complaint involving the same parties and issues has already been filed in another district. "While no precise rule has evolved, the general principle is to avoid duplicative litigation," and promote judicial efficiency.

*Barapind v. Reno,* 225 F.3d 1100, 1109 (9th Cir.2000) (citations omitted); see also *Nakash v. Marciano,* 882 F.2d 1411, 1416 (9th Cir.1989) ("It is enough if the two proceedings are 'substantially similar.' ").

*\*4* In the Ninth Circuit, the principles of federal comity are also embodied in the "first-to-file" rule. *Pacesetter Systems, Inc. v. Medtronic Inc.,* 678 F.2d 93, 94-95 (9th Cir.1982). Under the first-to-file rule, a district court may transfer, stay or dismiss an action when a similar action has been filed in another district court. *Alltrade, Inc. v. Uniweld Products, Inc.,* 946 F.2d 622, 625-26 (9th Cir.1991) . When deciding whether to apply the first-to-file rule, the court must look at three factors: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of issues. *Alltrade.,* 946 F.2d at 625-26 (9th Cir.1991).

The fact that there are additional defendants in one of these actions is not dispositive. *Barapind v. Reno,* 72 F.Supp.2d 1132, 1145 (E.D.Cal.1999) ("If the parties 'represent the same interests' the court may determine the second action is duplicative.") (citation omitted). In a class action, the classes, and not the class representatives, are compared. *See* Cal. Jur.3d Actions § 284 (citing to *Gamble v. San Diego,* 79 Fed. 487 (C.D.Cal.1897)).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                Page 4

Not Reported in F.Supp.2d, 2006 WL 3201045 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

### DISCUSSION

Defendants argue there is no significant difference between the parties, issues, or relief sought in the *Sims* action and Weinstein's third cause of action.[FN2] In response, Weinstein first argues that the actions are distinguishable because *Sims* only names defendant Metropolitan Life Insurance Company, whereas Weinstein also names Metlife Inc. and Metlife Securities as defendants. The addition of defendants is not dispositive, especially where, as here, the parties represent the same interests. *See Barapind,* 72 F.Supp.2d at 1145 (quoting *Walton,* 563 F.2d at 70).

> FN2. In the instant motion, it is undisputed that the *Sims* action was filed first.

In addition, Weinstein notes that the instant action involves a different plaintiff than the *Sims* action. In a class action, however, it is the class, not the representative, that is compared. *See* Cal. Jur.3d Actions § 284 (citing to *Gamble,* 79 Fed. 487). The instant action defines the proposed California class members as those employees who worked for defendants "to sell and/or assist in selling and/or to market and/or assist in marketing securities and other financial products on their behalf to the public. " Weinstein Compl. ¶ 20. The complaint in the *Sims* action defines its class members as: "All California employees of Metropolitan Life Insurance Company whose job title was Financial Services Representative." Sims Compl. ¶ 10. Weinstein has not explained, and the Court does not see, how these two classes differ. There is thus no significant difference between the parties.

Weinstein's remaining arguments are primarily based on the contention that the instant action *as a whole* is different from the *Sims* action. However, as the instant motion is only concerned with Weinstein's third cause of action, it is irrelevant whether as a whole, the instant action differs from the *Sims* action. For example, Weinstein argues that this action is broader since it also names a nationwide class under the FLSA. This argument is not persuasive, as Weinstein's third cause of action is brought only on behalf of a proposed California

class of plaintiffs.

*5 In addition, Weinstein argues that the *Weinstein* and *Sims* actions involve different issues and different class action allegations. In support of this contention, Weinstein argues that *Sims* only alleges damages arising out of the defendant's EAP program. Weinstein claims that the instant cause of action is broader since it includes unlawful charges made by defendants above and beyond those made under the EAP. Weinstein, however, has not provided any specific examples of these alleged additional charges. It does appear that there may be some differences in the claims; however, there is a significant overlap, the extent of which will be better understood after Judge Henderson's motions are resolved.

Lastly, Weinstein claims that the relief sought in the instant action is different from the relief sought in the *Sims* action. In the third cause of action, Weinstein seeks reimbursement for the allegedly unlawful charges made by defendants. Weinstein Compl. ¶ 56. In addition, Weinstein seeks a return of all cash bonds or other "coerced investments." *Id.* The *Sims* action seeks damages on behalf of the plaintiffs and the proposed class for defendant's failure to indemnify plaintiffs and members of the class for the unlawful charges that were made by defendant in violation of California Labor Code § 2802, and/or California Business and Professions Code § 17200, et seq. Sims Compl., Prayer for Relief. Plaintiffs in *Sims* also seek to enjoin defendant from continuing to violate California Labor Code § 2802. *Id.* The relief sought thus appears to be identical: Sims and Weinstein both seek reimbursement of illegal charges allegedly made by defendants.

### CONCLUSION

The issues and parties appear to substantially (if not completely) overlap. Judge Henderson should rule on the class certification and summary judgment motions very shortly. A stay therefore benefits all the parties, and the Court, as Judge Henderson's rulings may narrow the issues that need to be litigated here. The Court therefore GRANTS

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 5

Not Reported in F.Supp.2d, 2006 WL 3201045 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

defendants' motion to stay proceedings on the third
cause of action of this case, pending Judge
Henderson's rulings on the motion for summary
judgment and motion for class certification in the
*Sims* action. In the event that Judge Henderson
certifies the class, as currently defined, in the *Sims*
action, the Court will grant the motion to dismiss in
the instant action with leave to amend; plaintiff
Weinstein may then attempt to plead around the
*Sims* action. (Docket No. 10).

This stay applies only to the third cause of action;
proceedings may continue normally as to the other
claims.

**IT IS SO ORDERED.**

N.D.Cal.,2006.
Weinstein v. Metlife, Inc.
Not Reported in F.Supp.2d, 2006 WL 3201045
(N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**EXHIBIT 10**

LEXSEE 2002 U.S. DIST. LEXIS 2959

⟍
Caution
As of: Jul 13, 2007

**SHIRLEY WEWEE, et al., Plaintiff, vs. UNITED STATES, et al., Defendant.**

**No. CIV 01-486-TUC-RCC**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA**

*2002 U.S. Dist. LEXIS 2959; 89 A.F.T.R.2d (RIA) 1143*

**January 29, 2002, Decided**
**January 31, 2002, Filed**

**SUBSEQUENT HISTORY:** Summary judgment denied by, Summary judgment granted by, Judgment entered by *Wewee v. United States, 2003 U.S. Dist. LEXIS 5437 (D. Ariz., Mar. 10, 2003)*

**PRIOR HISTORY:** *Callies v. United States, 193 F. Supp. 2d 1172, 2002 U.S. Dist. LEXIS 2924 (D. Ariz., 2002)*

**DISPOSITION:** [*1] Defendants' Motion to Dismiss was granted.

**COUNSEL:** For SHIRLEY WEWEE, RICHARD P VIAU, ROGER CASTER, DOLORES C FRAIJO, plaintiffs: Edmund D Kahn, Esq., Law Offices of Edmund D Kahn, Tucson, AZ.

For UNITED STATES OF AMERICA, defendant: Christopher R Zaetta, US Dept of Justice, Washington, DC.

**JUDGES:** Raner C. Collins, United States District Judge.

**OPINION BY:** Raner Collins

**OPINION**

**ORDER**

Pending before the Court is Defendants' December 4, 2001 Motion to Dismiss or, in the Alternative, to Transfer Case to Judge Rosenblatt. Defendants contend that the complaint in this case is essentially the same as that filed in *Callies, et al. v. United States, 193 F. Supp. 2d 1172, 2002 U.S. Dist. LEXIS 2924*, currently pending before Judge Rosenblatt in the Phoenix division of this Court. Plaintiffs indicate in their motion that they have no objection to consolidation of this case with the *Callies* case, but assert that they raise sufficiently different claims from *Callies* to preclude dismissal. After review and comparison of the complaints filed in this case and the *Callies* case, the Court will grant Defendants' motion to dismiss.

Factual and Procedural Background

On April 19, 2000, Plaintiffs [*2] Debra Sue Callies, Roger Caster, Dolores Fraijo, and others, filed a proposed class action in the Phoenix division. The complaint alleged that Certified Public Accountant D. William Wewee, received, without proper authorization, tax return information relating to 1,391 individuals and encompassing 2,862 tax years. Plaintiffs in *Callies* seek damages for the Defendants' violations of *26 U.S.C. § 6103* pursuant to *26 U.S.C. § 7431* in the form of actual and punitive damages. Specifically, the *Callies* plaintiffs claim that the IRS violated *26 U.S.C. § 6103* by disclosing tax return information without authorization. The class to be represented in *Callies* includes those individuals "who did not provide authority for Mr. Wewee to request or receive their tax return transcripts from the IRS, but whose tax return transcripts were nevertheless provided to Mr. Wewee without request." (*Callies* Compl., p. 4.) The Phoenix District Court approved notice of the class action on June 20, 2001 and Plaintiffs Caster and Fraijo, among others, were named as class representatives. All of the plaintiffs in this case are [*3] included in the certified class of plaintiffs in the *Callies* case.

  
2002 U.S. Dist. LEXIS 2959, *; 89 A.F.T.R.2d (RIA) 1143

On October 23, 2000, Norris Ganson, attorney for *Callies* Plaintiffs, withdrew as counsel for *Callies* representatives Caster and Fraijo. In August and September of 2001, attorney Edmund Kahn entered an appearance on behalf of Plaintiffs Caster and Fraijo and other class members including Shirley Wewee and Richard Viau. On August 29, 2001, Defendants moved for removal of plaintiffs Caster and Fraijo as class representatives for failure to cooperate with discovery requests and actively pursue the class litigation. In an order dated October 4, 2001, Judge Rosenblatt granted Defendants' motion to remove Caster and Fraijo as class representatives and removed attorney Edmund Kahn as class counsel from the *Callies* action.

Plaintiffs in the instant case filed their complaint on September 20, 2001 alleging violations of *26 U.S.C. §§ 6301* and *7431* arising out of the same disclosures of tax return information at issue in the *Callies* class action and against the same Defendants. Named Plaintiffs in this case include former *Callies* representatives Caster and Fraijo, as well as Shirley [*4] Wewee and Richard Viau. The class of plaintiffs to be certified in this case are the same class of plaintiffs already certified in the *Callies* action. Defendants filed the pending Motion to Dismiss or in the Alternative to Transfer to Judge Rosenblatt on December 4, 2001.

Local Rule 1.2 provides that a motion to transfer a related case to a single District Court judge shall "be filed in each affected case, but shall contain the caption of the case with the lowest number and shall be heard by the District Judge to whom that case is assigned." Accordingly, Judge Rosenblatt entered an order denying Defendants' alternative motion to transfer, with leave to reinstate, on December 20, 2001. This Court need only consider the motion to dismiss.

Legal Standard

"There is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district court." *Pacesetter Systems Inc. v. Medtronic, Inc. 678 F.2d 93, 94-95 (9th Cir.1982)*; *Church of Scientology of California v. United States Dept. of the Army, 611 F.2d 738, 749 (9th Cir. 1979)*. [*5] In most cases, "sound judicial administration would indicate that when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit and no purpose would be served by proceeding with a second action." *Pacesetter, 678 F.2d at 95.* The concern is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of other courts, and to avoid piecemeal resolution of issues that call for a uniform result. *Colorado River Water Conser.*

*Dist. v. United States, 424 U.S. 800, 818-20, 47 L. Ed. 2d 483, 96 S. Ct. 1236.*

Discussion

Plaintiffs in this case contend that their cause of action differs from *Callies* primarily in two respects: 1) Plaintiffs in this case allege multiple unauthorized disclosures of tax return information by the IRS while Plaintiffs in *Callies* allege only one unauthorized disclosure, and 2) Plaintiffs in this case seek statutory and punitive damages while Plaintiffs in Callies seek actual and punitive damages. (*Wewee* Pl.'s Opp'n to Def.'s Mot. to Dismiss, p.2-3.)

The complaint filed by Plaintiffs in this case describes the [*6] unauthorized disclosures to Mr. Wewee in greater detail by identifying the IRS employee who inspected and disclosed the IRS transcripts, and by alleging unauthorized disclosures on multiple occasions between October 12, 1999 and February 2, 2000. (*Wewee* Compl., p. 3.) Plaintiffs contrast this with the *Callies* complaint which alleges "during the period from October 12, 1999 through February 2, 2000, Mr. Wewee received transcripts which he was not authorized to receive which related to 1,391 individuals and encompassed 2,862 tax years." (*Callies* Compl., p. 4.) The Court finds this contrast to be legally insignificant for the purposes of maintaining a separate case.

Indeed, the similarities in the factual allegations in *Callies* and *Wewee* overwhelm the minor differences in the pleadings which Plaintiffs rely on. Specifically, both cases: 1) allege unauthorized disclosures to Mr. Wewee during the period from October 12, 1999 to February 2, 2000, 2) allege that the information of approximately 1,390 individuals was disclosed relating to approximately 2, 900 tax years, 3) identify and define the same class of Plaintiffs, and 4) base their claims for relief on *26 U.S.C. §§ 6103* [*7] and *7431*. The more detailed allegations of the *Wewee* case do not create a legal claim separate from that stated in *Callies* nor does the more broad description of facts in *Callies* necessarily preclude Wewee's allegations. The issue of how many unauthorized disclosures actually occurred is relevant to damages in the original class action and is not a sufficient ground for maintaining a separate law suit.

As with their factual allegations, Plaintiffs' reliance on their request for statutory damages is insufficient to differentiate their cause of action from that in *Callies*. Title *26 U.S.C. § 7431(c)*, provides for damages for violations of *26 U.S.C. § 6103* in the following manner:

(A) $ 1,000 for each act of unauthorized disclosure of a return or return information

Case 3:07-cv-02633-SI    Document 20-3    Filed 07/13/2007    Page 21 of 25

Page 3

2002 U.S. Dist. LEXIS 2959, *; 89 A.F.T.R.2d (RIA) 1143

with respect to which such defendant is found liable, *or-*

    (B) the sum of-

        (i) the actual damages sustained by the plaintiff as a result of such unauthorized disclosure, plus

        (ii) in the case of a willful disclosure or a disclosure which is the result of gross negligence, punitive damages, plus

    (2) the costs of the action plus.  [*8]  .. (emphasis added).

That the *Callies* complaint seeks actual damages and failed to claim statutory damages does not support Plaintiffs' ability to maintain a separate suit in another division of the District Court in order to recover damages they may not be entitled to recover in the original class action. The plain language of *§ 7431* clearly indicates the disjunctive nature of damages that plaintiffs may recover; plaintiffs may seek actual and punitive damages or statutory damages, but may not recover both. Plaintiffs have failed to suggest any case law supporting a departure from this interpretation. To allow Plaintiffs in this case to proceed would be to potentially allow precisely the same class of plaintiffs to recover twice (actual and punitive damages in one case, and statutory damages in the other) for the same claims arising out of identical facts. Plaintiffs cannot circumvent the damages provisions of *26 U.S.C. § 7431* by filing a virtually identical cause of action before a different District Court judge. If Plaintiffs believe statutory damages to be greater than their actual and punitive damages, *FED.R.CIV.P. Rule 23(c)(2)(A)* allows Plaintiffs [*9] to "opt out" of the class in *Callies* such that they may pursue their claim, on their own behalf, outside of the class action.

Moreover, Plaintiffs' willingness to transfer this case Judge Rosenblatt for consolidation with the *Callies* case, and failure to opt out of the *Callies* litigation, suggests Plaintiffs desire to reinstate their status as class representatives. Transfer and consolidation of this matter would effectively negate Judge Rosenblatt's October 4, 2001 order which removed Plaintiffs Caster and Fraijo as class representatives. A challenge to a court order is properly brought through a motion to reconsider or through an appeal. Plaintiffs may not regain their status as class representatives by filing a new class action and seeking consolidation with the initial class action.

After consideration of the pleadings filed in *Callies* and *Wewee*, the Court finds Plaintiffs' claims to be sufficiently similar to those in *Callies* such that no purpose would be served by proceeding with this second action. To allow this case to go forward would entail an effort duplicative of *Callies* and constitute a waste of judicial resources.

Accordingly,

IT IS [*10]  **ORDERED** that Defendants' December 4, 2001 Motion to Dismiss [Doc. 6] is **GRANTED**. The Clerk of the Court is directed to close the case and enter judgment. The Clerk of the Court is further directed to send a copy of this order to:

Hon. Paul G. Rosenblatt, United States District Judge

Sandra Day O'Connor U.S. Courthouse

401 W. Washington St.

Phoenix, AZ 85003

Norris L. Ganson, Esq.

Roger H. Contreras, Esq.

Law Office of Norris L. Ganson

6700 N. Oracle Rd., Suite 326

Tucson, AZ 85704-7739.

DATED this 29TH day of January, 2002.

Raner C. Collins

United States District Judge

**EXHIBIT 11**

LEXSEE 2006 U.S. DIST. LEXIS 53431

**JANET WHERRY, Plaintiff, v. ALL CALIFORNIA FUNDING, CLINTON STEFAN, DBA STEFAN FINANCIAL, KEN MILLER, and DOES 1-100, Defendants.**

**No. C 06-4384 SBA**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*2006 U.S. Dist. LEXIS 53431*

**July 20, 2006, Decided**
**July 20, 2006, Filed**

**COUNSEL:** [*1]  For Janet Wherry, Plaintiff: Joseph Johnson, Law Offices of Joseph Johnson, San Jose, CA.

For All California Funding, Ken Miller, Defendants: Les Zieve, Law Offices of Les Zieve, Studio City, CA.

**JUDGES:** SAUNDRA BROWN ARMSTRONG, United States District Judge.

**OPINION BY:** SAUNDRA BROWN ARMSTRONG

**OPINION**

**ORDER**

[Docket No. 3]

This matter comes before the Court on Plaintiff's Application for Temporary Injunctive Relief and Request for Order Shortening Time ("TRO Application") [Docket No. 3]. Having read and considered the papers submitted by Plaintiff Janet Wherry and Defendants All California Funding and Ken Miller, the Court finds this matter appropriate for disposition without a hearing.

*Federal Rule of Civil Procedure 65(b)* provides the district court with the authority to enter a temporary restraining order. The court may grant such injunctive relief if the plaintiff has established: (1) a likelihood of success on the merits and the possibility of immediate irreparable injury, or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor. *Metro Publishing, Ltd. v. San Jose Mercury News, 987 F.2d 637, 639 (9th Cir. 1993);* [*2]  *see also Southwest Voter Registration Education Project v. Shelley, 344 F.3d 914 (9th Cir. 2003).* The two components of

this test sit on a kind of sliding scale or "continuum," *Southwest Voter, 344 F.3d at 918*; thus, "the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." *Id.* In this case, Plaintiff seeks interim and permanent relief restraining and enjoining Defendants All California Funding, Clinton Stefan and Ken Miller from proceeding or continuing with the sale, disposition, transfer and taking any action with respect to the property located at 11650 San Mateo Road, Half Moon Bay, California 94109. Plaintiff alleges that Defendants will foreclose on the property at issue on July 20, 2006 based on the loan agreement between Plaintiff and Defendant All California Funding. Plaintiff asserts that Defendants violated certain provisions of The Home Ownership and Equity Protection Act of 1994 (HOEPA) and Truth in Lending Act (TILA) by, *inter alia*, failing to provide her with the necessary disclosures [*3]  in relation to the loan, and including prohibited balloon payment and prepayment penalty provisions in the loan agreement. [1] Plaintiffs seeks damages and rescission.

1   While Plaintiff brings other state law claims, Plaintiff neither argues that she will likely succeed on the merits on the state law claims, nor even mentions them in her TRO Application.

Defendants All California Funding and Ken Miller (collectively, "ACF Defendants") oppose Plaintiff's TRO Application. ACF Defendants argue that Plaintiff's TRO Application should be denied because the Bankruptcy Court has exclusive jurisdiction over the property at issue. Plaintiff filed a bankruptcy petition in the Northern District of California, Case Number 05-33658, on October 4, 2005. On or about January 13, 2006, All California

Funding filed a motion for relief from the automatic stay in that action. On March 20, 2006, Bankruptcy Judge Carlson entered an Order Vacating the Automatic Stay and allowing All California Funding to conduct foreclosure of Plaintiffs [*4] property at issue in the instant case on or after April 26, 2006. On February 23, 2006, Plaintiff's husband filed a bankruptcy petition, Case Number 06-50254. On or about April 21, 2006, All California Funding filed a motion for relief from the automatic stay in Plaintiff's husband's action. On June 30, 2006, Bankruptcy Judge Carlson entered an Order Vacating the Automatic Stay and allowing All California Funding to conduct foreclosure of the property at issue in the instant action on or after July 20, 2006. On July 14, 2006, Plaintiff filed an adversary proceeding in her husband's bankruptcy case against All California Funding, Clinton Stefan and Ken Miller. At the same time, Plaintiff applied for a TRO. Plaintiff's pleadings and relief requested in the adversary proceeding in the Bankruptcy Court are identical to the ones in the instant action. The Bankruptcy Court has not ruled on Plaintiff's TRO yet. [2]

> 2   The Court takes judicial notice of the orders and pleadings in the Bankruptcy Court referenced herein. *See United States v. S. Cal. Edison Co., 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004); Kent v. DaimlerChrysler Corp., 200 F.Supp.2d 1208 (N.D. Cal. 2002)* (taking judicial notice of two state court decisions and a legal memorandum filed in a state court action on the grounds that they are public documents).

[*5]  Because the property at issue is in the bankruptcy estate, the Bankruptcy Court has exclusive jurisdiction over it. Accordingly, this Court cannot hear the claims asserted in Plaintiffs TRO Application and Complaint. The Court therefore DENIES Plaintiff's TRO Application without prejudice and DISMISSES the above-captioned action. [3]

> 3   It also appears that dismissal is proper under the first-to-file rule. The first-to-file rule allows a district court to "transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court[.]" *Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d, 622, 623 (9th Cir. 1991).* A bankruptcy court is a unit of a district court. *See 28 U.S.C. § 151.* The rule may be invoked when a complaint involving the same parties and issues has already been filed in another court. *Alltrade, 946 F.2d at 625.* Here, Plaintiff's adversary proceeding and TRO Application were filed in the Bankruptcy Court four days prior to the instant action and involve the same parties and issues as the instant action.

[*6]  Even if the Court were to find that the Bankruptcy Court does not have exclusive jurisdiction over the property at issue, the Court would nevertheless deny the TRO Application because Plaintiff has failed to demonstrate a likelihood of success on the merits on any of her claims. Plaintiff's Application is wholly deficient in this respect. First, Plaintiff has failed to set forth the elements that apply to each cause of action she is asserting. Second, she has not provided any legal authority in support of her claims. Plaintiff has not cited a single case in her TRO Application. Instead, Plaintiff only cited certain provisions of the HOEPA and TILA in her Complaint. However, before Plaintiff can rely on these provisions, she must demonstrate that the HOEPA and TILA apply to the loan Plaintiff obtained from Defendants. She has not done so. Plaintiff simply alleges that "this is a clear case of violation of the provisions of HOEPA and TILA by the defendants" and that the Note Secured by a Deed of Trust that Defendants coerced her into signing "speaks for itself." However, Plaintiff has failed to attach the Note or any other relevant documents. Without seeing the documents, the Court [*7] cannot evaluate whether the HOEPA and TILA apply to Plaintiff's transaction, whether or not the note Plaintiff signed includes the prohibited balloon payment and prepayment penalty provisions as Plaintiff alleges, and whether or not it provides adequate disclosures. The ACF Defendants, on the other hand, submitted declarations rebutting Plaintiff's naked allegations and showing that the HOEPA does not apply to Plaintiff's case because the HOEPA applies only to transactions secured by the consumer's principal dwelling and the property at issue is not Plaintiff's primary residence. *See* Declaration of William Schumer, P 9 ("At all times during the loan application process, Plaintiff and her husband John Wherry represented to [All California Funding] that they did not intend to occupy the property as their principal residence."). *See also 15 U.S.C. § 1602(aa)* (stating that HOEPA applies to "a consumer credit transaction that is secured by the consumer's principal dwelling"). Furthermore, ACF Defendants attached a part of the Financial Statement that Plaintiff submitted with her loan application to All California Funding, in which Plaintiff and her husband [*8] represented that their primary residence was 851 Railroad Avenue, Half Moon Bay, California.

Moreover, even if the Court were to conclude that the HOEPA and TILA apply to the loan Plaintiff obtained from Defendants, from the face of Plaintiff's complaint, it appears that Plaintiff's action for damages for violations of the HOEPA and TILA is barred by the statute of limitations. An action for damages under HOEPA or TILA must be brought within one year of the violation. *See 15 U.S.C. § 1640(e); 12 C.F.R. § 226.23; In re Cmty. Bank of N. Va., 418 F.3d 277, 305 (3d Cir. 2005); McMaster v. CIT Group/Consumer Finance, Inc., 2006 U.S. Dist.*

2006 U.S. Dist. LEXIS 53431, *

*LEXIS 28831, 2006 WL 1314379, at \*4 (E.D. Pa. May 11, 2006)*. "A violation occurs when a 'consumer becomes contractually obligated on a credit transaction.'" *McMaster, 2006 U.S. Dist. LEXIS 28831, 2006 WL 1314379, at \*4*. Plaintiff alleges that she signed the loan documents with All California Funding on March 22, 2005. Plaintiff filed this action on July 18, 2006. Accordingly, Plaintiff's action for damages for violations of HOEPA and TILA appears to be barred by the statute of limitations.

[*9] For the foregoing reasons, Plaintiff has failed to make a clear showing of the likelihood of success on the merits. *See In re Cobb, 122 B.R. 22, 26* (dismissing claimant's TILA claim because he has provided no evidence that there has been a TILA violation). *See also Johnson v. Holway, 329 F.Supp.2d 12, 15 (D.D.C. 2004)* (a TRO "is an extraordinary form of relief that should not be granted absent a clear and convincing showing by the moving party."); *Sierra Club v. Hickel, 433 F.2d 24, 33 (9th Cir. 1970)* ("'The grant of a preliminary injunction is the exercise of a very far reaching power never to be indulged except in a case clearly warranting it.'"); *Clairol Inc. v. Gillette Co., 389 F.2d 264, 265 (2d Cir. 1968)* ("The award of a preliminary injunction is an extraordinary remedy, and will not be granted except upon a clear showing of probable success and possible irreparable injury."). [4]

4   Plaintiff's TRO Application is also deficient because she has not served all Defendants. Plaintiff provided a proof of service showing that she served only Defendants All California Funding and Ken Miller. Plaintiff has not explained her failure to serve Defendant Clinton Stefan, nor styled her application as an *ex-parte* application. Under *Federal Rule of Civil Procedure 65(b)*, a TRO "may be granted without written or oral notice to the adverse party . . . only if (1) it clearly appears . . . that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required. Every [TRO] granted without notice shall . . . define the injury and state why it is

irreparable and why the order was granted without notice." *Fed. R. Civ. P. 65(b)*. In *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, 415 U.S. 423, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974)*, the Supreme Court explained that an *ex parte* TRO can be issued only in extremely limited circumstances: "[O]ur entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Id. at 438-439*. Thus, courts have recognized very few circumstances justifying the issuance of an *ex parte* TRO. *See Reno Air Racing, Ass'n., Inc. v. McCord, 452 F.3d 1126, 2006 WL 1867632, at \*4-5 (9th Cir. July 7, 2006)*. Here, Plaintiff's attorney neither certified in writing the efforts, if any, which have been made to give notice to Defendant Clinton Stefan nor explained why the notice should not be required. Accordingly, if the Court did not deny Plaintiff's TRO Application for the reasons previously discussed, it would have denied the Application against Defendant Clinton Stefan on the ground of Plaintiff's failure to serve him. *See Reno Air Racing, 452 F.3d 1126, [WL] at \*5* (TRO was not properly granted *ex parte* without notice where the only evidence of why notice should not be required was a single conclusory statement by counsel in a declaration).

[*10] Accordingly,

IT IS HEREBY ORDERED THAT Plaintiff's Application for Temporary Injunctive Relief and Request for Order Shortening Time [Docket No. 3] is DENIED.

IT IS FURTHER ORDERED THAT the above-captioned action is DISMISSED. The Clerk is instructed to close the file and terminate all pending matters.

IT IS SO ORDERED.

Dated: July 20, 2006

SAUNDRA BROWN ARMSTRONG

United States District Judge